Tanzania International Extradition Treaty with the United States

Treaties: Continued Application to Tanzania of Certain Treaties Concluded Between the United States and the United Kingdom

November 30, 1965, Date-Signed and December 6, 1965, Date-Signed

December 6, 1965, Date-In-Force

STATUS:
Agreement effected by exchange of notes Dated at Dar es Salaam November 30 and December 6, 1965. It Entered into force December 6, 1965; Effective December 9, 1963.

The American Ambassador to the Tanzanian Minister for Foreign Affairs DAR ES SALAAM, November 30, 1965.

EXCELLENCY: I have the honor to refer to the Prime Minister's note of December 9, 1961 to the Secretary General of the United Nations and to discussions between officials of our Governments relating to agreements and treaties between the United Kingdom and the United States which may have application to Tanzania. In the view of my Government, it would be desirable to conclude a formal undertaking on this subject which might be appropriately registered with the United Nations. I, therefore, propose that for our mutual benefit the following United States-United Kingdom agreements and treaties be considered as remaining in force between the United States and Tanzania:
1. Extradition Treaty between the United States and the United Kingdom of December 22, 1931.
2. Consular Convention and Protocol of Signature between the United States and the United Kingdom of June 6, 1951. I further have the honor to state that the Government of the United States takes note of representations of the Government of the United Republic of Tanzania regarding the United States-United Kingdom Agreement concerning arrangements for the development of certain port facilities in Kenya and Tanganyika of June 26, 1953, to the effect that the Government of the United Republic of Tanzania considers adequate, in fulfillment of the reporting requirements called for in that Agreement, the periodic reports of the East African Rivers and Harbors Administration.

The Government of the United States appreciates the Government of the United Republic of Tanzania's attention to this subject and wishes to express its hope that, in the event additional data are from time to time required by the Government of the United States in order to provide the information called for in the Agreement, the Governor of the United Republic of Tanzania will request the East African Rivers and Harbors Administration to make such data as the Government of the United States may request available to the Government of the United States.

If this proposal is acceptable, this note and Your Excellency's reply concurring therein shall constitute an agreement between our respective Governments effective December 9, 1963. Accept, Excellency, the renewed assurances of my highest consideration.

The Tanzanian Ministry of Foreign Affairs to the American Embassy

Exhibit D

UNITED REPUBLIC OF TANZANIA MINISTRY OF EXTERNAL AFFAIRS,

Dar es Salaam,

The Ministry of Foreign Affairs of the United Republic of Tanzania presents its compliments to the Embassy of the United States of America, and has the honour to refer to the Embassy's Note of November 30, 1965 regarding discussions between officials of the government of the United States and the United Republic of Tanzania relating to agreements and treaties between the United Kingdom and the United States which may have application to Tanzania.

The Government of the United Republic of Tanzania concurs with the view that it is desirable to conclude a formal undertaking on this subject which might be appropriately registered with the United Nations. The Ministry is in further agreement that the following be considered as remaining in force between the United States and the United Republic of Tanzania:
1. Extradition Treaty between the United States and the United Kingdom of December 22, 1931.

2. Consular Convention and Protocol Signature between the United States and the United Kingdom of June 6, 1951.

The Government of the United Republic of Tanzania however intends in due course re-open negotiations on these two matters, but is willing that until new arrangements arising out of the negotiations have been agreed, the Extradition Treaty and the Consular Convention remain in force. On this understanding, the proposal is acceptable that the Embassy's Note and this reply to it constitute an agreement between the Governments of the United States and Tanzania effective December 9, 1963. The Ministry of Foreign Affairs of the United Republic of Tanzania avails itself of this opportunity to renew to the Embassy of the United States of America the assurances of its highest consideration.

SIGNATORIES:

WILLIAM LEONHART His Excellency

MWALIMU JULIUS K. NYERERE, Minister for Foreign Affairs, Dar es Salaam.

DAR ES SALAAM, 6th December, 1965.

B M THE EMBASSY OF THE UNITED STATES OF AMERICA, P.O. Box 9123, Dar es Salaam.

Exhibit D

BILATERAL EXTRADITION TREATIES

<u>TANZANIA</u>

(The treaty applicable to Tanzania was originally signed with the United Kingdom.)

EXTRADITION

Treaty Series 849

1931 U.S.T. LEXIS 60; 12 Bevans 482

December 22, 1931, Date-Signed

June 24, 1935, Date-In-Force

STATUS:

[*1] Treaty and exchanges of notes signed at London December 22, 1931
Senate advice and consent to ratification February 19, 1932
Ratified by the President of the United States March 3, 1932
Ratified by the United Kingdom July 29, 1932
Ratifications exchanged at London August 4, 1932
Proclaimed by the President of the United States August 9, 1932
Entered into force June 24, 1935

[NO LONG-TITLE IN ORIGINAL]

TEXT:

TREATY

The President of the United States of America,

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas, Emperor of India;

Desiring to make more adequate provision for the reciprocal extradition of criminals,

Have resolved to conclude a Treaty for that purpose, and to that end have appointed as their plenipotentiaries:

The President of the United States of America:

General Charles G. Dawes, Ambassador Extraordinary and Plenipotentiary of the United States of America at the Court of St. James;

Exhibit D

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas, Emperor of India:

for Great Britain and Northern Ireland:

The Right Honourable Sir John Simon, G.C.S.I., M.P., His Principal Secretary of State for Foreign Affairs; [*2]

who, having communicated their full powers, found in good and due form, have agreed as follows:

ARTICLE 1

The High Contracting Parties engage to deliver up to each other, under certain circumstances and conditions stated in the present Treaty, those persons who, being accused or convicted of any of the crimes or offences enumerated in Article 3, committed within the jurisdiction of the one Party, shall be found within the territory of the other Party.

ARTICLE 2

For the purposes of the present Treaty the territory of His Britannic Majesty shall be deemed to be Great Britain and Northern Ireland, the Channel Islands and the Isle of Man, and all parts of His Britannic Majesty's dominions overseas other than those enumerated in Article 14, together with the territories enumerated in Article 16 and any territories to which it may be extended under Article 17. It is understood that in respect of all territory of His Britannic Majesty as above defined other than Great Britain and Northern Ireland, the Channel Islands, and the Isle of Man, the present Treaty shall be applied so far as the laws permit.

For the purposes of the present Treaty the territory of the United States shall be deemed [*3] to be all territory wherever situated belonging to the United States, including its dependencies and all other territories under its exclusive administration or control.

ARTICLE 3

Extradition shall be reciprocally granted for the following crimes or offences:

1. Murder (including assassination, parricide, infanticide, poisoning), or attempt or conspiracy to murder.

2. Manslaughter.

3. Administering drugs or using instruments with intent to procure the miscarriage of women.

4. Rape.

5. Unlawful carnal knowledge, or any attempt to have unlawful carnal knowledge, of a girl under 16 years of age.

6. Indecent assault if such crime or offence be indictable in the place where the accused or convicted person is apprehended.

7. Kidnapping or false imprisonment.

8. Child stealing, including abandoning, exposing or unlawfully detaining.

Exhibit D

9. Abduction.

10. Procuration: that is to say the procuring or transporting of a woman or girl under age, even with her consent, for immoral purposes, or of a woman or girl over age, by fraud, threats, or compulsion, for such purposes with a view in either case to gratifying the passions of another person provided that such crime or offence is punishable by imprisonment [*4] for at least one year or by more severe punishment.

11. Bigamy.

12. Maliciously wounding or inflicting grievous bodily harm.

13. Threats, by letter or otherwise, with intent to extort money or other things of value.

14. Perjury, or subornation of perjury.

15. Arson.

16. Burglary or housebreaking, robbery with violence, larceny or embezzlement.

17. Fraud by a bailee, banker, agent, factor, trustee, director, member, or public officer of any company, or fraudulent conversion.

18. Obtaining money, valuable security, or goods, by false pretences; receiving any money, valuable security, or other property, knowing the same to have been stolen or unlawfully obtained.

19. (a) Counterfeiting or altering money, or bringing into circulation counterfeited or altered money.

(b) Knowingly and without lawful authority making or having in possession any instrument, tool, or engine adapted and intended for the counterfeiting of coin.

20. Forgery, or uttering what is forged.

21. Crimes or offences against bankruptcy law.

22. Bribery, defined to be the offering, giving or receiving of bribes.

23. Any malicious act done with intent to endanger the safety of any persons travelling or being upon [*5] a railway.

24. Crimes or offences or attempted crimes or offences in connection with the traffic in dangerous drugs.

25. Malicious injury to property, if such crime or offence be indictable.

26. (a) Piracy by the law of nations.

(b) Revolt, or conspiracy to revolt, by two or more persons on board a ship on the high seas against the authority of the master; wrongfully sinking or destroying a vessel at sea, or attempting to do so; assaults on board a ship on the high seas, with intent to do grievous bodily harm.

27. Dealing in slaves.

Exhibit D

Extradition is also to be granted for participation in any of the aforesaid crimes or offences, provided that such participation be punishable by the laws of both High Contracting Parties.

ARTICLE 4

The extradition shall not take place if the person claimed has already been tried and discharged or punished, or is still under trial in the territories of the High Contracting Party applied to, for the crime or offence for which his extradition is demanded.

If the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition shall be deferred [*6] until the conclusion of the trial and the full execution of any punishment awarded to him.

ARTICLE 5

The extradition shall not take place if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

ARTICLE 6

A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offence of a political character.

ARTICLE 7

A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place, until he has been restored, or has had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

This stipulation [*7] does not apply to crimes or offences committed after the extradition.

ARTICLE 8

The extradition of fugitive criminals under the provisions of this Treaty shall be carried out in the United States and in the territory of His Britannic Majesty respectively, in conformity with the laws regulating extradition for the time being in force in the territory from which the surrender of the fugitive criminal is claimed.

ARTICLE 9

The extradition shall take place only if the evidence be found sufficient, according to the laws of the High Contracting Party applied to, either to justify the committal of the prisoner for trial, in case the crime or offence had been committed in the territory of such High Contracting Party, or to prove that the prisoner is the identical person convicted by the courts of the High Contracting Party who makes the requisition, and that the crime or offence of which he has been convicted is one in respect of which extradition could, at the time of such conviction, have been granted by the High Contracting Party applied to.

Exhibit D

ARTICLE 10

If the individual claimed by one of the High Contracting Parties in pursuance of the present Treaty should be also claimed by one or several [*8] other Powers on account of other crimes or offences committed within their respective jurisdictions, his extradition shall be granted to the Power whose claim is earliest in date, unless such claim is waived.

ARTICLE 11

If sufficient evidence for the extradition be not produced within two months from the date of the apprehension of the fugitive, or within such further time as the High Contracting Party applied to, or the proper tribunal of such High Contracting Party, shall direct, the fugitive shall be set at liberty.

ARTICLE 12

All articles seized which were in the possession of the person to be surrendered at the time of his apprehension, and any articles that may serve as a proof of the crime or offence shall be given up when the extradition takes place, in so far as this may be permitted by the law of the High Contracting Party granting the extradition.

ARTICLE 13

All expenses connected with the extradition shall be borne by the High Contracting Party making the application.

ARTICLE 14

His Britannic Majesty may accede to the present Treaty on behalf of any of his Dominions hereafter named--that is to say, the Dominion of Canada, the Commonwealth of Australia (including for this [*9] purpose Papua and Norfolk Island), the Dominion of New Zealand, the Union of South Africa, the Irish Free State, and Newfoundland--and India. Such accession shall be effected by a notice to that effect given by the appropriate diplomatic representative of His Majesty at Washington which shall specify the authority to which the requisition for the surrender of a fugitive criminal who has taken refuge in the Dominion concerned, or India, as the case may be, shall be addressed. From the date when such notice comes into effect the territory of the Dominion concerned or of India shall be deemed to be territory of His Britannic Majesty for the purposes of the present Treaty. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The treaty was made applicable from Aug. 30, 1935, to Australia (including Papua, Norfolk Island, and mandated territories of New Guinea and Nauru) and Newfoundland. (It ceased to apply to Newfoundland, however, when Newfoundland entered the Confederation of Canada on Mar. 31, 1949.) It was also made applicable to Burma from Nov. 1, 1941, and to India from Mar. 9, 1942.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*10]

The requisition for the surrender of a fugitive criminal who has taken refuge in any of the above-mentioned Dominions or India, on behalf of which His Britannic Majesty has acceded, shall be made by the appropriate diplomatic or consular officer of the United States of America.

Either High Contracting Party may terminate this Treaty separately in respect of any of the above-mentioned Dominions or India. Such termination shall be effected by a notice given in accordance with the



Exhibit D

provisions of Article 18.

Any notice given under the first paragraph of this Article in respect of one of His Britannic Majesty's Dominions may include any territory in respect of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, and which is being administered by the Government of the Dominion concerned; such territory shall, if so included, be deemed to be territory of His Britannic Majesty for the purposes of the present Treaty. Any notice given under the third paragraph of this Article shall be applicable to such mandated territory.

ARTICLE 15

The requisition for the surrender of a fugitive criminal who has taken refuge in any territory of His Britannic Majesty [*11] other than Great Britain and Northern Ireland, the Channel Islands, or the Isle of Man, or the Dominions or India mentioned in Article 14, shall be made to the Governor, or chief authority, of such territory by the appropriate consular officer of the United States of America.

Such requisition shall be dealt with by the competent authorities of such territory: provided, nevertheless, that if an order for the committal of the fugitive criminal to prison to await surrender shall be made, the said Governor or chief authority may, instead of issuing a warrant for the surrender of such fugitive, refer the matter to His Majesty's Government in the United Kingdom of Great Britain and Northern Ireland.

ARTICLE 16

This Treaty shall apply in the same manner as if they were Possessions of His Britannic Majesty to the following British Protectorates, that is to say, the Bechuanaland Protectorate, Gambia Protectorate, Kenya Protectorate, Nigeria Protectorate, Northern Rhodesia, Northern Territories of the Gold Coast, Nyasaland, Sierra Leone Protectorate, Solomon Islands Protectorate, Somaliland Protectorate, Swaziland, Uganda Protectorate and Zanzibar, and to the following territories in respect [*12] of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, that is to say, Cameroons under British mandate, Togoland under British mandate, and the Tanganyika Territory.

ARTICLE 17

If after the signature of the present Treaty it is considered advisable to extend its provisions to any British Protectorates other than those mentioned in the preceding Article or to any British-protected State, or to any territory in respect of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, other than those mandated territories mentioned in Articles 14 and 16, the stipulations of Articles 14 and 15 shall be deemed to apply to such Protectorates or States or mandated territories from the date and in the manner prescribed in the notes to be exchanged for the purpose of effecting such extension. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The treaty was made applicable from June 24, 1935, to Palestine and Transjordan (see exchanges of notes, below); from July 31, 1939, to the Federated Malay States (Negri, Sembilan, Pahang, Perak and Selangor), to the Unfederated Malay States (Johore, Kedah, Kelantan, Perlis and Trengganu), Brunei, and North Borneo; and from Aug. 1, 1966, to Tonga.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*13]

ARTICLE 18

Exhibit D

The present Treaty shall come into force ten days after its publication, in conformity with the forms prescribed by the laws of the High Contracting Parties. It may be terminated by either of the High Contracting Parties by a notice not exceeding one year and not less than six months.

In the absence of an express provision to that effect, a notice given under the first paragraph of this Article shall not affect the operation of the Treaty as between the United States of America and any territory in respect of which notice of accession has been given under Article 14.

The present Treaty shall be ratified, and the ratifications shall be exchanged at London as soon as possible.

On the coming into force of the present treaty the provisions of Article 10 [X] of the treaty of the 9th August, 1842, n3 of the Convention of the 12th July, 1889, n4 of the supplementary Convention of the 13th December, 1900, n5 and of the supplementary Convention of the 12th April, 1905, n6 relative to extradition, shall cease to have effect, save that in the case of each of the Dominions and India, mentioned in Article 14, those provisions shall remain in force until such Dominion or India shall [*14] have acceded to the present treaty in accordance with Article 14 or until replaced by other treaty arrangements.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 TS 119, ante, p. 88.

n4 TS 139, ante, p. 211.

n5 TS 391, ante, p. 256.

n6 TS 458, ante, p. 272.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In faith whereof the above-named plenipotentiaries have signed the present Treaty and have affixed thereto their seals.

Done in duplicate at London this twenty-second day of December, 1931.

EXCHANGES OF NOTES

The Secretary of State for Foreign Affairs to the American Ambassador

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

22nd December, 1931

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas and the President of the United States of America, signed this day at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into [*15] force, be applicable to Palestine (excluding Transjordan).

Exhibit D

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal. In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

The American Ambassador to the Secretary of State for Foreign Affairs

EMBASSY OF THE UNITED STATES OF AMERICA

LONDON, December 22, 1931

No. 1582

SIR:

With reference to Article 17 of the Extradition Treaty between the President of the United States of America and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed this day at London, I have the honor to inform you that the Government of the United States of America is agreeable to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Palestine (excluding Transjordan).

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble [*16] Servant,

The Secretary of State for Foreign Affairs to the American Ambassador

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

22nd December, 1931

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas and the President of the United States of America, signed this day at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal. In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

Exhibit D

The American Ambassador to the Secretary of State for Foreign Affairs

EMBASSY OF THE UNITED STATES OF AMERICA

LONDON, December 22, 1931

No. 1583

SIR:

With reference to Article 17 of the Extradition Treaty [*17] between the President of the United States of America and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed this day at London, I have the honor to inform you that the Government of the United States of America is agreeable to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble Servant,

SIGNATORIES:

CHARLES G. DAWES

[SEAL]

JOHN SIMON

[SEAL]

JOHN SIMON

His Excellency

General CHARLES G. DAWES, C.B.,

etc., etc., etc.

CHARLES G. DAWES

The Right Honorable

Sir JOHN SIMON, G.C.S.I., etc., etc., etc., Foreign Office, S.W. 1.

Back to top

Exhibit D

Exhibit D