1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
    Case No. 20-cr-00152-PAB-2
3   _____

4   UNITED STATES OF AMERICA,

5        Plaintiff,

6   vs.

7   MIKELL REEVE FRIES,

8        Defendant.
    _____
9

10          Proceedings before KRISTEN L. MIX, United States

11   Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 3:28 p.m., June 4, 2020,

13   in the United States Courthouse, Denver, Colorado.

14   _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                    APPEARANCES

19          HEATHER CALL, MICHAEL KOENIG, CAROLYN SWEENEY and

20   PAUL TORZILLI, Attorneys at Law, appearing for the

21   Plaintiff.

22          JAMES HERBISON and CHUCK MURPHY, Attorneys at Law,

23   appearing for the Defendant.

24   _____

25      INITIAL APPEARANCE and DETENTION HEARING
```

Exhibit A

```
 1                  P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3      proceedings are herein transcribed, pursuant to order of
 4      counsel.)
 5              THE COURT:  All right.  All right, Case
 6      20-cr-000152, the United States of America vs. Mikell Reeve
 7      Fries.  Let's have counsel enter appearances again.  Ms. Call
 8      for the Government, good afternoon again.
 9              And counsel for defendant Fries, would you enter
10      your appearance, please.
11              MR. HERBISON:  Your Honor, this is Jim Herbison on
12      behalf of Mikell Fries and Claxton Poultry.  Chuck Murphy is
13      on as well.  I think we're just having a problem unmuting
14      him.
15              THE COURT:  All right, I'll give you a moment.
16              MR. HERBISON:  Maybe, Your Honor, will have him
17      call in here real quick --
18              THE COURT:  All right.
19              MR. HERBISON:  -- on that same number if that's
20      okay.
21              THE COURT:  Yeah, we'll read the call-in number for
22      -- and what's the name of the co-counsel we're looking for?
23              MR. HERBISON:  Charles Murphy --
24              THE COURT:  Thank you.
25              MR. HERBISON:  -- your Honor.
```

1           THE COURT:  And you are Mr. Ferguson?

2           MR. HERBISON:  Herbison with an H.

3           MR. MURPHY:  Your Honor, is that better?  This is

4     Mr. Murphy.

5           THE COURT:  All right, Mr. Murphy, good afternoon.

6           MR. MURPHY:  Good afternoon, Your Honor.  I beg

7     your pardon now.  I'm showing my IT skills, I'm sorry.

8           THE COURT:  No worries.  I'm in the same boat.

9           All right.  So I understand from my courtroom

10    deputy that a continuance is going to be requested with

11    respect to Mr. Fries; is that right?  Where are we on this --

12          MR. MURPHY:  That's what we -- that's what I'd like

13    to discuss with you, Your Honor.  We got the indictment

14    yesterday at 12:30 Eastern Time, and so at the outset we

15    thought that what -- we should address an issue raised by the

16    Government in a cover letter yesterday regarding Mr. Fries'

17    need for separate counsel in as much as Mr. Herbison and I

18    represent Claxton Poultry Farms, which is Mr. Fries' company.

19          And so while we're still analyzing this issue, out

20    of an abundance of caution, we have done our best since the

21    time period I mentioned, 12:30 yesterday, to try to identify

22    separate counsel that the Government requested and we have

23    identified Rick Kornfeld of the Bar of this court as separate

24    counsel.  However, unfortunately, Mr. Kornfeld is out of town

25    and unavailable right now.  So we are in the process of

4

1    retaining him.

2              That being the case, we would -- because Mr. Fries

3    has joined the conference and we are here, we would want --

4    we would agree to proceed in any way the Court wishes to

5    proceed or to order a short continuance to allow Mr. Kornfeld

6    to return to the city and get up to speed.  It would be early

7    next week according to the schedule that we discussed with

8    him today.  Or in the alternative, with the Court's

9    permission, at the very least allow me to enter a special

10   appearance for the limited purpose of the arraignment

11   colloquy with the Court under Rule 10 since Mr. Fries, as I

12   said, is available.

13             With regard to the conditions of release, after

14   what I just experienced with the detailed argument, I'm at

15   least leaning toward allowing Mr. Fries' counsel to address

16   those issues and the issues raised in the discovery

17   memorandum that the Court has discussed -- also discussed

18   with Mr. Penn's counsel.

19             Having said all of that, we can move forward if the

20   Court would rather do it that way.  We'll leave it up to the

21   Court's discretion.

22             THE COURT:  All right.  Well, let me ask Government

23   counsel to weigh in with respect to the various options

24   outlined by Mr. Murphy.

25             Does the Government have a position as to whether

5

1   any or all -- any part or the whole of this proceeding can be

2   delayed for the purposes of allowing Mr. Kornfeld to enter

3   his appearance on behalf of Mr. Fries and represent him in

4   this matter?

5            MS. CALL:  Yes, Your Honor.  First, just to ensure

6   that the record is correct, as the Government did inform

7   defense counsel in the last 24 hours, we did first request

8   that Mr. Fries retain separate counsel in (inaudible) of the

9   last year, so it has been many months because we made counsel

10  aware of the potential for conflict here.

11           As to the precise means in moving forward, the

12  Government would defer to the Court as to the (inaudible).

13           THE COURT:  All right.  Well, I mean, we have a

14  couple of logistical issues, Mr. Murphy, as you know.  I

15  mean, you know, unless the Government agrees that there can

16  be some sort of a continuance, the Court is reluctant to

17  allow that because the case remains charged but entirely in

18  limbo with no decisions as to detention and conditions of

19  release and a plea or anything like that if we simply

20  continue this hearing to a date when Mr. Kornfeld is back in

21  town.  That's my first concern.

22           My second concern is I do not know the extent to

23  which you think you have an ethical problem with having a

24  limited appearance from Mr. Fries today for purposes of

25  completing what I understood to be the general program for

6

1     the defendants in this case, which is an initial appearance,

2     an arraignment, a discovery conference and a bond hearing.

3            Certainly, I would be inclined to postpone the

4     arraignment and discovery conference portions of this hearing

5     because neither one of those matters need to occur today, but

6     the initial appearance where the defendant is advised of the

7     charges against him and read his rights and acknowledges his

8     rights and the detention portion of the hearing where some

9     decision is made about release of the defendant most likely

10    would have to occur today unless the Government agrees to

11    postpone them and it does not sound like the Government will

12    agree to postpone them.

13           So, you know, you're in a position that I'm not in,

14    which is you understand the nature of your alleged conflict

15    with respect to representing Mr. Fries today.  You know, I

16    can't give you advice about that, but without the

17    Government's agreement to postpone any part of this hearing,

18    I feel that we must go forward with the initial appearance

19    and the bond hearing.

20           Now, as I understand it, the Government is not in

21    disagreement with respect to bond, that Mr. Fries should also

22    be placed on bond.  There may be some dispute about

23    conditions as there was with respect to Mr. Penn, but there

24    does not appear to be a dispute as to the nature of the fact

25    that he should be released.

1          So in light of all that, Mr. Murphy, what do you

2   want to do?

3          MR. MURPHY:  I totally understand, Your Honor.

4   We're prepared to move forward on the advice of rights and

5   the conditions of release.  That's no problem at all.  I will

6   say that I'm -- I certainly am not agreeing that there is a

7   conflict.  All I'm saying is that we're deferring to what the

8   Government wants in order to move this matter along and not

9   put our other client at risk and so we're reserving all

10   rights in that regard, but we feel it's prudent and we're

11   being as cautious as we can to protect Mr. Fries' rights.  So

12   -- am I speaking too loudly?

13          THE COURT:  No.

14          MR. MURPHY:  Oh, okay.

15          THE COURT:  The louder the better as far as I'm

16   concerned.

17          MR. MURPHY:  Okay, all right.

18          So we can move forward.  We're prepared to discuss

19   the additional conditions of release if the Court desires.

20          THE COURT:  All right, thank you.  I think with

21   that, then, we'll proceed with the initial appearance and

22   with the bond release hearing.  I am going to continue the

23   arraignment and discovery conference.  I think it's only fair

24   that Mr. Fries be permitted an opportunity to consult with

25   the person who's likely to represent him going forward in the

8

1    case, Mr. Kornfeld.

2           Mr. Murphy, you can help me with that part of this

3    by giving me some information about when you expect Mr.

4    Kornfeld to return to Denver and to be in a position where he

5    could participate in an arraignment and discovery conference

6    on behalf of Mr. Fries.

7           MR. MURPHY:  Your Honor, I think it can be as early

8    as Monday or Tuesday of the coming week.

9           THE COURT:  All right.  I'd like to set that on my

10   docket on Monday or Tuesday, just so that I can spare myself

11   the trouble of having to explain to the next duty magistrate

12   judge what's happened here with respect to Mr. Fries' case.

13   So what time would we have available on Monday for an

14   arraignment and discovery conference.  And, of course,

15   counsel for the Government, I'll make sure that this works

16   for you as well.

17          DEPUTY:  Can we do 10:30?

18          MS. CALL:  Yes, Your Honor, counsel for the

19   Government will be available whenever works for the Court and

20   defense.

21          THE COURT:  All right, thank you.  10:30 a.m. on

22   Monday, June -- what's the date?  8th?

23          DEPUTY:  8th, Your Honor.

24          THE COURT:  Monday, June 8th, 10:30 a.m.  And Mr.

25   Murphy I'm going to, of course, rely on you in part to

9

1   communicate that to Mr. Kornfeld, and to the extent that that

2   becomes a problem, Mr. Kornfeld may file a written motion to

3   change the date or time as necessary.  All right?

4           MR. MURPHY:  I will do so, Your Honor.  Thank you

5   very much.

6           THE COURT:  Thank you.  Mr. Fries, you can hear me,

7   I take it, and you can see me as well?  Mr. Fries, can you

8   hear me?

9           MR. MURPHY:  Apparently he can hear you, but his

10  mic may not be on.

11          THE COURT:  If he's the gentleman in the blue suit,

12  blue shirt with the plant behind him.  I don't know that he

13  can hear me.

14          MR. MURPHY:  Yes.

15          THE COURT:  Yeah, he's not --

16          MR. MURPHY:  Can you hear me now?

17          THE COURT:  All right.

18          MR. MURPHY:  There we go.

19          THE COURT:  All right.  I do hear you now, Mr.

20  Fries.

21          MR. FRIES:  I'm sorry about that.

22          THE COURT:  That's all right.  The video is

23  difficult.

24          All right.  So, sir, we're going to conduct two

25  parts of this hearing today.  We're going to conduct the

1   initial appearance where I tell you about the charges and

2   your rights and then we're going to go into the issue of the

3   release on conditions.

4          The charge against you is trust, et cetera, in

5   restraint of trade illegal.  The penalty on that count is not

6   more than ten years imprisonment, not more than a $1,000,000

7   fine or two times the gain or loss, whichever is greater, or

8   both a fine and imprisonment, not more than three years of

9   supervised release and a $100 special assessment fee.

10          Do you understand the general nature of the charge

11   against you?

12          MR. FRIES:  Yes, Your Honor.

13          THE COURT:  Sir, you have the right to remain

14   silent.  You do not need to speak to anyone about the

15   circumstances that brought you to court today.  If you do

16   choose to speak to someone other than your attorney about

17   those circumstances, what you say can and probably will be

18   used against you in court.  If you are questioned by the

19   police or law enforcement, you have the right to refuse to

20   answer questions.  You also have the right to insist that an

21   attorney be present with you during questioning.  If you

22   choose to remain silent, your silence cannot be used against

23   you in court.

24          Do you understand your right to remain silent?

25          MR. FRIES:  I do, Your Honor.

1              THE COURT:  Sir, you have the right to an attorney,

2     and because you have already retained Mr. Murphy for these

3     limited purposes today, I assume you're not asking me to

4     appoint a free attorney for you; you intend to retain your

5     own counsel to represent you in this case?

6              MR. FRIES:  That is correct.

7              THE COURT:  All right.  All right, so that

8     completes the portion of the hearing that relates to the

9     initial appearance.  Now we'll move on to the discussion of

10    detention.

11             As I understand it, The government has agreed to a

12    bond.  The bond proposed by the Government has certain

13    conditions.  The conditions, as proposed by the Government --

14    I'm going to go through these and make sure that I'm on the

15    right page here and I'll allow Mr. Murphy to address these on

16    your behalf, Mr. Fries.

17             The conditions would be that you surrender your

18    passport to the Clerk of the Court within two business days.

19    You may not obtain a new passport or other international

20    travel document.  You may not travel outside the home

21    district and the district of Colorado without permission of

22    the Court.  You may have no direct contact initiated with the

23    employees of the broiler chicken suppliers listed on

24    Attachment A that's been provided to the Court and no direct

25    contact initiated by you with the employees of the companies

12

1    listed on Attachment B which are alleged victims.  You may

2    not possess a firearm, a destructive device or another weapon

3    and you may not act as an informant for any law enforcement

4    agency without permission of the Court.

5             Is that a correct summary, Ms. Call, of the

6    conditions for release posed by the Government?

7             MS. CALL:  Yes, Your Honor.

8             THE COURT:  All right, thank you.

9             And I'll hear from defense counsel, Mr. Murphy,

10   with respect to these conditions.  What's the defendant's

11   position?

12            MR. MURPHY:  Yes, Your Honor, thank you.  So -- and

13   Chuck Murphy on behalf of Mr. Fries.

14            So with regard to 7(d), which is the first one

15   that's checked on the additional conditions, we have reached

16   an understanding with the Government that Mr. Fries' passport

17   -- and by the way, the probation officer's report is

18   incorrect with regard to that.  He does possess a passport.

19            THE COURT:  All right.

20            MR. MURPHY:  It states he does not.

21            THE COURT:  Thank you.  Sorry, thank you.

22            MR. MURPHY:  So with regard to the surrender of the

23   passport, we've agreed with the Government that the passport

24   can be surrendered to his attorney as opposed to the Clerk of

25   the Court.

1          THE COURT:  All right.

2          MR. MURPHY:  The next one we would dispute is --

3     actually, the two kind of go hand in hand, the 7(f) and 7(g)

4     that you just had the extensive argument with Mr. Tubach

5     about.

6          So with regard to these restrictions, we believe

7     that one of the words that -- in the part that's been filled

8     in by the Government that has not been discussed is the fact

9     that the direct contact has to be initiated by the defendant.

10    So, you know, we've agreed that in terms of initiation of a

11    contact, we're okay with that with respect to a -- at least a

12    customer or a victim as they're being called.  We don't

13    believe they are, but that's for the sake of argument, let's

14    say that.

15         With respect to the suppliers, the same word is

16    used, initiated by the defendant.  And so, you know, we think

17    that with respect to those people you are -- your gloss on

18    that, the -- let's see, price negotiators for suppliers

19    during the period 2012, 2015, who the Government will ID by

20    name, we'd like to discuss that with Mr. Fries.  We believe

21    that may be acceptable.

22         So if the Court could give us leave to do that, we

23    would appreciate it and report back to you and the

24    Government.

25         THE COURT:  You certainly may.  I do have the

1    technological ability to do that now while we wait or are you

2    asking me to pass this matter over and handle other matters

3    until you're ready to proceed?

4           MR. MURPHY:  Well, I'm happy to do that now or

5    actually get out -- I'll just get on a call with Mr. Fries

6    and Mr. Herbison and we can discuss it right now.

7           THE COURT:  All right, I think I would prefer that

8    you do that, Counsel, simply because the technology has been,

9    for lack of a better word, nightmarish and to --

10          MR. MURPHY:  Okay.

11          THE COURT:  -- try to get you back on the video

12   with your client, et cetera, if I move on to other matters is

13   a concern to me.  So we'll just allow you to take a break now

14   and --

15          MR. MURPHY:  Okay.

16          THE COURT:  -- you'll need to come back on the

17   audio and inform me when you are ready to proceed.  All

18   right?

19          MR. MURPHY:  Yes, Your Honor.  May I be excused for

20   a moment?

21          THE COURT:  You may.  And of course, Mr. Fries, you

22   should make sure that to the extent you're talking with your

23   attorney, you're not on audio so that we can hear you. Do you

24   have a staple remover over there?

25          (Pause in the proceedings.)

15

1           MR. MURPHY:  Okay, Your Honor.  We're -- I'm back.

2           THE COURT:  All right.

3           MR. MURPHY:  Is this convenient?

4           THE COURT:  Thank you.

5           MR. MURPHY:  All right.

6           THE COURT:  Let me make sure we've got everybody

7    on, Counsel, so that you can be heard.  Ms. Call, can you

8    hear us still?

9           MS. CALL:  Yes, Your Honor.

10          THE COURT:  All right.  And, Mr. Fries, can you

11   hear us?

12          MR. FRIES:  Yes, Your Honor.

13          THE COURT:  All right.  And, Mr. Murphy, go ahead.

14          MR. MURPHY:  Thank you, Your Honor.

15          All right.  So we find acceptable the same language

16   that Mr. Penn agreed to or that the Court -- or that the

17   Court ordered with regard to Mr. Penn.  As to -- and that

18   would be Attachment A.

19          As to Attachment B, we would like the ability --

20   and this is even more important for Mr. Fries because of his

21   position, that if there is a call that is initiated by a

22   customer, that he may accept the call and talk about -- and

23   talk whatever the customer -- talk about whatever the

24   customer wants because obviously the customer is not

25   intimidated.  He's calling Mr. Fries.

16

1          THE COURT:  Well, and that's what I understand the

2    language proposed by the Government to mean, because it says:

3    No direct contact initiated by the defendant with the

4    employees of the companies --

5          MR. MURPHY:  Yes, ma'am.

6          THE COURT:  -- listed in Attachment B.  So a plain

7    reading of that to me means that what you just described

8    would be permitted.

9          MR. MURPHY:  Perfect.  That's fine, Your Honor,

10   we're fine with it.

11         THE COURT:  All right.  And --

12         MR. MURPHY:  And we -- I'm sorry, Your Honor.

13         THE COURT:  No, go ahead.  Go ahead.  I'm sorry, I

14   didn't mean to cut you off.

15         MR. MURPHY:  No, no, no.  No, you didn't.  So --

16   all right, so --

17         THE COURT:  And so it sounds like what you were

18   asking for --

19         MR. MURPHY:  I want to talk about --

20         THE COURT:  You're asking to modify the passport

21   conditions so that the passport be surrendered to you as

22   counsel and not to the Clerk of Court, you're asking for the

23   same modification with respect to Attachment A -- in other

24   words, that the Government list by name those individuals

25   with whom --

1       MR. MURPHY:  Yes.

2       THE COURT:  -- the defendant cannot have contact,

3  and otherwise you -- the conditions proposed by the

4  Government are acceptable to you, is that right?

5       MR. MURPHY:  As to 7(g), yes, which would be

6  Attachment B.  There are two others that I want to discuss,

7  though, with Your Honor, and that is the firearm issue as to

8  subparagraph (k), Not possess a firearm, is a problem for Mr.

9  Fries.

10      I don't know whether the Court is aware of the

11  culture in southeast Georgia, but the hunting is prolific and

12  that's what these gentlemen do.  They go out and hunt and

13  they need to have firearms to do that, and Mr. Fries, as he

14  disclosed to the probation officer, has a collection of long

15  guns.  He also has a collection of firearms that his late

16  father willed to him and that is his -- actually his memory

17  of his father, so he has that gun collection too.

18      So we would like there to be an exception here with

19  respect to possessing a firearm.  He uses it -- he uses the

20  firearms for sporting purposes.  He usually hunts on his own

21  land, but sometimes he does take an occasional trip out of

22  the district or out of the country to go on hunts.  So we

23  would -- we don't see that that's an issue, it's not a

24  violent crime case, not a case involving a firearm.  He has

25  been a hunter since he was a little boy, he's taught his

 1    young sons to hunt, and we just don't -- we think it's part

 2    of the culture of southeast Georgia and something that really

 3    is expected by many of the customers who are entertained by

 4    Mr. Fries and his company year to year.

 5            THE COURT:  All right, so Mr. Murphy let me make

 6    sure I understand.  Are you requesting that the firearm

 7    prohibition be removed in its entirety or are you requesting

 8    that the firearm prohibition be limited to non-hunting

 9    weapons?  I mean, I don't even know if you can make that

10    distinction, frankly, but you tell me what you want.

11            MR. MURPHY:  I don't think, you know -- well,

12    certainly there's self protection that he'd have to have, you

13    know, possibly a handgun somewhere within the house, but I'd

14    have to talk to him, but I do think that using the guns for

15    sporting purposes would certainly be a reasonable exception

16    to this condition.

17            THE COURT:  All right, thank you.  And let me ask

18    counsel for the Government, what is your position with

19    respect to the modification suggested by the defendant?

20            MR. MURPHY:  Your Honor, could I be -- before I --

21    I beg your pardon, but I just -- I'm reminded that the

22    probation officer, Tommy Anderson, agreed with our position

23    with regard to firearms, but I -- obviously you would want to

24    get that directly from him, but -- I apologize for the

25    interruption.

1          THE COURT:  That's all right, thank you.  All

2     right?

3          MS. CALL:  Yes, Your Honor.  Heather Call here and

4     I'll be brief.

5          Our primary concern with the firearms is for the

6     health and safety of the defendant and his family.  This is

7     based largely on our experience in other white collar cases

8     that the impact of a felony charge of this kind can have on a

9     defendant, particularly when they have such ready access to

10    these firearms.  Our proposal to defense counsel on this had

11    been to perhaps to restrict the defendant's access to the

12    firearms in his house, for example, by changing the code or

13    the key on the gun locker such that the defendant can

14    maintain the firearms of his family member but not have

15    access to them.

16         THE COURT:  So, I'm sorry, maybe it's just getting

17    late in the day and I'm dense, but you're saying that you

18    don't mind if the defendant keeps all the weapons in his

19    home, but you just don't want him to have access to any of

20    them?

21         MS. CALL:  That was our proposal to defense counsel

22    based on their statement that he did not want to lose the

23    firearms of his father.

24         MR. MURPHY:  Well, Your Honor, there are two issues

25    here.  The sporting purpose of having the firearms is

1   extremely important to Mr. Fries.  It's part of his life.

2   That's what his -- he and his friends do, so I just -- I

3   think it's an unreasonable restriction here based upon the

4   charges in this case, which do not involve anything in your

5   wildest imagination involving firearms or any kind of

6   violence.

7        So I just -- I don't -- I think this is a very

8   plain overreach on the part of the Government.

9        MS. CALL:  Your Honor, if I may add one point?

10       THE COURT:  Go ahead.

11       MS. CALL:  It is worth noting that we understand

12   from defense counsel that I believe the defendant does go on

13   hunting trips with employees of the victim companies in this

14   case and the Government has concerns about that (inaudible).

15       THE COURT:  Well, Ms. Call, you're fading in and

16   out and I can't -- I didn't hear all of that, I'm sorry.

17       MS. CALL:  I apologize.  Can you hear me all right

18   now?

19       THE COURT:  That's a little better.

20       MS. CALL:  Okay.  I noted the additional concern

21   that we understand from counsel that the defendant does go on

22   hunting trips with the employees of the victim companies in

23   this case, which is an additional concern on the part of the

24   Government.

25       THE COURT:  Well, yeah, now we're really getting

1    into the weeds.  I mean, we're already talking about a

2    condition of bond which precludes him from initiating any

3    contact with any employee of any of the victim companies.  So

4    to the extent that he goes on a hunting with employees of the

5    victim companies, those hunting trips would have to be

6    initiated by those employees or he would be in violation of

7    the conditions of his bond.

8             So if those employees of those victim companies

9    wish to initiate a hunting trip with this defendant while

10   charges are pending against him, in my view, the Court is not

11   going to prohibit that.  I understand and respect the fact

12   that the use of sporting guns is part of the defendant's

13   life, and I think that under these circumstances, we can

14   fashion a condition of release that precludes the defendant

15   from using firearms except for sporting purposes, and I think

16   that's probably a fair way to allow him to continue to pursue

17   his hobby and sport without unduly interfering with his

18   rights and that's what I intend to do.

19            With respect to the surrender of the passport to

20   the attorney, Ms. Call, does the Government have any

21   objection to that?

22            MS. CALL:  No, Your Honor.

23            THE COURT:  All right.  So the Court will find that

24   there's a combination of conditions that I can impose that

25   will reasonably assure the defendant's appearance in court in

22

1    the future, as well as the safety of the community.

2            Mr. Fries, you'll be released on a personal

3    recognizance bond.  You must surrender your passport to your

4    attorney within two business days.  You must avoid all

5    contact -- direct contact initiated by you with the

6    individuals identified by the Government with respect to the

7    suppliers listed on Attachment A.  Those individuals will be

8    identified by name by a document filed under restriction on

9    the electronic docket by the close of business today, June

10   4th, 2020.

11           You also will not initiate direct contact with

12   employees of the companies listed on Attachment B to the bond

13   paperwork.

14           You may not use firearms except for sporting

15   purposes and you may not act as an informant for any law

16   enforcement agency without prior permission of the Court.

17           Do you understand the conditions of your release,

18   Mr. Fries?

19           MR. FRIES:  Yes, ma'am, I do.

20           THE COURT:  And are you authorizing me to sign the

21   bond paperwork on your behalf with respect to those

22   conditions?

23           MR. FRIES:  I do, Your Honor.

24           THE COURT:  All right.

25           MR. MURPHY:  Your Honor, I beg your pardon, but I

1    -- there was one more -- there was one more provision that we

2    wanted to address and that is the no travel outside of the

3    home district and the district of Colorado.  If the Court

4    could see its way clear to imposing the same condition that

5    was argued for by Mr. Penn's attorney, we would be in

6    agreement with that.

7              THE COURT:  All right.  Well, refresh my

8    recollection.  What particular condition are you talking

9    about?  If he's surrendering his passport to you --

10             MR. MURPHY:  That's --

11             THE COURT:  -- he's not going to be able to travel

12   outside of the country.  I was not intending to impose any

13   other travel restriction on him.

14             MR. MURPHY:  Okay, that's fine.  So if my

15   understanding is correct, to the extent he has any

16   international travel, he would apply to the Court for that --

17             THE COURT:  That's right.

18             MR. MURPHY:  -- to travel?  Got you.

19             THE COURT:  That's right.

20             MR. MURPHY:  My apologies for not reading that up,

21   Your Honor.

22             THE COURT:  All right, I will then execute the bond

23   paperwork with respect to Mr. Fries.

24             Mr. Fries, you'll be back in Court on Monday, June

25   8th at 10:30 a.m. with your attorney, Mr. Kornfeld, for

24

1    purposes of an arraignment and a discovery hearing.  You may

2    appear by video at that time as well, as may Mr. Kornfeld.

3           Is there anything further from the government with

4    respect to Mr. Fries?  Ms. Call, I did not get an audible

5    response from you?

6           MS. CALL:  No, Your Honor.

7           THE COURT:  Thank you.  Anything further from

8    defense counsel on Mr. Fries?

9           MR. MURPHY:  Your Honor, just a housekeeping thing.

10   How do we handle electronic signature by Mr. Fries?

11          THE COURT:  Well, the way we're handling that these

12   days is that the Court is indicating on the bond paperwork

13   that the defendant verbally authorized signature to the

14   Court, and I'm writing that in and signing my initials to it

15   and that's the way we're handling it.

16          MR. MURPHY:  Thank you, we're fine with that.

17   Thank you, Your Honor.

18          THE COURT:  All right, thank you.

19          MR. FRIES:  Your Honor?

20          THE COURT:  Yes, Mr. Fries.

21          MR. FRIES:  One of the things that you had read

22   earlier and I don't know -- it said that I would not leave

23   the Colorado area --

24          THE COURT:  Yeah, that's --

25          MR. FRIES:  -- but I live in Georgia.

1          THE COURT:  I'm not imposing that restriction, that

2    travel restriction on you.

3          MR. FRIES:  Okay, thank you.

4          THE COURT:  You're turning your passport over to

5    your attorney --

6          MR. FRIES:  Yes.

7          THE COURT:  -- so if you want to travel outside of

8    the country, you're going to have to apply to the Court for

9    permission to travel outside of the country, but you are not

10   restricted in your travel nationally within the United

11   States.  All right?

12         MR. FRIES:  I understand, thank you.

13         THE COURT:  Thank you.  We're in recess on Mr.

14   Fries.  In Case --

15         MR. TUBACH:  Your Honor, this is Michael --

16         THE COURT:  Yeah, go ahead.

17         MR. TUBACH:  Apologies, Your Honor.

18         THE COURT:  Go ahead.

19         MR. TUBACH:  This is Michael Tubach again for

20   Jayson Penn.  I apologize.  For reasons delayed, I -- we had

21   been speaking in shorthand.  I assume the Court used the same

22   language about initiating contact with the customer as the

23   Court just did with the others?

24         THE COURT:  Yes.

25         MR. TUBACH:  That's the language the Government

26

1    proposed?

2              THE COURT:  Yeah, and it's the language --

3              MR. TUBACH:  Great.

4              THE COURT:  -- that's actually in the bond

5    paperwork proposed by the Government, so, yes.

6              MR. TUBACH:  Thank you very much.  I apologize, I'm

7    sorry to interrupt.

8              (Whereupon, the within hearing was then in

9    conclusion at 4:02 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

```
1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    June 10, 2020

8    Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com