IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.      JAYSON JEFFREY PENN,
2.      MIKELL REEVE FRIES,
3.      SCOTT JAMES BRADY,
4.      ROGER BORN AUSTIN,
5.      TIMOTHY R. MULRENIN,
6.      WILLIAM VINCENT KANTOLA,
7.      JIMMIE LEE LITTLE,
8.      WILLIAM WADE LOVETTE,
9.      GARY BRIAN ROBERTS, and
10.    RICKIE PATTERSON BLAKE,

       Defendants.

## DEFENDANT MIKELL FRIES' MOTION FOR BILL OF PARTICULARS

Mikell Reeve Fries, by and through undersigned counsel and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully requests the Court order the United States of America (hereinafter, "United States," or "government") to file a bill of particulars as to the October 6, 2020, Superseding Indictment. As grounds for this request, Mr. Fries states the following:

1

## I.     BACKGROUND

On June 2, 2020, a Grand Jury returned a one-count Indictment against Mr. Fries and three codefendants for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Dkt No. 1 at ¶ 1.).

*Original Indictment*

In understanding the need for a bill of particulars, counsel must briefly explain the two Indictments' procedural and factual histories. In the original Indictment (hereinafter, "Indictment"), the United States alleged a price-fixing and bid-rigging conspiracy, allegedly occurring between 2012 and 2017, relating to suppliers of broiler chicken products. (*Id.* ¶¶ 1, 3, 21-25.) The Indictment described eight separate incidents that allegedly constituted the "means and methods of the conspiracy." (*Id.* ¶¶ 32-77.) There are seven distinct acts pertaining to some of the conspirators, and one over-arching claim against all the alleged conspirators related to "protecting the purpose and effectiveness of the conspiracy." (*Id.* ¶¶ 63-65).

At the same time, the Indictment also suggested a broader conspiracy than just those eight incidents. (*Id.* ¶¶ 28-31.) It alleged a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States." (*Id*. ¶ 28.) It contended that the acts formed "part" of the conspiracy. (("It was part of the conspiracy ...."); *Id*. ¶ 29 ("It was further part of the conspiracy ...."); *id*. ¶¶ 30, 31. It alleged, with no factual detail, that the coconspirators utilized their "continuing network" to reach agreements and understandings to submit "aligned" bids, to participate in conversations and communications relating to non-public information, and to monitor bids. (*Id*. ¶ 29(a)-(c).) The Indictment identified five customers (*id.* ¶¶ 21-25), but did

not specify whether the conspiracy was limited to just those five. As counsel had not yet received the government's purported key or "hot" documents substantiating its allegations against Mr. Fries, counsel did not file a motion for a bill of particulars within fourteen days following the return of the original Indictment.

*Superseding Indictment*

Since the return of the Indictment, the government has produced approximately 12.5 million documents (not pages) to the four original defendants, comprising 19 terabytes of data. The United States recently represented it will produce even more documents soon.

On October 6, 2020, the Grand Jury returned a Superseding Indictment (hereinafter, "Superseding Indictment") against Mr. Fries and nine codefendants, charging them with a single count of violating Section 1 of the Sherman Act, 15 U.S.C. § 1. (Dkt. 101). Two additional counts are alleged against codefendant Jimmie Lee Little (Dkt. *Id.*. ¶¶ 1, 147, 151). The Superseding Indictment differs from the original Indictment in accusing a broader price-fixing and bid-rigging conspiracy over a longer period of time. The government now alleges a conspiracy between 2012 and at least 2019, involving even more suppliers of broiler chicken products and more customers. (*Id.* ¶¶ 1, 3, 47-50.) The Superseding Indictment identifies eight customers and one distributor (*Id.* ¶¶ 36-44), but does not specify whether the conspiracy is limited to those individuals or entities. The Superseding Indictment describes fourteen separate incidents that constitute the "means and methods of the conspiracy" (*id.* ¶¶ 51-143), and now argues an even broader conspiracy than these fourteen incidents. (*Id.* ¶¶ 47-50.) The Superseding Indictment again alleges a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler

chicken products sold in the United States." (*Id*. ¶ 47.) It again contends that the acts alleged in the indictment formed "part" of the conspiracy alleged. (("It was part of the conspiracy ...."); *id*. ¶ 48 ("It was further part of the conspiracy ...."); *id*. ¶¶ 49, 50 (same).) In addition, the Superseding Indictment alleges the coconspirators utilized their "continuing network" to reach agreements and understandings to submit "aligned" bids, participate in conversations and communications relating to non-public information, and to monitor bids. (*Id*. ¶ 48(a)-(c).)

Given this broad and vague language, the Superseding Indictment alleges more incidents are underlying the charges against Mr. Fries, and names more individuals who are allegedly involved in the charged conspiracy. When they received the discovery relevant to the original Indictment, counsel were optimistic that a review of the government's key documents would fully apprise Mr. Fries of the nature of the allegations against him. Counsel's optimism proved misguided. The 5,400 "hot documents" provided by the United States make scant mention of Mr. Fries, and cover time periods twice as old as the start of the alleged conspiracy. Ongoing review of the 12.5 million documents produced thus far fails to reveal substantial confirmation or clarification of the government's theory as to any defendant, including Mr. Fries.

The Superseding Indictment further muddies the water, as it adds six incidents, most of which do not appear to involve Mr. Fries, and six new defendants, some of whom Mr. Fries has never met and does not even know. The fourteen incidents involve a hodgepodge of different individuals, customers and business relationships, making it even less clear what the supposed illegal agreement is, or when and how Mr. Fries allegedly agreed.

To defend himself at trial, Mr. Fries is entitled to know, with more particularity, information about these incidents, as well as any other unmentioned incidents, that the

government is going to attempt to rely on in its effort to prove the alleged conspiracy, including his involvement in any or each.

Specifically, the Superseding Indictment fails to allege with particularity:

(1) the bids and prices allegedly fixed or aligned;

(2) when the alleged conspiracy began;

(3) when and by what action(s) Mr. Fries agreed to join the conspiracy;

(4) the identities of the alleged coconspirators; and

(5) the substance of the conspiratorial agreements.

## II.     LEGAL STANDARD

In the interest of judicial economy and the court's patience, Mr. Fries respectfully incorporates by reference, pursuant to Local Cr. Rule 12.1(b), the legal authorities outlined in the Motion for Bill of Particulars by Jayson Penn filed on October 27, 2020.

## III.    ARGUMENT AND REQUESTED PARTICULARS

The Superseding Indictment fails to "inform [Mr. Fries] of the charge against him with sufficient precision to allow him to prepare his defense." *United States* v. *Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). Each of the three factors identified by *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985), for a court to consider when determining whether to grant a bill of particulars weighs in favor of granting the motion here: the clarity of the indictment, the degree of discovery provided, and the complexity of the offense charged. Because these three categories of information are necessary for Mr. Fries to reasonably prepare his defense, the Court should order the government to provide a bill of particulars. At a minimum, Mr. Fries needs to know:  (1) the bids and prices allegedly fixed or aligned; (2) when the alleged conspiracy began;

5

(3) when and by what actions(s) Mr. Fries agreed to join the conspiracy; (4) the identities of any additional alleged coconspirators; and (5) the government's theory of how Mr. Fries allegedly participated in the conspiracy. A bill of particulars is the proper avenue for greater factual details. *See, United States v. Mobile Materials,* 871 F.22 902 (10th Cir. 1989), modified on other grounds, 881 F.2d 866 (10th Cir. 1989).

For purposes of illustrating Mr. Fries' struggle to understand and prepare a defense to the allegations against him, his name is substantively referenced in only *eight* paragraphs of the 151-paragraph Superseding Indictment. Even then, but for two phone calls, Mr. Fries is alleged only to have communicated with one person, Scott Brady, the Vice President of his own company, Claxton, for which Mr. Fries serves as President. The relevant paragraphs naming Mr. Fries (paragraphs 56, 65, 74, 86, 99 and 100) list internal communications between the two. Paragraphs 101 and 105 state, without context or substance, that Mr. Fries called two individuals, both of whom are employees of another supplier, and neither of whom are indicted coconspirators. The government fails to elucidate how these routine communications, among thousands of such routine communications, constitute substantive evidence of Mr. Fries' involvement in the alleged conspiracy.

Further, neither the Superseding Indictment nor any of the documents deemed "hot" by the United States set forth Mr. Fries' involvement in the bids and prices he allegedly participated in fixing, when the conspiracy began, when and how Mr. Fries joined the conspiracy, the identity of the coconspirators, and/or the substance of the conspiratorial agreements.

**A. The government should identify the bids and prices allegedly fixed.**

The Superseding Indictment sets forth four dates on which Mr. Fries engages in discussions the United States deems illegal.  Indeed, there are ten indicted coconspirators, but the government alleges Mr. Fries had communication with only one, Mr. Brady, the Vice President of his own company.  Moreover, there are bids included in the Superseding Indictment that do not involve Mr. Fries, but are supposedly part of the conspiracy. Mr. Fries needs to understand which bids were allegedly rigged, and which prices or price terms were allegedly fixed. Mr. Fries also needs to understand which bids were allegedly aligned. Mr. Fries requests the government provide a list of the implicated contracts and bids, as well as those that were allegedly aligned with the conspiracy.  Given the volume of discovery, Mr. Fries seeks particularization as to all the incidents upon which the government intends to rely on to prove its case at trial. More specifically, to adequately prepare for trial, Mr. Fries asks that the government provide a list of implicated contracts or bids, including the time frame, the customers, the relevant products, the allegedly impacted contractual terms or prices, the suppliers involved, and the names of those with whom he allegedly conspired.

The Superseding Indictment does not specify the substance of the alleged agreements, or overarching conspiracy.  In fact, the Superseding Indictment describes price bids that are materially different from each other, by unrelated parties and unrelated conduct, seemingly with little to no connection to the other, or to their bids.  Mr. Fries seeks a description of the illegal agreement he allegedly entered into, with particularity, regarding the fixed bids and prices.

**B. The government should identify the dates of the conspiracy, and when and by what action(s) Mr. Fries joined the conspiracy.**

7

The timing of an agreement is crucial for an answer to the allegations. The Superseding Indictment fails to set forth, with particularity, the dates of the alleged illegal conduct, and the means by which Mr. Fries allegedly joined the conspiracy. Accordingly, Mr. Fries insists on adequate notice of the United States' theory against him, including the substance of the alleged agreements between the conspirators. The Superseding Indictment includes disjointed and unrelated actors and actions over at least a seven-year period (in which Mr. Fries is alleged to have participated in acts between 2012 and 2014). The government should specify how the described incidents implicate Mr. Fries, including identifying which acts of other employees at Claxton, if any, the government contends Mr. Fries is responsible for, and under what theory This information is critical because Mr. Fries has no alleged involvement in nine out of the fourteen alleged incidents in the Superseding Indictment. The loose language, as it pertains to Mr. Fries, in the Superseding Indictment suggests the government may seek to hold him responsible for this conduct through an undefined "continuing network," about which he is unaware. Mr. Fries is entitled to know the government's theory as to how he joined and contributed to the charged conspiracy so that he can prepare his defense. *United States v. Feil*, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010); *cf. United States v. Moore*, 556 F.2d 479, 483 (10th Cir. 1977) (affirming denial of motion for bill of particulars where indictment left no doubt about the government's theory of the case).

Further, acting "knowingly" means to act voluntarily and intentionally, not because of a mistake or accident. *United States v. Wise,* 370 U.S. 405, 415-416 (1962). Therefore, for Mr. Fries to be convicted, the evidence must establish that he joined the conspiracy with the intent to advance the objective of the conspiracy, i.e. price-fixing. Again, the Superseding Indictment

8

accuses Mr. Fries of knowing of a conspiracy, yet fails to set forth a basis for explaining the conclusion that he joined the conspiracy with the intent to advance price-fixing.

### C. The government should identify all of the coconspirators.

For Mr. Fries to meet the charge against him, and to avoid the danger of injustice, the United States should identify all of the alleged coconspirators. *United States v. Miller,* 543 F.2d 1221 (8th Cir. 1976), *cert. denied,* 429 U.S. 1108 (1977). Put simply, Mr. Fries must know with whom he is alleged to have conspired and when he apparently did so. Mr. Fries also needs to know the names of all individuals and companies who are allegedly members of the conspiracy, when they joined the alleged conspiracy, and when the conspiracy ended. *See, e.g.*, *Rogers*, 617 F. Supp. at 1028 (government required to identify undisclosed and unidentified coconspirators, aiders and abettors, and other individuals involved in the criminal acts charged); *United States v. Gomez*, 2011 WL 5828016, at *3 (D. Kan. Nov. 18, 2011) ("government shall identify the known but undisclosed coconspirators"); *United States v. Welch*, 198 F.R.D. 545, 551 (D. Utah 2001), citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) ("the disclosure of known unindicted coconspirators should turn on a consideration and weighing of multiple factors"); *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (granting bill of particulars seeking information about coconspirators)[1].

The *Kahale* court has distilled six factors to assess the need for a bill of particulars listing unindicted coconspirators. *See Kahale*, 789 F. Supp. 2d at 372, citing *Nachamie*, 91 F. Supp. 2d

---

[1] *See also United States v. Mobile Materials*, 881 F.2d 866, 870 n.2 (10th Cir. 1989) (on rehearing) (referring without discussion to a trial court's order on the government's disclosure of unnamed coconspirators); *United States v. Washita Constr. Co.*, 789 F.2d 809, 813 n.4 (10th Cir. 1986) (same).

9

at 572–73.  Here, as in *Kahale*, at least four of these factors weigh in favor of disclosure:

(1) the number of potential coconspirators is potentially large;

(2) the alleged duration of the conspiracy, seven years, is relatively lengthy and the geographic scope of the conspiracy—nationwide—is expansive;

(3) the government has not otherwise provided the particulars requested; and

(4) the government has overwhelmed the defendants with "mountains" of discovery.  *See id.* at 372-73.

The government has provided no reason to believe the remaining two factors weigh against disclosure.  Finally, as in *Kahale* and similar cases, "the relative complexity of the [] charges facing defendants … also weighs in favor of requiring disclosure." *Id.* at 373.  The government should be ordered to identify all coconspirators and victims of the alleged conspiracy.

## IV.     LACK OF CLARITY IN DISCOVERY

While the government has produced more than 12.5 million documents and identified several thousand "hot documents," these materials, including the reports of witness interviews, barely mention Mr. Fries.  The fact that the government's database is searchable is not very helpful when "Fries" does not render many search results. The documents that do mention Mr. Fries do not illuminate the bases of the charge against him.  In addition, the fourteen episodes set forth in the Superseding Indictment, most of which do not involve Mr. Fries, fail to sufficiently advise Mr. Fries of the bases of the charge against him as they fail either to mention him or to involve him.  While the defense appreciates the government identifying approximately 5,300 documents as "highly relevant," most of those documents similarly do not pertain to Mr. Fries or

10

to Claxton.  Therefore, these "highly relevant" documents do not, in fact, constitute a "road map" for Mr. Fries and his counsel, much less adequately inform him of the specific facts underlying the charge against him.

1. **V.  CONCLUSION**

Mr. Fries is at least entitled to the basic information he needs to defend himself at trial. The Court should order the government to provide Mr. Fries a bill of particulars.  Mr. Fries respectfully requests particularity to the following:

(1) the bids and prices allegedly fixed;

(2) when the conspiracy began;

(3) when and by what action Mr. Fries agreed to join the conspiracy;

(4) the identities of the alleged co-conspirators; and

(5) the substance of the conspiratorial agreements.

October 27, 2020

Respectfully Submitted,

By:  */s/ Richard K. Kornfeld*
RECHT KORNFELD, P.C.
Attorney for Defendant Mikell Fries
Richard K. Kornfeld
1600 Stout St., Ste. 1400
Denver, CO 80202
Tel.: (303) 573-1900
rick@rklawpc.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2020, I electronically filed the foregoing **DEFENDANT MIKELL FRIES' MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*