# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANTS' JOINT MOTION FOR ADDITIONAL DISCOVERY

Defendants Jayson Penn, Mikell Fries, Scott Brady, Roger Austin, Timothy Mulrenin, William Kantola, Jimmie Little, William Lovette, Gary Roberts and Rickie Blake, by and through their respective counsel, respectfully move for additional discovery, and in support of said Motion, state as follows:

### BACKGROUND

The government has produced more than 13,000,000 documents in discovery to date. The vast majority of these documents consist of voluminous business records, phone records, and discovery produced in the related civil cases pending in other federal districts. There have been relatively few interview memoranda or other investigative documents. The government has

1

identified several thousand "highly relevant" documents which, from the perspective of the defendants, are neither highly relevant nor particularly enlightening.

On December 1, 2020, the government produced so-called "White Papers" it received from outside counsel for chicken producers George's, Koch, Pilgrim's Pride and Claxton, all of which either employed, or continue to employ, defendants in this criminal case. These White Papers are so heavily redacted that they are essentially useless to the defendants. It is clear, however, from reviewing the limited text of these redacted White Papers that counsel for these companies contended that the companies, and their employees, did not violate the law, i.e., did not commit criminal violations of the Sherman Antitrust Act. It is equally clear that the outside counsel who drafted these White Papers are intimately familiar with the facts underlying the allegations in the original Indictment or the Superseding Indictment and conducted their own independent investigation and analysis regarding potential criminal violations of the Sherman Act. Curiously, these are the *only* documents among the 13 million documents produced to date in which the government has redacted substantive information (as opposed to dates of birth or social security numbers).

In producing these redacted White Papers, the government appears to have decided that they are, in fact, discoverable, whether because they constitute Brady/Giglio materials, are responsive to Fed.R.Crim.P. 16, and/or are responsive to Section I(A)(7) of the Discovery Conference Memoranda and Orders entered into by the government and all ten defendants in this case. These materials also are subject to the Amended Protective Order (Doc. 100) entered by this Court on October 13, 2020.

Counsel for the defendants requested that the government produce these White Papers in non-redacted form, and further asked the government to provide its legal basis for redacting

2

these materials. The government refused to provide its reasoning, instead informing counsel that the government is aware of its discovery obligations, and that defense counsel failed to articulate a good faith basis for requesting the non-redacted materials.[1] Defendants now ask this Court to order the government to turn over these materials.

## RELEVANT LAW

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to produce, upon the defendant's request, documents and objects in the government's possession that, *inter alia*, are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i). Similarly, Section I(A)(7) of the Discovery Conference Memoranda and Orders entered into by the government and all ten defendants in this case, requires the government, at the request of the defendants and in light of the defendants' reciprocal discovery obligations, to produce, *inter alia*, "books, papers, documents, data, photographs, tangible objects…which are within the possession, custody, or control of the government, and which are material to the preparation of his defense…" *See, e.g.,* Discovery Conference Memorandum and Order entered into by Defendant Fries and the government (Doc. 45), at p. 3.

The government is obligated to provide materials that are either exculpatory or constitute impeachment materials, pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972). Additionally, Section I(B) of the Discovery Conference Memoranda and Orders imposes this obligation on the government in the present case.

---

[1] In the Government's Consolidated Response to Defendants' Motions for a Bill of Particulars (Doc. 217), the government stated that "[t]he white papers contain factual content as well as substantial amounts of argument made by attorneys on behalf of the submitting subjects. The government redacted the attorney argument portions of the white papers before producing them to the defendants." *Id.* at 4, fn.3.

Disclosure of documents and tangible objects which are "material" to the preparation of the defense may be required under *Brady* without an additional showing that the request is "reasonable." *See* USCS Notes of Advisory Committee on 1974 amendments to Fed.R.Crim.P. 16, Part 1 of 2.  "In *Brady* the court held that 'due process' requires that the prosecution disclose evidence favorable to the accused.  Although the Advisory Committee decided not to codify the Brady Rule, the requirement that the government disclose documents and tangible objects 'material to the preparation of his defense' underscores the importance of disclosure of evidence favorable to the defendant." *Id.*  Moreover, whether or not discovery constitutes Brady material, a criminal defendant enjoys a right to discovery of information material to preparing the defense. *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017).

Fed.R.Crim.P. 16(a)(1)(E)(i) contemplates that, at the request of the defendant, the government must disclose items within the government's possession, custody, or control that are material to preparing the defense.  "A defendant must make a prima facie showing of materiality before he is entitled to obtain the requested discovery." *United States v. Lujan,* 530 F.Supp.2d 1224, 1233-34 (D. N.M. 2008), citing *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990).  "[A] defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.*  "The term 'defense' means an argument in response to the prosecution's case-in-chief, i.e., an argument that refutes the government's claims that the defendant committed the crime charged." *Lujan,* 530 F.Supp at 1234, citing *United States v. Armstrong,* 517 U.S. 456, 462 (1996).  "This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence 'will play an important role in *uncovering admissible evidence, aiding witness preparation,*

4

*corroborating testimony, or assisting impeachment or rebuttal.*" *Lujan,* at 1234, citing *United States v. Lloyd,* 992 F.2d 348, 351 (D.C. Cir. 1993) (emphasis supplied).

## ARGUMENT

It seems self-evident that White Papers produced to the government by counsel for chicken producers wherein counsel argue that criminal antitrust violations did not occur, are "material to the preparation of the defense" by all ten defendants, who are charged with a conspiracy to commit the same criminal antitrust violations addressed in the White Papers. These White Papers involve producers whose actions, and those of their current and former employees (including defendants), are directly at issue in the present case. What could possibly be more material than factual and legal argument that the government's theory of prosecution, i.e., a widespread conspiracy to violate the Sherman Antitrust Act, did not occur? Whether the government believes these arguments is not relevant; what is relevant is that the papers discuss, in detail, facts and arguments derived by these producers and their counsel that counter the government's legal theory in the Superseding Indictment. The government's description of the White Papers as containing "factual content as well as substantial amounts of argument made by attorneys on behalf of the submitting subjects" makes clear that the White Papers advanced facts and arguments at odds with the government's theory of the case. Further, to the extent that these White Papers discuss specific individuals, they provide defendants with potential witnesses to contact in the preparation of their defenses.

The government does not get to decide unilaterally what is and is not material to the preparation of the defense. The government is in no position to do so, and the defendants should not be left relying on the very people who seek to convict them of federal crimes to decide what is and is not material to the defense of this case. Indeed, the very fact that the government went

out of its way to substantively redact only four documents among the 13 million produced to date strongly suggests that it is concerned about defendants learning why the chicken producers believe no antitrust violation occurred.

Moreover, it is equally clear that a company's denial of criminal wrongdoing is potentially exculpatory in the case against its employees or former employees and, by extension, to the other charged co-conspirators. The defense should be allowed to review the positions, including the facts and arguments of these producers as articulated to the government in the various White Papers and then pursue any and all investigative leads, legal theories, and other issues material to the defense of this case. Pilgrim's Pride presented a White Paper to the government on August 24, 2020, but then entered into an agreement to plead guilty to bid rigging on October 6, 2020. Pilgrim's Pride's arguments in its White Paper are highly material to this case, as is any discrepancy between the White Paper and the factual basis in its Plea Agreement with the government.

Defense counsel are not merely speculating that these White Papers contain material and exculpatory information. Counsel for Messrs. Fries and Brady, who remain employees of Claxton, have reviewed Claxton's white paper in its entirety. That White Paper addresses each of the incidents in the original Indictment relevant to Claxton (and in turn the other defendants implicated in those allegations), relying on specific documents to support its argument and analysis that there was no bid rigging or price fixing as alleged by the government. It contains material information, as well as exculpatory information relevant to all charged co-conspirators. Moreover, the government has provided detailed, albeit conclusory, "Brady letters" to counsel, one comprised of 87 single-spaced pages on August 5, 2020 and another comprised of 50 single-spaced pages on November 24, 2020. These letters set forth, in some detail, factual information

and arguments learned from counsel for various individuals and chicken producers. Therefore, any claim by the government that it is appropriate to redact legal or factual arguments of various counsel is undermined not only by the government's decision to provide the White Papers in discovery in the first place, but also by their prior decision to provide these Brady letters to counsel.

In trying to understand the government's decision to heavily redact these White Papers, defense counsel has attempted to ascertain the legal basis for the redactions. While the government has refused to provide that legal basis, it has indicated that it views the defendants' requests as general and speculative, citing *United States v. Nacchio,* 2006 WL 8439750 (D. Colo. 2006) and *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987). The government's reliance on both cases is misplaced.

*Nacchio* is an insider trading/securities fraud case. The defense filed an omnibus discovery motion requesting evidence that "(1) is exculpatory; (2) relates to witnesses that might testify at trial; (3) differs from evidence already produced; and (4) relates to prosecution of Qwest officials, including Defendant." The court denied the defense's request for production of exculpatory evidence because of the lack of specificity. Here, the defense is making a very specific discovery request, which is supported not only by a common sense understanding of the nature and purpose of white papers generally, but also after review, by certain defense counsel, of the entire Claxton white paper in comparison to what was produced by the Government. In situations where the materials are a "close call" as to whether they fall under Brady, "the prosecution must resolve close cases and doubtful questions in favor of disclosure". *United States v. McVeigh*, 923 F. Supp 120,1310, 1314 (D. Colo. 1996).

In *Ritchie*, the defense issued a subpoena duces tecum for Department of Human Services ("DHS") records of the 13-year-old alleged victim of a sexual assault. The defense argued that it was entitled to the records because they *might* contain favorable information (i.e, witnesses to interview and inconsistent statements). DHS filed a motion to quash based on a state statute that protected the confidentiality of the records, which the trial court granted. The question the Court addressed is when the defense can use the power of the state to compel the production of records that are otherwise confidential. It is important to note that the prosecution did not have these records in their possession, and neither the prosecution nor the defense knew what was in them. The court ultimately decided that, because the statute creates a carve-out for disclosure of DHS records when a "court of competent jurisdiction enters an order requiring disclosure," the records can be disclosed to the defendant when a court determines that they are material to his or her defense. The court ruled that an *in camera* review of the records by the trial court is required before disclosure, and it is the court, not the parties, that determines materiality.

The bottom line is that the present situation is distinguishable from both *Nacchio* and *Ritchie*. First, the government has already disclosed the White Papers, as well as two so-called Brady letters, to the defense. This is not a case in which the defense is hoping some helpful materials exist. The parties know such material exists. Second, the defendants have a good faith basis to believe that these materials are both material and potentially constitute Brady information. Third, the government has effectively deemed itself the arbiter of what is material to the defense in a case where it has disclosed *millions* of documents without redaction. Finally, the White Papers, like the rest of the voluminous discovery in this case, are covered by the Amended Protected Order. Therefore, there is no concern that these documents will be inappropriately disclosed by the defense.

Moreover, even if the White Papers did not contain Brady material, they certainly are material to all defendants to the defense of their cases. As *Lujan* instructs, the materiality burden under Rule 16 is not a heavy one. Indeed, the White Papers "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Lujan,* 530 F.Supp.2d at 1234. To the extent the government argues that defendants are speculating as to the contents of the White Papers, "[t]he Tenth Circuit has held that because defendants often 'cannot know with certainty what information the government has,' courts should encourage liberal discovery. *Nacchio,* at p. *6, citing *United States v. Jensen,* 608 F.2d 1349, 1358 (10th Cir. 1979). In the present case, the government's discovery policy has been extremely liberal, with the very glaring exception of these White Papers.

Indeed, the government's energetic efforts to protect these documents from disclosure to the defense are curious in light of the history of discovery in this case, and the significant discovery protocols in place. While hardly necessary, defendants have no objection to an *in camera* review of the materials by this Court to determine whether the complete White Papers should be disclosed. What defendants do object to is the government deciding, *sua sponte,* that these materials are immaterial to the defense of this case. "To justify a court undertaking an *in camera* review of Brady material, at the very least, a defendant must make a 'plausible showing' that the government files at issue contain 'material' exculpatory or impeachment information." *United States v. Garcia-Martinez,* 730 Fed. Appx. 665, 674 (10th Cir. 2018), citing *United States v. Williams,* 576 F.3d 1149, 1163 (10th Cir. 2009); *accord Riley v. Taylor,* 277 F.3d 261, 301 (3rd Cir. 2001) (en banc). In the present case, the defendants' plausible showing is predicated, *inter alia,* upon: 1) the general nature of white papers; 2) the fact that Pilgrim's Pride entered a guilty

9

plea shortly after submitting its white paper to the government; 3) the two extensive Brady letters provided to the defendants by the government; and 4) an analysis by counsel for defendants Fries and Brady of the redacted Claxton white paper vis-à-vis the non-redacted version submitted by counsel for Claxton to the government.  Accordingly, defendants' request for the non-redacted White Papers is neither speculative nor a fishing expedition, but rather made in good faith. Unlike the defendants in *Garcia-Martinez,* the defendants here know that the non-redacted white papers contain material information; therefore, this request is not a so-called "fishing expedition."

WHEREFORE, for the reasons set forth herein, defendants respectfully request this Court order the production of the non-redacted White Papers, or in the alternative, conduct an *in camera* review of the non-redacted White Papers to determine whether they are material to any defense of this case and, as such, are discoverable by the defendants

Respectfully submitted this 25th day of January 2021,

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Defendant Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, Colorado 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LLP
Attorney for Defendant Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Defendant Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8876
mtubach@omm.com

*s/ Bryan B. Lavine*
Bryan B. Lavine
Troutman Pepper Hamilton Sanders LLP
Attorney for Defendant Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com


*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP-DC
Attorney for Defendant Timothy R. Mulrenin
555 11th Street, N.W., Suite 1000
Washington, DC 20004-1304
(202) 637-2200
Elizabeth.Prewitt@lw.com


*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for Defendant William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
Byrne & Nixon LLP
Attorney for Defendant Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ John Anderson Fagg, Jr.*
John Anderson Fagg, Jr.
Moore & Van Allen PLLC
Attorney for Defendant William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com


*s/ Craig Allen Gillen*
Craig Allen Gillen
Gillen Withers & Lake, LLC
Attorney for Defendant Gary Brian Roberts
400 Galleria Parkway
Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com


*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Defendant Rickie Patterson Blake
Robbins Russell Englert Orseck Untereiner
& Sauber LLP
2000 K Street N.W.
4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2021, I electronically filed the foregoing **DEFENDANTS' JOINT MOTION FOR ADDITIONAL DISCOVERY** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


*s/ Erin Holweger*
Erin Holweger