IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. TIMOTHY R. MULRENIN,
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. WILLIAM WADE LOVETTE,
9. **GARY BRIAN ROBERTS,**
10. RICKIE PATTERSON BLAKE,

    Defendants.

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT FRIES', BRADY'S, AUSTIN'S, KANTOLA'S, LITTLE'S, AND ROBERTS' MOTION TO ADDRESS THE DEPARTMENT OF JUSTICE'S INTERFERENCE WITH DEFENDANTS' RIGHT TO PRESENT THEIR DEFENSE**

---

The government respectfully submits this opposition to certain Defendants' Motion to Address the Department of Justice's Interference with Defendants' Right to Present their Defense. ECF No. 304. The Defendants' motion is premised on a fundamental misunderstanding of the terms of the Pilgrim's Pride Plea Agreement. Pilgrim's Pride, the company with the second-largest market share in the broiler chicken industry in the United States, pleaded guilty for its role in the same conspiracy charged in this case. As its plain language makes clear, the Pilgrim's Plea Agreement limits only

public statements by Pilgrim's Pride that contradict the company's acceptance of responsibility or factual admissions. It does not prevent any individual employee from speaking with defense counsel in his or her personal capacity. It does not infringe on the Defendants' ability to call witnesses or put on a defense. And the requirement that Pilgrim's Pride cooperate with the government does not prevent the company or individual employees from also cooperating with defense counsel if they choose to do so. Even assuming there was some potential confusion on the part of Pilgrim's Pride employees, it would be dispelled by the government's letters to defense counsel and Pilgrim's Pride confirming that employees are free to speak with defense counsel in their individual capacities, which the Defendants are free to show potential witnesses.

The Defendants complain that their attempts to speak to certain employees of Pilgrim's Pride have been rebuffed. That is, of course, their right—individuals are free to choose whether or not to speak with defense counsel. None of the Defendants' requests—discovery from Pilgrim's Pride as to communications with its employees, a stipulation from the government that employees are free to testify "without adverse consequences," or an order requiring Pilgrim's Pride to send a further communication to its employees—are warranted or appropriate. The Court should deny the motion.

**BACKGROUND**

On October 6, 2020, a grand jury sitting in this district returned a Superseding Indictment charging that the Defendants "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United

States." ECF No. 101 ¶ 1. Later that month, on October 13, 2020, the government charged Pilgrim's Pride by Information for its role in the same conspiracy, and Pilgrim's Pride resolved that charge by entering into a Plea Agreement with the United States. *United States v. Pilgrim's Pride Corporation*, 1:20-cr-330-RM, ECF No. 58. Pilgrim's Pride's Plea Agreement was accepted by the Court, and the company was sentenced on February 23, 2021. *Id.*, ECF No. 60. The Plea Agreement contains two provisions at issue here: paragraph 22, in which Pilgrim's Pride agreed not to make any public statements "contradicting the acceptance of responsibility by the defendant . . . or the facts contained in the Factual Basis section of the Plea Agreement," *Id.* at ECF No. 58 at ¶ 22, and paragraph 14, which describes Pilgrim's Pride's agreement to continue to cooperate with the United States' continued investigation and prosecution, which includes a requirement that Pilgrim's Pride employees testify truthfully, *Id.* at ¶ 14.

Last month, counsel for Mr. Austin wrote to the government asking the government to notify Pilgrim's Pride that (1) "any statement to the Court or to Defendant's counsel" made by "any employee" would not violate the Plea Agreement, "regardless of whether or not that statement contradicts the Factual Basis of the Plea Agreement," and (2) "employees are free to speak to Defendants' counsel." ECF No. 304-2.

The government responded on July 17, confirming its understanding that the relevant provisions of the Plea Agreement did not prevent Pilgrim's Pride employees from speaking with defense counsel:

> This paragraph [22 of the Plea Agreement] is intended to address only public statements by individuals when they are *speaking on behalf of or*

3

> *representing the company*. This provision does not apply to statements made by individuals in their personal capacity. In our view, *employees are free to speak with whomever they choose*, provided that those communications are consistent with court orders. Nothing in paragraph 22 or any other provision of the Plea Agreement is intended, or should be construed, to encourage anything but truthfulness.

ECF No. 304-3 (emphasis added).[1] As the government also explained, it

> cannot make a general commitment that any future statements made on behalf of Pilgrim's Pride . . . would not violate the Plea Agreement. That is a factual question that requires an analysis of the circumstances of the statement to determine whether the statement was public, and whether it was a statement of or on behalf of the company.

ECF No. 304-3. Finally, the government noted that it advised Pilgrim's Pride of the government's understanding of the provisions of the Plea Agreement, as contained in the letter, and that Pilgrim's Pride agreed to abide by that interpretation, which is consistent with its own. ECF 304-3.

On that same day, the government sent a letter to Pilgrim's Pride, confirming its understanding of the Plea Agreement and confirming that Pilgrim's Pride's understanding was consistent with the government's. Exhibit A.

Before receiving the government's reply, on July 12, the Defendants sent a letter to counsel for Pilgrim's Pride, asking that Pilgrim's Pride:

---

[1] Of course, the government recognizes that this Court has imposed no-contact orders, which prohibit each defendant from initiating contact with certain individuals, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 339. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The government understands that nothing in the no-contact order is meant to impair the Defendants from preparing their case, and that the no-contact order does not apply to contact by Defendants' counsel.

4

> (1) disclose to Defendants whether it has in any way discouraged employees, either directly or through their counsel, from speaking with defense counsel, and (2) advise its employees that they are free to speak with whomever they choose, regardless of whether or not their truthful statements contradict the Factual Basis of the Pilgrim's [Pride] Plea Agreement, and that they will suffer no adverse employment consequences as a result of doing so.

ECF No. 304-4 at 2.

Pilgrim's Pride responded to the Defendants' letter on July 26. With regard to the first request, Pilgrim's Pride confirmed that it "has not discouraged and will not discourage individual employees from speaking with counsel for the indicted Defendants in *U.S. v. Jayson Penn, et al.*" ECF No. 304-5. With regard to the second, Pilgrim's Pride wrote that it has "recommended to individual employees that they consult with their own counsel about whether to meet with counsel for the Defendants in *U.S. v. Penn* and to follow their counsel's advice." ECF No. 304-5. Pilgrim's Pride also offered to provide the Defendants with contact information for counsel representing any Pilgrim's Pride employee with whom they wished to speak. ECF No. 304-5.

## LEGAL STANDARD

In a criminal case, "witnesses do not 'belong' to either side." *United States v. Peter Kiewit Sons' Co.*, 655 F. Supp. 73, 77 (D. Colo 1986). However, witnesses have the "right to refuse to be interviewed." *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985). And a defendant's rights are not violated "when a potential witness freely chooses not to talk." *Id.*, quoting *Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981). While the prosecution may not prevent a witness from speaking with the defense absent compelling reasons, to demonstrate infringement on his rights, a "defendant must show

5

that the government's conduct interfered with a witness's free and unhampered choice to testify.'" *United States v.* Skilling, 554 F.3d 529, 567 (5th Cir. 2009) (overruled on other grounds). When addressing an allegation of witness interference, at least one district court has found that provision of counsel to employee witnesses "undermines any implication" that the government "unduly influenced those employees by reason of the government's non-prosecution agreement with [the company]." *United States v. Brown*, C.R. No. H-03-363, 2010 WL 3359471, at *22 (S.D. Tex. Aug 23, 2010).[2]

      The government violates a defendant's due process rights only if it substantially interferes with a witness's decision to testify. *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005); *see also Webb v. Texas*, 409 U.S. 95, 97-98 (1972) (per curiam). The Tenth Circuit has defined "substantial interference" as "when a government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *Serrano*, 406 F.3d at 1216. "The potential for unconstitutional coercion by a government actor significantly diminishes, however, if a defendant's witness elects not to testify after consulting an independent attorney." *Id.* In

---

[2] The Defendants argue incorrectly that *Brown* is not relevant to the inquiry at hand because it involved a non-prosecution agreement, under which no charges were filed, so the threat of prosecution was not present. ECF No. 304 n.9. Although the form of resolution is different—as the government identified in its letter to the Defendants—the analysis relating to the type of speech addressed in the criminal resolution is the same. Here and in *Brown*, the companies agreed not to make statements that contradicted the company's acceptance of responsibility; the language of the negotiated resolution "did not foreclose [the company's] employees, individually, from disputing the government's theory of the case" or "employees' abilities to make statements on their own behalf," *id.*; and the companies provided attorneys to employees who were sought as witnesses, so the employees could decide independently whether or not to speak with defense counsel.

*Serrano*, for example, the court held that "[t]he witnesses' decision not to testify was not the product of improper governmental coercion . . . but instead was a decision insulated from such governmental pressures by the independent and neutral advice of counsel." *Id.*; *accord United States v. Pablo*, 696 F.3d 1280, 1296-97 (10th Cir. 2012); *United States v. Dalton*, 918 F.3d 1117, 1130 (10th Cir. 2019).

## DISCUSSION

**A. Nothing in the Plea Agreement Prevents Pilgrim's Pride's Employees from Speaking in their Personal Capacities or Encourages Anything but Truthfulness, and a Blanket Government Stipulation on the Matter is Unwarranted and Inappropriate.**

By their plain language, the Plea Agreement's provisions regarding public statements apply only to Pilgrim's Pride, and *not* to employees of Pilgrim's Pride who speak for themselves. ECF No. 304-1. The Defendants' arguments are premised the misunderstanding that Plea Agreement prohibits *all* speech by current employees. It does not. Instead, the Plea Agreement addresses only public statements by Pilgrim's Pride the company. ECF No. 204-1, ¶ 22. ("The *defendant* expressly agrees that it will not . . . make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the defendant set forth above or the facts contained in the Factual Basis section of the Plea Agreement." (emphasis added)). The Plea Agreement specifies which individuals could speak for the company: "current or future attorneys, directors, officers, employees, agents, or any other person authorized by the defendant to speak on its behalf." *Id*. The Plea Agreement is silent on statements made by Pilgrim's Pride employees speaking in their personal capacities, and therefore puts no limitation on employees' ability to speak in their own capacities. The requirement that

7

Pilgrim's Pride cooperate with the government, *id.* ¶ 14, does not prevent employees from speaking with defense counsel if they choose to do so.

To conclusively resolve the issue, the government explained in its letters that paragraph 22 addresses only Pilgrim's Pride's speech. The government also explained that "the Plea Agreement does not address statements by employees in their personal capacity, regardless of content, whether those statements are made in public (*e.g.*, to a court), or in private (e.g., to a lawyer—whether their own or that hired by another.)." ECF No. 304-3 (emphasis added). If employees speak for themselves and not on behalf of Pilgrim's Pride, such speech is not governed by paragraph 22, and therefore cannot be the basis for rescission of the Plea Agreement. As these letters make clear, Pilgrim's Pride employees can choose to speak in their individual capacities with defense counsel or with anyone else. And if they choose to speak, they should do so truthfully.[3]

The government did not—and cannot—make a blanket commitment, as the Defendants requested, that "any statement to the Court or to Defendant's counsel" made by "any employee" would not violate the Plea Agreement, "regardless of whether or not that statement contradicts the Factual Basis of the Plea Agreement," because that does not distinguish between an individual's personal statements and statements made by the company through its employees. In most instances, it will be self-evident

---

[3] As part of its Plea Agreement, Pilgrim's Pride also agreed to cooperate with the government's ongoing investigation and prosecution of the conspiracy. As part of this obligation, Pilgrim's Pride pledged to use its best efforts to secure full, truthful, and continuing cooperation of its employees, among others. ECF No. 304-1 ¶ 14(b) (emphasis added). Nothing in paragraph 22, or paragraph 22 read in conjunction with paragraph 14, prohibits employees from cooperating with the defense if they so choose. *See* ECF 304-1.

when an employee is speaking on the company's behalf for purposes of the Plea Agreement. For example, if an employee sits for a deposition as a corporate designee or serves as the company's spokesperson, he speaks for the company. In contrast, when defense attorneys interview an employee as part of their investigation, if that employee merely provided his or her own factual recollections, such speech would not normally be deemed to be "authorized by" Pilgrim's Pride to "speak on its behalf" for purposes of the Plea Agreement. Absent other circumstances, the employee's statements would not be attributed to the company. But that determination cannot be made preemptively and in a vacuum. The government would need to determine whether there was any breach of the Plea Agreement based on the particular circumstances at issue and any efforts to exercise Pilgrim's Pride's cure rights under the Plea Agreement. *See* ECF No. 204-1, ¶ 22. The Defendants' lawyers are free to show the government's letters to any prospective Pilgrim's Pride witnesses who may have any doubt about their ability to speak with defense counsel. And the Pilgrim's Pride employees at issue have separate counsel to consult if they have any question about what they can and cannot do. The blanket treatment the Defendants propose has no legal basis. Any further stipulations by the government in this regard would be unwarranted.

### B. The Pilgrim's Pride Plea Agreement Does Not Interfere with Defendants' Due Process Rights, and Additional Discovery or Compelled Communications by Pilgrim's Pride to its Employees is Unwarranted and Inappropriate.

The government has no duty to require potential witnesses to speak with defense counsel. *See, e.g., United States v. Pepe*, 747 F.2d 632, 655 (11th Cir. 1984) ("It is clear that the government had no duty, absent a court order, to present its witnesses for

interviews; the government's duty was, simply, not to deny access."). Pilgrim's Pride's Plea Agreement does not deny Defendants access to any potential employee witnesses, and thus, does not infringe on Defendants' rights in this case.

Moreover, only "[s]ubstantial government interference" with a defense witness violates a defendant's due process rights. *Serrano*, 406 F.3d at 1216. And the cases Defendants cite to describe substantial interference are inapposite, from plea agreements that restrict trial testimony altogether, *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir. 1977) (government conceded that cooperator's plea agreement which restricted testimony in *any* manner regarding the defendant was in error), to other conduct actively discouraging a witness's testimony, *United States v. Vavages*, 151 F.3d 1185, 1192-93 (9th Cir. 1998) (prosecutor's unfounded threats to a witness's counsel that the witness was lying and threatened to prosecute her for perjury if she testified for the defendant); *Webb*, 409 U.S. at 97-98 (court singled out only defense witness and admonished him at length about perjury implications of testimony); *Gregory v. United States*, 369 F.2d 185, 187-88 (D.C. Cir. 1966) (government advised witnesses in capital case that they were only free to speak with others in the government's presence); *United States v. Ebrahimi*, 137 F. Supp. 3d 886, 888-89 (E.D. Va. 2015) (government instructed witnesses to allow agent to be present for any communications with another party); *Peter Kiewit Sons'* Co., 655 F. Supp. at 74-77 (government communicated to witnesses that they should not speak with the defense; witnesses who were previously willing to meet with defense counsel changed their minds after

10

speaking with the government). There has been nothing even close to such interference here.

Indeed, courts have distinguished cooperation agreements that permit potential witnesses to speak in their individual capacities, finding that such agreements cause no interference with a defendant's access to witnesses. *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1108 (11th Cir. 1990) (distinguishing *Hendricksen* and finding plea agreement that "did not prohibit the witness from testifying . . . [but rather] required her to be truthful and testify truthfully" did not deprive the defendant of a potential witness); *Brown*, 2010 WL 3359471 at *19-20 (corporate non-prosecution agreement, which restricted employees from contradicting the company's acceptance of responsibility but "did not foreclose [] employees, individually, from disputing the government's theory of the case" or "employees' abilities to make statements on their own behalf" did not interfere with defendant's ability to call exculpatory witnesses). Like the negotiated resolutions in those cases, the Pilgrim's Pride Plea Agreement leaves witnesses free to speak in their individual capacities and in no way interferes with defense counsel's access to them.

The Defendants argue they have been impeded in their ability to interview witnesses, ECF No. 304, but they have not suggested that any particular Pilgrim's Pride employee declined to speak with defense counsel because of communications from Pilgrim's Pride, or because of the Plea Agreement. Rather, Defendants infer from the "identical terms" of employees' declinations to speak with defense counsel that Pilgrim's Pride must have "explicitly or implicitly communicated to its employees that speaking

with the defense puts Pilgrim's at risk of having DOJ determine that it violated its plea agreement," ECF 304, at 3. The similarity of language is hardly surprising given that, as noted in the Defendants' brief, two attorneys represent the employees at issue; one represents six employees, while the other represents two. ECF No. 304 at n.1. And the Defendants draw that inference even after Pilgrim's Pride confirmed by letter that it has not discouraged employees from speaking with defense counsel and instead recommended that employees consult with their individual counsel. The only impediment the Defendants have in fact identified is the freedom of Pilgrim's Pride employees, with the advice of counsel, to choose to not speak to defense counsel. *See Brown,* 2010 WL 3359471; *Serrano*, 406 F.3d 1208.

Thus, there is no basis to compel Pilgrim's Pride to provide further communication to its employees reminding them that they are free to speak to defense counsel (or any other party). Defendants have suffered no due process violations. The communications among the government, Pilgrim's Pride, and the Defendants make clear that employees are free to speak in their individual capacities, and Defendants' counsel are free to bring these letters to the attention of such employees and their counsel. The Court should deny this request as it has no factual or legal basis.

## CONCLUSION

Because Defendants fail to show that the government has in any way impeded Defendants' ability to prepare their case, the Court should deny their motion.

Dated: August 16, 2021

Respectfully submitted,

/s/ Carolyn M. Sweeney
MICHAEL KOENIG
HEATHER CALL
PAUL TORZILLI
CAROLYN SWEENEY
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 11000
Washington D.C. 20530
Tel: (202) 598-8685
carolyn.sweeney@usdoj.gov

Attorneys for the Government