IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## UNITED STATES' RESPONSE TO DEFENDANTS' JOINT MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED SUMMARY EXHIBITS

The Court should deny the defendants' joint motion to exclude the government's proposed summary exhibits. The summary exhibits contain excerpts from thousands of pages of materials in a 10-defendant case charging a multiyear conspiracy involving over 31 members and, as such, will be helpful to the jury's ability to understand voluminous evidence and ascertain the truth. The defendants have had ample notice, as the government originally provided the defendants with draft summary exhibits on October 6, 2021, and then provided updated drafts with the government's trial brief on October 18, 2021. ECF No. 670 Exs. A1—A10. Nor are the summary exhibits

inaccurate or misleading. By the government's count, the defendants identified 8 errors in the summaries, which the government corrected and attaches new drafts to this brief. Finally, while all the records underlying the summary exhibits are admissible—and, with the exception of extremely large toll records, will be offered into evidence at trial—the government will modify or redact the summary exhibits as appropriate before introduction to the extent any of the underlying records are not admitted.

## LEGAL STANDARD

Federal Rule of Evidence 1006 permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006. The First Circuit's opinion in *United States v. Milkiewicz*, 470 F.3d 390 (1st Cir. 2006), is instructive. In that case—which involved a bid rigging scheme charged under Title 18 conspiracy statutes—the court held that Rule 1006 summaries may be admitted "in addition to the underlying documents to provide the jury with easier access to the relevant information." *Id.* at 397. In such instances, "Rule 1006 still serves its purpose of allowing the jury to consider secondary evidence as a substitute for the originals" that cannot be "conveniently examined in court." *Id.*

The *Milkiewicz* court also "clarify[ied] the landscape" surrounding the admission of summaries, noting that other rules—such as Rule 611(a), which gives the trial court "control over the mode…[of] presenting evidence" to assist in the determination of truth and avoid wasting time, FED. R. EVID. 611(a)—are not "mutually exclusive" with Rule 1006, *id.* at 395. As such, the court explained that summaries falling short of the

technical requirements of 1006 may nevertheless be admissible under Rule 611, or a hybrid of Rules 611 and 1006, *id.* at 397. The Tenth Circuit, as well as several other circuits, have held similarly. *See, e.g.*, *United States v. Ray*, 370 F.3d 1039, 1047 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005); *United States v. Johnson*, 54 F.3d 1150, 1158 (4th Cir. 1995); *United States v. Pinto*, 850 F.2d 927, 935–36 (2d Cir. 1988); *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir. 1979).

*United States v. Bray*, 139 F.3d 1104 (6th Cir. 1998), cited multiple times by defendants in their motion, followed the same precedent. There, the Sixth Circuit introduced the category of "secondary-evidence summaries," that the court described as a "combination of" Rule 1006 and Rule 611 summaries:

> [T]hey are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case. These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but *in addition thereto*, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence.

*Bray* at *1112

The law is no different in the Tenth Circuit, which has taken a two-step approach to the admission of summary exhibits:

> First, the court looked to "whether the summary chart [or testimony] aids the jury in ascertaining the truth." *Johnson*, 54 F.3d at 1159. Under this prong, the court considered items such as "the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury." *Id.* Second, the court considered the possible prejudice that may result to the defendant in allowing such evidence, looking specifically to whether the preparer of the chart was available for cross-examination and whether the district court gave appropriate limiting instructions. *Id.*

3

*Ray*, 370 F.3d at 1046-47 (citing *Johnson* at 1159).

As such, the Tenth Circuit has frequently admitted summaries of numerous documents to aid in the jury's understanding of the evidence. *See, e.g.*, *United States v. Yeley-Davis*, 632, F.3d 673, 677 (10th Cir. 2011) (allowing summary chart connecting co-conspirators via photo arrays); *United States v. Kapnison*, 743 F.2d 1450 (10th Cir. 1984) (upholding the admissibility of charts that defendant claimed "improperly emphasized and repeated the government's evidence"); *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982) (admitting a chart summarizing Dilaudid prescriptions "to aid the jury in organizing the evidence").

## ARGUMENT

### I. The Government's Exhibits Summarize Admissible Evidence

With very few exceptions,[1] the government intends to offer all the evidence underlying its summary exhibits at trial—many with pages excerpted as instructed by the Court at the October 8 trial preparation conference. The defendants' primary objections to the admissibility of the underlying evidence appear to be based on authenticity, relevance, and prejudice.

First, because all of the evidence underlying the summaries will have either been deemed self-authenticating by the Court's October 19 ruling, ECF No. 673, or

---

[1] The government does not plan to offer the multi-thousand pages of toll records underlying the summaries of Defendant Little's phone records spanning a 9-year period. *See* ECF No. 670 Exs A10 and A6 at 13. Even if the government were to excerpt out the relevant calls summarized therein, the approximate 1200 entries would add considerable volume of little value in addition to the summaries and accompanying testimony.

authenticated by witnesses before the government offers any summary exhibit into evidence, the defendants' arguments as to authenticity are either moot or not ripe.

Second, while the government plans to offer the underlying exhibits ahead of introducing summaries, as further explained in the government's trial brief, the underlying documents are admissible. The underlying exhibits are admissible 1) under Rule 801(d)(2)(E) and have been preliminary so designated by the court, *see* ECF No. 559, 2) as business records,[2] or 3) under other exceptions to the hearsay rule. To address defendants' contentions, all of the text messages and one of the two handwritten notes referenced in the government's summaries have already been deemed preliminarily admissible under 801(d)(2)(e). *See* ECF No. 559 at 31, entry 136. The remaining handwritten note will be authenticated and admitted during the testimony of conspirator Robert Bryant, prior to the admission of the summary referencing it. *See* GX 1919.

Third, the government clarifies its citation to and use of certain documents for the purpose of associating names with phone numbers. As stated in the government's trial brief, "identifying information of co-conspirators in the sources is relevant simply to show the conspirators' association and knowledge of the means of contacting each other." ECF No. 670 at 4. As such, the government plans to use email signatures, imaged

---

[2] The government makes no "conclusory assertion that all of the underlying documents satisfy the business records exception." ECF 715 at 4. Approximately 60 pages of the government's summaries source from numerous phone provider toll records and subscriber data, and the defendants already acknowledge that toll records are records of regularly conducted activity under 803(6). ECF No. 665 at 10 n.2; *see also United States v. Jenkins*, 540 F. App'x 893, 900 (10th Cir. 2014) (unpublished) (finding that telephone records fell within the business records exception to the hearsay rule).

device contact lists, as well as a small number of business records such as organizational charts and bid documents—in addition to subscriber information—to associate certain coconspirators and other individuals with phone numbers during the course of the conspiracy. The list of those sources has been provided to the defendants and the Court in Exhibit A1 ("User-Identifying Exhibit" column). ECF No. 670 Ex. A1.

Fourth, evidence of the conspiracy and each conspirators' acts in furtherance thereof is admissible against all defendants, regardless of the date, absent withdrawal. *See also* ECF No. 670 at 11-12. As the Court held, "previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy." *Id.* at 4 (quoting *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991)). It should further be noted that the Court found defendant Blake joined the charged conspiracy "by" October 24, 2016, *compare* ECF No. 559 at 20, *with* ECF No. 715 at 4, thus leaving the door open for the government to prove at trial that he joined years earlier.

Lastly, as the government indicated at the pretrial conference, it intends to use one demonstrative in opening statement, which the Court reviewed and approved on the record.

II. **The Summary Exhibits are Admissible Under Both Rule 1006 and 611(a)**

Applying the *Ray* standard to the summaries in this case, the government's proposed summaries are admissible because they will "aid the jury in ascertaining the truth" and will reduce confusion in a lengthy trial of a 10-defendant case charging a multiyear conspiracy involving at least 31 conspirators. The summary exhibits—which

6

vary in the number of source exhibits from as few as three, ECF 670 Ex. A5 at 5 (text message conversation identifying phone numbers, names, and photographs of participants), to five, ECF 670 Ex. A6 at 13 (summarizing thousands of pages of phone records), to hundreds, ECF 670 Ex. A4—are admissible under both rule 1006 and 611(a) because they excerpt voluminous records, will expedite the presentation of evidence at trial, and will assist the jury in understanding the records in context and associating faces with names. The risk of prejudice is low, because the "preparers" (witnesses who were involved in the preparation and review of the summaries) will be available for cross-examination.

    Moreover, the summaries will aid both sides by reducing the risk that jurors could attribute conspiratorial acts to the wrong persons. Without summaries, particularly those associating photographs of defendants with their full names, there would be a significant risk of confusion between multiple conspirators with the same first names as defendants: Scott Tucker (conspirator), Scott Brady (Defendant), William Lovette (defendant), William Kantola (defendant), Jayson Penn (Defendant), Jason McGuire (conspirator), Timothy Mulrenin (defendant), Timothy Stiller (conspirator), Timothy Scheiderer (conspirator). The photographs contained in the proposed summaries will therefore better enable jurors to identify the defendants where relevant among communications involving numerous coconspirators.

    The defendants' arguments appear to be premised on a misunderstanding of the applicable rules, based on the belief that summaries are only proper under Rule 1006 and must not "excerpt small portions" from the documents that they purport to

summarize. First, as a matter of common sense, a summary would not be much of a summary at all if it did not excerpt from the underlying materials. Second, the defendants appear to confuse the requirements of Rule 703, allowing summaries of "facts or data" with the requirements of Rules 1006 and 611. Rule 1006 specifically contemplates summaries of "writings, recordings, or photographs." The government's summaries, which excerpt from voluminous writings—including emails, text messages, contracts, handwritten notes, subscriber information, and toll records—and photographs are therefore proper under Rule 1006. Lastly, defendants further fail to articulate how any of the content therein is "misleading" as opposed to "merely an organization of some of the undisputed objective evidence." *Scales* at 563.

The government has attempted to address several of defendants concerns and will address others as follows:

**Exhibit A1:** The summary associating names with phone numbers will assist the jury in "ascertaining the truth" and understanding the 60+ pages of phone record excerpts (each containing dozens of lines of data) reflecting various phone calls, text messages, and voicemails. The same sources contained in the "User-Identifying Exhibits" column are also cited throughout exhibits A4, A5, A6, and A9 wherever a name is attributed to a phone call or text message.

To address the defendants' concerns, Column 3 has been amended to state "Minimum Time Period (By Year)" such that the jury understands that certain underlying sources—such as email signatures—do not necessarily associate the individual with the phone number for every day and minute of each associated year. While the government

does have evidence associating many of the numbers therein in a broader range than indicated in Ex. A1, in order to not inundate the jury with unnecessary information the government has limited the time frames in A1 to time periods in which the government intends to introduce records of phone calls or text messages involving the relevant individuals. Accordingly, the government's error in not limiting the time period relating to Mr. Lewis has been corrected. The final column is simply for ease of the jury's, defendants', and the Court's understanding and organization of relevant evidence. The "associated toll exhibits" column reflects the toll record excerpts that the government intends to introduce at trial from the account relating to the phone number identified in that line of Ex. A1. *Compare.*, ECF No. 670 Ex. A1 line 1, *with* GX 1236 , 1237, 1428, 1615, 1733, 1959, and 1960 (Excerpts of Roger Austin (770-842-9379) toll records).

**Exhibit A2**: Summary A2 is simply a tool to assist the jury in this case, which involves records across a variety of time zones and is based on facts of which the Court has already taken judicial notice. *See* ECF No. 614. Errors in A2 have been corrected. The chart, while not summarizing writings, is entirely proper for admission to assist the jury under Rule 611(a).

**Exhibit A3:** The government will use A3 as a demonstrative to assist a case agent in testifying to the process used to convert time zones for certain specific records as reflected in Exhibit A4. The two errors identified by defendants have been corrected.

**Exhibit A4:** As explained further in the government's trial brief, motion *in limine*, and above, A4 is entirely proper as a summary exhibit under both Rule 1006 and Rule 611. *See* ECF Nos. 670, 542. Excerpting from the documents is necessary, otherwise

9

the chart would not be a summary at all. The excerpts merely highlight relevant language contain in voluminous business emails and contracts.

The defendants' relevance arguments fall flat. As the government previously noted, sources in each line reflect not only the excerpted communication, but additional exhibits from the same time period establishing the identity of the sender and recipient (in the case of calls and text messages), as well as their employers—a necessary fact for the jury to understand a case charging an illegal agreement between defendants employed by competitors.

To address some of the defendants' other particular concerns: first, the government has amended the headers in Exhibit A4 to include only the date ranges contained in the documents excerpted therein. Second, the fact that multiple conversations were occurring at the same time is not misleading—it simply shows the various with conspiratorial conversations in context. Third, the incorrect text designation on page 19 of A4 has been corrected. Lastly, defendants fail to cite a source for their assertion regarding a zero second call between defendants Penn and Roberts, which appears to be based on their misinterpretation of AT&T records. *See* ECF 715 at 8. In any event, the fact of an attempted call between conspirators is significant and probative standing alone.

With respect to time zones, allow the jurors to view the records in context as accurately as possible, time zones have been converted to eastern time in A4, as laid out in precise fashion in Exhibit A3, only where the time zone of the document was apparent on its face. Otherwise, times in Exhibit A4 simply reflect the times on the face

10

of the document. There are a limited number of instances where communications appear out of order in Ex. A4. In such instances the summary witness will testify as to the basis of such ordering. For example, the example defendants cite includes an email, GX 1074, which on its face is clearly a reply to the email contained in GX 1035. There is sufficient basis in fact from the face of the underlying records such that A4 properly places 1074 in context after 1035.

*Exhibit A5:* The government's proposed text message summaries will greatly assist in the efficient presentation of evidence and the jury's understanding of the identities and order of communications in various communications. In many instances, text message conversations appear with each message as a single document that may only partially identify the participants by name. *See, e.g.*, GX 433-447 (14 documents comprising of a single text message conversation over the course of one hour). Reviewing those communications in a summary form[3] will greatly assist the jury, and a uniform presentation of such evidence will enable them to better understand and review the documents in this case.

*Exhibit A6*: For many of the same reasons that Exhibit A5 will be helpful for the jury, reduce the risk of confusion, and allow for an efficient presentation of the evidence, A6 similarly should be admitted into evidence.

While Exhibit A4 summarizes some of the same conduct, the photographs in Exhibit A6 will assist the jury in keeping track of chronology and participants. For

---

[3] The government herein only addresses the admissibility of the proposed summary charts into evidence. If not admitted, the government intends to use any such summaries as demonstrative exhibits.

example, pages 1-5 of Exhibit A4 list 24 calls involving at least 10 participants between defendants and their coconspirators over a period of two business days. Without the visual aid of Exhibit A6, there is a significant risk of juror confusion regarding the ordering and participants in the numerous contacts.

The arrows have been corrected to represent mere directionality of calls, and a phone icon has been added so the jury understands what the arrow represents. The additional underlying sources consist of the tolls, records attributing phone numbers to names, and photographs.

Lastly, defendants have not explained how placing the image of Mr. Little, the commonality between the cited communications on page 13 of A6, is prejudicial or misleading in any way.

**Exhibit A7**: Exhibit A7 summarizes thirteen sources, most of which are contracts. Exhibit A7 identifies two key contractual price terms—a bottom-line FOB price and the margin component of that price—as agreed to between chicken suppliers and RSCS, the purchasing cooperative for KFC restaurants. The first two columns accurately show those two key price terms for the beginning four-week period in calendar year 2014, and the last two columns accurately show that same key price term for the first period of the following calendar year, 2015. The middle column shows the bottom-line FOB price for the final four-week period of calendar year 2014. The government will admit this exhibit into evidence through a fact witness that possess personal knowledge of the source material.

***Exhibit A8:*** Exhibit A8 summarizes 2 sets of 8 nearly identical documents that differ only in attendees and dates in summary form. Use of a summary for the presentation of such evidence will streamline the presentation of evidence in trial and the jury's understanding of the multiple meetings in context. The defendants point to no authority as to why the government needs to list every attendee or participant to a communication, particularly where the identities of others are not relevant to the summary information, as will be explained by the sponsoring witness—the author of the 16 documents. To avoid any confusion, the ordering of meetings in A8 was changed to be chronological.

***Exhibit A9:*** The defendants fail to show how a count of the number of phone contacts is misleading in any way. The defendants are free to present additional information surrounding phone calls and cross-examine the sponsoring witness.

***Exhibit A10:*** As stated in its trial brief, Exhibit A10 will be used as a demonstrative. ECF no. 670 at 2. The government will not offer it into evidence.

### III. Summaries of Admissible Evidence Do Not Violate the Confrontation Clause

Summaries of voluminous non-testimonial evidence do not create a Confrontation Clause issue. If the documents underlying the summary are not testimonial, the summaries are not either. *United States v. Naranjo*, 634 F.3d 1198, 1213-14 (11th Cir. 2011); *United States v. Hemphill*, 514 F.3d 1350, 1359 n.2 (D.C. Cir. 2008) (no Confrontation Issue in a summary of business records). Here, the documentary evidence underlying the government's summary exhibits are not testimonial in nature, so they do not raise constitutional concerns.

The defendants have not cited any case finding a summary exhibit to be testimonial. The underlying documents are not testimonial. To the extent they contain out-of-court statements (for example, email and text messages), the excerpted portions are not hearsay, will be offered into evidence in advance of the summary, and the introduction of such evidence through a summary agent is entirely proper. By the defendants' argument, any summary exhibit prepared by the prosecution is testimonial. That argument simply not supported by the Federal Rules of Evidence nor the Constitution.

## CONCLUSION

"It is hard to imagine an issue on which a trial judge enjoys more discretion than as to whether summary exhibits will be helpful." *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 67 (1st Cir.2002). The summaries at issue here fairly and accurately summarize the evidence in a lengthy and document-intensive trial and the witness who assisted in preparing and reviewing the summaries will be subject to cross-examination. As such, the use and introduction of the exhibits are proper.

Moreover, the defendants' concerns can properly be addressed by a limiting instruction. The government proposes the following as contained in the Comments to Tenth Circuit Pattern Instruction 1.41 as proper where underlying evidence is introduced along with summaries or charts:

> Summaries or charts are not themselves evidence, but are summaries, the accuracy and reliability of which are to be determined by the testimony and exhibits admitted into evidence.

Tenth Circuit Pattern Instruction 1.51, Comments.

Respectfully submitted this 23rd day of October, 2021.

> By: s/ Heather D. Call
> Heather D. Call
> Michael T. Koenig
> Carolyn M. Sweeney
> Paul J. Torzilli
> Trial Attorneys
> Antitrust Division
> U.S. Department of Justice
> Washington Criminal II Office
> 450 Fifth Street, N.W.
> Washington, D.C. 20530
> Tel: (202) 616-2165
> Email: michael.koenig@usdoj.gov