IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

      Defendants.

## UNITED STATES' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY BY PROFESSOR EDWARD SNYDER

The government respectfully moves to exclude certain portions of testimony by Professor Edward Snyder. The defendants have now attempted on three different occasions to provide the government with adequate disclosures regarding Professor Snyder's testimony, all of which have fallen short. At this point, exclusion is the appropriate remedy for the defendants' repeated failures.

In letters dated May 14, 2021, *see* ECF 299-1, and July 19, 2021, *see* ECF 299-2, the defendants submitted to the government—then supplemented—their Rule 16 expert disclosures. After reviewing those letters, the government moved the Court to

exclude certain portions of the defendants' expert testimony. *See* ECF 299. As relevant here, the government sought to exclude expert opinion from Professor Snyder on the following topics:

> Professor Snyder is expected to testify about the product sales at issue in the "episodes" of alleged collusion and the economic implications of those data, including as applied to the conspiracy allegations in the superseding indictment and in comparison to sales of other products during the relevant period. Professor Snyder is also expected to analyze the observed outcomes and data and test for indications of supracompetitive pricing. Professor Snyder is expected to use standard economic benchmarking techniques, among others, in support of his testimony on that topic. Professor Snyder is expected to testify that the outcomes related to the "episodes" are not consistent with those that economists would expect to find in the presence of a price-fixing or bid-rigging agreements.

*See* ECF 299 at 7-9 (emphasis omitted).

The Court granted that part of the government's motion. ECF 649. The Court stated that "[a]lthough Rule 16 does not require an expert in a criminal case to explain his or her opinions in advance of trial, [*United States v. Nacchio*, 555 F.3d 1234, 1262 (10th Cir. 2009),] the rule nevertheless requires that the written summary regarding the expert 'describe the witness's opinions' and 'the bases and reasons for those opinions.'" *Id.* at 8. The Court concluded that "[t]he challenged portion of Professor Snyder's summary fails to do that." *Id.* The Court reasoned that the defendants' disclosure was deficient in essence because it largely consisted of broad topical areas, but was thin on the substance of what Rule 16 requires: opinions, and the bases and reasoning for the opinions. *See id.* at 8-9 (citing, *e.g.*, *United States v. Peel*, 2014 WL 5473141, at *2 (E.D. Cal. Oct. 23, 2014) (holding inadequate a summary that "provide[s] a list of the general subject matter to be covered, but d[oes] not identify what opinion[s] the

expert[s] w[ill] offer on those subjects")). To remedy the defendants' failures, the Court required the defendants to supplement the opinion within seven days of its order. *See id.* at 9.

The defendants' attempt to comply with the Court's order was sent to the government on Friday October 22. That letter provided the following two paragraphs of content:

> Professor Snyder is expected to testify about the application of economic techniques he used to test alternative hypotheses related to certain bids and prices of broiler chicken observed in this case. Specifically, he has tested whether "observed outcomes," which he defines here as bids, prices, and related data, are consistent with the alleged price-fixing and bid-rigging agreement. Professor Snyder analyzed supply and demand conditions, industry characteristics, bid and price data, and suppliers' specific business strategies and assessed their impact on the observed outcomes. Professor Snyder is expected to testify that his analyses showed that the observed outcomes are inconsistent with a price-fixing and bid-rigging agreement.
>
> In addition, Professor Snyder will testify about the results of his benchmarking analyses. Benchmarking is a standard approach used by economists by which one set of data is compared to another. Professor Snyder used benchmarking to compare the prices at issue to prices that were not alleged to have been affected by the alleged conspiracy. To perform his benchmarking analyses, Professor Snyder relied on a data set comprised of prices paid by a sample of buyers of comparable products and prices charged by a sample of suppliers of comparable products across various time periods. Professor Snyder is expected to testify that the benchmarking analyses showed that the prices at issue were not systematically higher than a database of benchmark prices, including prices not alleged to have been affected by the alleged conspiracy, and, therefore, are inconsistent with the alleged price-fixing and bid-rigging conspiracy.

Exhibit A.

The third letter, like the defendants' first two disclosures, is insufficient: it continues to focus on the broad topics of Professor Snyder's testimony, which the Court has already ruled do not comply with Rule 16, *see* ECF 649 at 8, including "the

application of economic techniques he used to test alternative hypotheses related to certain bids and prices" and "the results of his benchmarking analyses." Indeed, at least two sentences are simple variations of earlier disclosures this Court has already rejected as inadequate. The second letter (sent on July 19) states that Professor Snyder would testify "that the outcomes related to the 'episodes' are not consistent with those that economists would expect to find in the presence of a price-fixing or bid-rigging agreements," ECF 299-2 at 8, while the third letter (sent on October 22) similarly states that Professor Snyder would testify "that his analyses showed that the observed outcomes are inconsistent with a price-fixing and bid-rigging agreement" and that "the prices at issue … are inconsistent with the alleged price-fixing and bid-rigging conspiracy," Exhibit A. The Court has already rejected that language as a "very general statement [that] does not identify what the 'outcomes' were of his analysis and what opinions he drew from the inconsistency." ECF 649 at 9.

  The vague level of detail in the defendants' third letter also spotlights another potential problem with the proposed testimony justifying exclusion. Professor Snyder's benchmarking analyses rely on the comparison of two different datasets—"prices at issue" and "prices that were not alleged to have been affected by the alleged conspiracy." However, the defendants' disclosures fail to show that the latter dataset is relevant. The disclosures do not indicate that the defendants knew about those prices, much less that they played a role whether the defendants knowingly joined an agreement to fix prices.

4

Without a connection to the defendants' state of mind, the dataset makes the benchmarking analysis an after-the-fact, damages-type analysis that is irrelevant and will waste time. The Court addressed this issue in relation to Professor Snyder's second opinion. *See* ECF 649 at 7 ("[T]he defendants' theory of the case is not that there was a justifiable agreement among the suppliers to fix prices. . . . [T]he defendants seek to introduce Professor Snyder's opinion [about information exchanges] as part of their theory that there was no agreement among them to fix prices in the first place. . . . The Court finds that Professor Snyder's opinion is admissible for that purpose."). Just as the government will object to any attempt by the defendants to use Professor Snyder's second opinion in a way that conflicts with this Court's October 15th order, so too will the government object if the defendants seek to go down the same path with the third opinion at issue in this motion.

Even if the Court were not to exclude the dataset along with testimony on the opinion as a whole, the government needs additional disclosures on it to mount any sort of meaningful cross-examination of Professor Snyder's benchmarking analysis. For example, because the broiler chicken industry is so product specific, many factors not detailed by the disclosures play a role in price—including the size and variety of bird, the product line, when it was sold, which supplier sold it, which customer it was sold to, whether the price was individually or collectively negotiated, etc. It appears this will be the most basic information that he will say forms the basis of his opinion and yet not one detail was provided in the disclosure. While there are data sets that the government believes could be the data to which defense refers, the type of information the

government seeks is still necessary to sort through that data. Additionally, the government should also be afforded the opportunity to inspect the data presentation for reliability and accuracy.

The government respectfully submits that exclusion is appropriate, rather than yet another round of supplemental disclosure, which would occur in the midst of trial. *See United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988) (setting forth factors for courts to consider in remedying a Rule 16 violation, including the extent of prejudice to the party that sought the disclosure and "the feasibility of curing the prejudice with a continuance"). One of the purposes of the Rule 16 disclosures is "to minimize surprise that often results from unexpected expert testimony . . . and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." 1993 Adv. Comm. Notes to Fed. R. Crim. P. 16.

Neither of those aims are achieved if the defendants are allowed to introduce Professor Snyder's testimony. Whatever testimony is ultimately given at trial will be "unexpected expert testimony," and the government will not have a fair opportunity to cross-examine Professor Snyder on this issue. Exclusion is therefore appropriate. *See Nacchio*, 555 F.3d at 1249 (holding that a trial court did not abuse its discretion in excluding a defendant's expert testimony when the issue of admissibility of that testimony had been put before the defendant multiple times, including in a trial court's ruling which "offered specific support for its determination and referenced relevant filings by both [the defendant] and the government."); *United States v. Banks*, 761 F.3d 1163, 1199 (10th Cir. 2014) (holding that a trial court did not abuse its discretion in excluding

the defendants' expert testimony when inadequate Rule 16 disclosure would have harmed the government's ability to cross-examine the expert and when such inadequate disclosure came in the midst of trial).

For the reasons stated, the Court should grant the government's motion.

Dated: October 24, 2021          Respectfully submitted,

/s/ Michael Koenig
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the United States