IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

## ORDER

This matter comes before the Court on the United States' Motion to Exclude Certain Expert Testimony by Professor Edward Snyder [Docket No. 725]. Defendants have filed a response. Docket No. 734.

The government moves the Court to exclude certain portions of Professor Edward Snyder's expert testimony. Docket No. 725 at 1. The government previously moved to exclude four of Professor Snyder's opinions. *See* Docket No. 299 at 5-10. The Court granted the motion in part and denied it in part. *See* Docket No. 649 at 5-10. As relevant here, the Court found that Professor Snyder's third opinion was an insufficient disclosure under Fed. R. Crim. P. 16 and ordered defendants to file a

supplement within seven days. *Id.* at 8-9. Professor Snyder's previous disclosure of his third opinion was insufficient because the first three sentences did not identify any opinions and the fourth sentence did not identify what the outcomes of his analysis were and what opinions he drew from them. *Id.* at 9.

Defendants filed a supplemental disclosure, which states:

> Professor Snyder is expected to testify about the application of economic techniques he used to test alternative hypotheses related to certain bids and prices of broiler chicken observed in this case. Specifically, he has tested whether "observed outcomes," which he defines here as bids, prices, and related data, are consistent with the alleged price-fixing and bid-rigging agreement. Professor Snyder analyzed supply and demand conditions, industry characteristics, bid and price data, and suppliers' specific business strategies and assessed their impact on the observed outcomes. Professor Snyder is expected to testify that his analyses showed that the observed outcomes are inconsistent with a price-fixing and bid-rigging agreement.
>
> In addition, Professor Snyder will testify about the results of his benchmarking analyses. Benchmarking is a standard approach used by economists by which one set of data is compared to another. Professor Snyder used benchmarking to compare the prices at issue to prices that were not alleged to have been affected by the alleged conspiracy. To perform his benchmarking analyses, Professor Snyder relied on a data set comprised of prices paid by a sample of buyers of comparable products and prices charged by a sample of suppliers of comparable products across various time periods. Professor Snyder is expected to testify that the benchmarking analyses showed that the prices at issue were not systematically higher than a database of benchmark prices, including prices not alleged to have been affected by the alleged conspiracy, and, therefore, are inconsistent with the alleged price-fixing and bid-rigging conspiracy.

Docket No. 734-1 at 2-3.

Rule 16 requires that defendants' disclosure "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G).

2

The Court finds that Professor Snyder's supplemental disclosure cures the earlier deficiencies because it describes his opinions and their bases. Professor Snyder states his methods, i.e., that he "analyzed supply and demand conditions, industry characteristics, bid and price data, and suppliers' specific business strategies and assessed their impact" on "'observed outcomes,' which he defines here as bids, prices, and related data." Docket No. 734-1 at 2. Based on these methods, he draws the conclusion that the "observed outcomes" are inconsistent with a price-fixing and bid-rigging agreement. *Id.*

Additionally, Professor Snyder intends to testify about the results of his "benchmarking analyses," which involves comparing two datasets. *Id.* Professor Snyder is expected to testify that the results of these analyses do not show systematically higher prices for those prices allegedly affected by the conspiracy. *Id.* This disclosure also states what Professor Snyder's opinions are and the basis for them. The Court finds that it is sufficient under Rule 16.

The government also objects that the supplemental disclosure fails to show that the dataset that Professor Snyder used to compare to the "prices at issue," namely, a dataset of prices that were "not alleged to have been affected by the alleged conspiracy," is relevant since defendants' supplemental disclosure does not indicate that "defendants knew about those prices." Docket No. 725 at 3-5. However, defendants say that Professor Snyder's comparison is not relevant to damages or to an economic justification for price fixing, but rather to the issue of whether a price fixing agreement existed. Docket No. 734 at 4. The Court has already indicated that defendants cannot elicit expert testimony that the alleged conspiracy was justified by

3

procompetitive outcomes, *see* Docket No. 649 at 7, but that does not preclude Professor Snyder from testifying about whether or not his analyses show the existence of a conspiracy. *See id.* (discussing permissible use of Professor Snyder's opinion in support of defendants' theory that there was no agreement to fix prices). The Court accordingly rejects the government's argument that Professor Snyder's benchmarking analysis is irrelevant.

The government also argues that it cannot meaningfully cross-examine Professor Snyder without knowing additional details about the datasets Professor Snyder's benchmarking analysis is based on. Docket No. 725 at 5-6. The government states that, while it has datasets it believes may be the data the Professor Snyder's supplemental disclosure references, because the broiler chicken industry is "so product specific," it needs additional disclosures in order to be able to meaningfully cross-examine Professor Snyder. *Id.* at 5. In their response, defendants state that, while not required to do so by Rule 16, they have "produced to the government the specific datasets that Professor Snyder analyzed and about which he will testify." Docket No. 734 at 2. Defendants also argue that any additional disclosures beyond the dataset itself, including "the products considered, when they were sold, who sold them, the customers who bought them, and the surrounding negotiation history," is beyond what is required under Rule 16. *Id.* at 5. The Court finds that, because defendants disclosed the specific dataset Professor Snyder uses in his benchmarking analysis, this portion of the government's motion is moot. To the extent the government seeks information beyond the specific dataset, the Court finds that the additional information is beyond that required under Rule 16.

4

For the foregoing reasons, it is

**ORDERED** that United States' Motion to Exclude Certain Expert Testimony by Professor Edward Snyder [Docket No. 725] is **DENIED**.

DATED November 9, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge