IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

## UNITED STATES' BRIEF REGARDING THE ADMISSIBILITY OF PERSON-IDENTIFYING SOURCES FOR THE SUMMARY EXHIBITS

The government intends to introduce at trial summary exhibits[1] that consist of charts excerpting and placing in context emails, hard copy documents, text messages and phone calls that span several years. Taking each "substantive" record (a phone call, text message, or email) in isolation,[2] the summary exhibits excerpt from approximately 350 sources. In addition, each line item for a "substantive" exhibit

---

[1] These summary exhibits, previously identified as Exhibit A4 in the relevant briefings, now bear Government Exhibit stickers: 1-1, 2-1, 3-1, 4-1, 7-1, 8-1, 9-1, 10-1, 10-2, 10-3, 5-1, 14-1, 14-2, 14-3, 16-1, 17-1, 18-1, 18-3, and 20-1.

[2] The number of corresponding number is smaller because, for example, many phone calls may appear on the same toll record excerpt.

sources from a number of "associating" exhibits, which connect the approximate 50 participants in the communications with their employers and, where applicable (for example, in the case of a phone call), their phone numbers. These summary exhibits—which have been the subject of extensive briefing—will likely be offered into evidence the week of November 15, 2021. *See* ECF No. 542, 564, 670, 715, 722, 741, 760, 774.

The substantive communications contained on the summary charts are the "substantive" exhibits the parties have been litigating outside the presence of the jury.[3] The government has and will continue to seek to offer the "substantive" exhibits that consist of emails and text messages into evidence at the appropriate time in trial in relation to witness testimony regarding bidding events and conspiratorial conduct surrounding those events. However, to provide for an efficient use of the Court and jury's time, the government seeks a pretrial ruling on the admissibility of the associating exhibits for the limited purpose of associating each individual to his or her employer and phone number(s).

Due to the amount of evidence in this case, as well as the number of defendants, coconspirators, the associations of names with phone numbers, competing chicken suppliers, and customers are important to aid the jury in its fact finding.  The associating exhibits are admissible as non-hearsay or as exceptions to hearsay for the relevant purposes. There are two general groups of associating exhibits: (1) those that associate individuals with their employers; and (2) those that associate individuals with phone numbers. The admissibility of each for these purposes are addresses in turn below:

---

[3] There are more substantive exhibits than just those listed on the summary exhibits.

### A. Exhibits Associating Names with Employers

Individuals are associated with their employers in the summary exhibits through associating exhibits that include the relevant individual's transmission of an email from their corporate email address. The summaries contain communications relating to individuals from 13 different poultry suppliers and customers: Church's Chicken, Claxton, George's, Golden Corral, Koch, Mar Jac, Marshall Durbin, Perdue, Pilgrim's, Pollo Tropical, RSCS f/k/a UFPC (purchasing cooperating for KFC), SMS (purchasing cooperative for Popeyes), and Tyson. While certain associating exhibits are used throughout the summaries as sources for employer information, for many emails excerpted in substance in the summaries, the face of the email itself contains sufficient information to identify the participants' employers. The associating employment sources that are not otherwise being admitted in whole are listed in Exhibit 1.

The email address in the "From" field of each email message is auto-generated by a machine, making it non-hearsay and a reliable source for linking each individual to his or her employment. As the Tenth Circuit held in *United States v. Hamilton*, 413 F.3d 1138, 1142–43 (10th Cir. 2005), when header information is "generated instantaneously by the computer without the assistance or input of a person," that "uncontroverted fact clearly places the header information outside of Rule 801(c)'s definition of 'hearsay,'" as "there was neither a 'statement' nor a 'declarant' involved here within the meaning of Rule 801." For this proposition, the Tenth Circuit cited *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir. 2003), in which the Third Circuit similarly concluded that "header information automatically generated by fax machine was not hearsay because "nothing

3

'said' by a machine ... is hearsay." As another court explained, "[t]he Third and Tenth Circuit approaches are . . . endorsed by evidentiary treatises." *Hawkins v. Cavalli*, 2006 WL 2724145, at *12 (N.D. Cal. Sept. 22, 2006) (citing McCormick On Evidence, § 294(b), at 447 (John W. Strong ed., 5th ed. 1999)). The header information in the "From" line of an email is generated by the computer or email provider without the assistance of a human declarant.

As to the association between the name identified in the "From" field and the company listed in the domain name, many custodial witnesses have established that the domain names within each email address are assigned to employees of the relevant companies in addition to testifying to the email addresses assigned to particular individuals at those companies. *See, e.g.* Testimony of Mr. Lumakar Challa (Pilgrim's Pride), Tr. Transcript (Oct. 28, 2021) at 137; Mr. Matt Bunch (Tyson), *id*. at 33; Mr. Bill Kent (RSCS), *id*. at 83; Mr. Robert Hood (George's), *id*. at 115; Mr. Stewart Ward (Koch Foods) at 189; Mr. Greg Finch (Claxton Poultry), *id*. at 207. In addition, fact witnesses have testified as to the identities of individuals associated with certain email addresses. For example, Michael Ledford of RSCS during his testimony identified emails between himself and the following individuals: Ric Blake (George's), Darrel Keck (George's), Roger Austin (Pilgrim's), Tim Scheiderer (Tyson), Brian Roberts (Tyson), Mark Oeschli (UFPC), and the UFPC purchasing team. Tr. Transcript (Nov. 10, 2021) at 123, 123, 40, 181, 102, 181, 181. Witnesses Bob Lew and Joe Brink testified to their own email addresses.

Moreover, as a general matter each of the businesses involved has a sufficient self-interest in the accuracy of the email addresses assigned to its domain that the Court can find their contents to be trustworthy under 803(6). *United States v. McIntyre*, 997 F.2d 687, 699 (10th Cir. 1993), *as amended on denial of reh'g* (Aug. 18, 1993).

Taken together, this evidence establishes the reliability of the association between each individual listed in the summary exhibits and their employer.

### B. Exhibits Associating Names with Phone Numbers

The summary exhibits also contain reference to dozens of phone calls. For each call, the relevant individual or corporate line is associated with the phone number contained in the toll record. A list of the approximate 40 phone numbers and the exhibits linking the names with the phone numbers is contained in the government's exhibit 90-10.

The linkages between names and phone numbers are drawn from a small number of source types: (1) corporate email signatures; (2) Verizon & AT&T subscriber information and toll records; (3) contact lists from imaged devices; (4) other business records, such as bid submissions, invoices, contracts, organizational charts, out-of-office emails, or letter on company letterhead; and (5) documents that have already been admitted or are otherwise being offered into evidence for truth of the matter asserted as coconspirator statements. Exhibit 1 to this filing contains a list grouping the associating exhibits into these categories. The admissibility of each is described below: Because some sources are listed as sources for multiple numbers in GX 90-10 (for example, a contact list), a nonduplicative list is attached as Exhibit 2.

5

1. *Corporate Email Signatures.*

Corporate email signatures are admissible for the purpose of associating individuals with phone numbers and their employers as business records under 803(6), as each individual who created an email signature as part of his or her employment is "under a business duty or compulsion to provide accurate information." *United States v. McIntyre*, 997 F.2d 687, 699 (10th Cir. 1993), *as amended on denial of reh'g* (Aug. 18, 1993). While the contents of emails may constitute hearsay, corporate email signatures by their very nature bear sufficient indicia of reliability such that they may be excepted from the hearsay rule. In other words, email signatures meet the requirements of the business exception in the Tenth Circuit because the interest of each business is for its employees to maintain accurate signature blocks—so the contents of the signatures are trustworthy. *Id*. at 700 (explaining that "[i]n some cases, the interests of the business may be such that there exists a sufficient self-interest in the accuracy of the log that we can find its contents to be trustworthy."); *United States v. Gwathney*, 465 F.3d 1133, 1140–41 (10th Cir. 2006) ("The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records.") (internal quotation omitted). Here, individuals using corporate email addresses frequently sent messages relating to company work bearing email signatures containing their employer name, address, and phone numbers. Because they held themselves out to their customers and suppliers using these means in the regular course of business, the email signatures are excerpted from the hearsay rule.

For each defendant, the email signatures also constitute party-opponent statements admissible under 801(d)(2)(A).  *See, e.g.*, *Lichter v. Bureau of Accts. Control, Inc.*, 2021 WL 1026175, at *5 (S.D.N.Y. Mar. 17, 2021) (documents on letterhead "admissible as the statements of a party opponent").

Lastly, email signatures constitute non-hearsay, offered not for the truth but instead to show association between conspirators.  Many of the email signatures are in communications between conspirators, and therefore are admissible to show that the recipient associated the listed phone number with the declarant. *See United States v. Ruiz*, 477 F.2d 918, 919 (2d Cir. 1973) (admitting slip of paper with defendant's name and a telephone number, where slip was introduced to show that co-conspirator bearer of slip knew the defendant "and anticipated calling him on the telephone"); *cf. Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991) (holding that documents prepared on company letterhead and disclosed during discovery support authenticity of such documents).

2. *Subscriber information or phone bills*.

The Court has previously admitted subscriber information and phone bills as business records under 803(6), so it follows that these records can be properly used to establish the truth of the matter asserted: the linkage between the account user and phone number. To the extent that the user-identifying information in phone records is provided by a third party—such that the chain in reliability of the business record could possibly be broken—both AT&T (Mr. Fanara) and Verizon (Ms. Sandoval) witnesses testified to the procedures used to verify the identity of the account holder. Therefore,

7

although the user-identifying information was provided by a third party, the company's verification of this information provides sufficient assurances that the information is reliable under Rule 803(6).  *United States v. Cestnik*, 36 F.3d 904, 908 (10th Cir. 1994) (hearsay-within-hearsay is admissible if there is "(1) proof that the business has a policy of verifying patrons' identities by examining their credit cards, driver's licenses, or other forms of identification; or (2) proof that the business possesses 'a sufficient self-interest in the accuracy of the [record]' to justify an inference of trustworthiness."); *McIntyre*, 997 F.2d at 700.

      3. ***Contact lists from imaged devices***.

The government intends to use contact lists and contact entries from imaged devices belonging to conspirators Scott Brady, Roger Austin, Jimmie Little, Carl Pepper, and Tim Mulrenin to identify additional users of relevant phone numbers.  Courts often admit contact lists in order to link coconspirators with each other. *See United States v. Akwei*, 514 F. App'x 291, 297 (4th Cir. 2013) (upholding admission of a cell phone contact list as "because it tends to show a connection between . . . the undisputed kingpin of the importation operation, and [the defendant]," and the "contact list was one way in which the government sought to connect [the defendant] to the conspiracy."); *United States v. Munguia*, 273 F. App'x 517, 521 (6th Cir. 2008) (contact list "was properly admissible for the non-hearsay purpose of linking [the defendant] to his co-conspirators").

Courts of appeal have upheld the admission of contact lists and call logs as records of a regularly conducted activity under 803(6) or otherwise indicated they can

8

be properly included in summary charts. *See, e.g.*, *United States v. Burke*, 12 F. App'x 209, 212 (6th Cir. 2001) (referring to "rolodexes which contained the phone numbers of the conspirators and affiliates of the Medellin cartel" as "business records"); *United States v. Barriga*, 584 F. App'x 791, 793–94 (9th Cir. 2014) ("The chart summarized . . . data from Castrellon Miramontes's contact list contained in the forensic report of Castrellon Miramontes's cell phone's contents, which defense counsel moved to have admitted.").

### 4. *Other business records*.

Finally, the government will seek to admit other business records order to link individuals with phone numbers. These sources include bid submissions, invoices, contracts, organizational charts, out-of-office emails, letter on company letterhead, or other documents admissible under 803(6). The Court has previously already admitted several of these types of documents.

### 5. *Otherwise Admissible Exhibits*

A number of phone number sources contained in Government's Exhibit 90-10 have already been admitted into evidence or will soon be for truth of the matter asserted based on their status as coconspirator statements, business records, and other items relevant to the government's case-in-chief, including Government Exhibits 219, 410, 1226, 3039, 9262.

For the reasons above, the underlying sources should be admitted into evidence—or at the least deemed admissible–at the hearing currently scheduled for November 10, 2021.

Dated: November 10, 2021				Respectfully submitted,

/s/ Heather D. Call
HEATHER CALL
MICHAEL KOENIG
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 598-2623
heather.call@usdoj.gov
Attorneys for the United States