IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAYSON JEFFREY PENN, *et al.*

      Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO SUPPLEMENT THE *JAMES* LOG AND FOR RECONSIDERATION

The government seeks reconsideration of nine statements this Court previously held did not satisfy Rule 801(d)(2)(E), despite having no evidentiary or legal support to justify a change in ruling. The government also seeks to supplement its *James* log with 90 out-of-court statements that it contends satisfy Rule 801(d)(2)(E).  More than half of these were statements the government was aware of at the time it was required to submit its *James* log, nearly six months ago. The remaining proposed statements contain multiple levels of hearsay and/or the government is seeking an advisory pretrial ruling about testimony it anticipates it may be able to elicit at the retrial.

The Court should deny the government's motion because: (1) there is no justification for reconsideration of the Court's prior *James* rulings; (2) the government has not justified its untimely request to supplement the *James* log with statements that were known and available to the government before the *James* hearing; and (3) the government has not established that any of the statements in the supplemental log satisfy 801(d)(2)(E). Alternatively, the Court should re-open the *James* hearing to allow the Defendants an opportunity for cross-examination related to the statements in the supplemental log and to enable the Court to make a ruling based on a full evidentiary record.

1

## I.     THE GOVERNMENT HAS NOT JUSTIFIED RECONSIDERATION.

The government seeks reconsideration of this Court's prior rulings with regard to eight entries from its original *James* log that this Court previously ruled were not in furtherance of the conspiracy. Doc. 941 at 2 (citing original *James* log entries 50, 51, 52, 56, 57, 73, 152, and 163); Doc. 559 at 24-26, 33-34. The government also seeks reconsideration of one statement in its supplemental log, entry 2-S, which this Court ruled at trial was not admissible under 801(d)(2)(E) because the government failed to include it in the *James* log. Nov. 12, 2021 Trial Tr. 2711:25-2712:8 ("this was not on the *James* log" and "could have, should have been on the *James* log").[1]

As this Court has already made clear, a "motion for reconsideration is not an appropriate means to revisit issues already addressed or to advance arguments or evidence that could have been raised in prior briefing," unless there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." Doc. 770 at 2 (quotation omitted); *see also Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.") (citation and quotation omitted). With respect to prior *James* rulings in particular, this Court noted the mistrial was not "a license to try to change rulings unless there is *some really good reason* to do so." *See* Dec. 16, 2021 Unofficial Tr. 33:13-17 (emphasis added).

---

[1] Citations to the official transcript are referred to by either by "[Date] Trial Tr." or the last name of the witness. All other citations are to the unofficial transcripts and are referred to as "[Date] Unofficial Tr." Given their draft status, the Defendants defer to the Court's recollection if it differs.

The government has not articulated any intervening change in the controlling law, new evidence that was previously unavailable, need to correct a clear error, or misapprehended facts or law that would require this Court to reconsider (much less reverse) its earlier ruling with regard to previous *James* Log entries 50, 51, 52, 56, 57, 73, 152, and 163, or supplemental log entry 2-S.

For entries 50, 51, 52, 56, and 57, the government claims as its basis for reconsideration "*expected*" testimony that Carl Pepper, a former Tyson employee, might give at a new trial. Doc. 941 at 8-10 (emphasis added). The government could have elicited from Mr. Pepper at the *James* hearing any testimony it desired, allowing the Defendants the ability to cross-examine and the Court to rule in advance of trial. But the government declined to extend immunity to Mr. Pepper— a witness whom the government had already interviewed a dozen times, who had provided proactive cooperation by consensually recording conversations, and was an employee of a company that received amnesty under the Antitrust Division's Leniency Program—resulting in Mr. Pepper invoking his Fifth Amendment right and rendering him unavailable for the *James* hearing. *See* Doc. 418 at 2; James Hr'g Tr. 131:7-133:1, 151:9-25, 160:10-15.

The government has now interviewed Mr. Pepper a thirteenth time and asks the Court to provisionally admit 24 alleged co-conspirator statements based on what it hopes Mr. Pepper will say at the retrial.[2] The government seeks to be relieved of the consequences of its tactical decision not to immunize Mr. Pepper and make him available at the *James* hearing. It admits the Court has

---

[2] For example, the government claims Mr. Pepper's statement in original *James* log entry 50—"I will get with our pricing group"—was made in furtherance of the conspiracy. Doc. 941 at 9. But in none of his interviews did Mr. Pepper say that this comment was in furtherance of any agreement. Further, any such inference is undermined by Mr. Bowlin's testimony at the first trial, regarding this same freezing charge, that any increase was based on actual costs and would not have been influenced by a suggestion from sales. *See* Dec. 6, 2021 Unofficial Tr. 42:24-43:13.

never heard any of the "expected" testimony on which it now seeks a pre-trial ruling. Without new evidence or testimony to support the government's representations about what a potential witness *may* say at trial, there are no new facts that warrant reversal of the Court's prior ruling.

Similarly, the government claims that the basis for reconsideration of entries 152 and 163 is the trial testimony of Joseph Brink. Doc. 941 at 11.[3] Like with Mr. Pepper, the government could have called Mr. Brink at the *James* hearing. The government further suggests that the Defendants' choice to admit these documents through cross-examination in the first trial transforms them into 801(d)(2)(E) material and precludes the Defendants from objecting to the government's current attempt to re-classify them as such. Doc. 941 at 11 & n.5. As discussed below, there is no doctrine that prevents the Defendants from raising appropriate objections now and at retrial.

The government has similarly failed to articulate any new evidence justifying reconsideration of entry 73 from the original *James* log—a 2013 email from Defendant Scott Brady. The new "evidence" the government cites in support of reconsideration is "completion of a phone records analysis" from evidence the government had prior to the *James* hearing. Doc. 941 at 12-13.[4] The government offers no reason why it did not review and analyze these records before

---

[3] The government also argues that good cause exists to reconsider entry 163 because of "Claxton's mid-trial production" of a *different* document, GX 9740. Doc. 941 at 11. As Messrs. Brady and Fries already have explained, GX 9740 and other Pollo Tropical documents now appearing on the supplemental log were available to the government long before trial. Doc. 832. The government's apparent failure to seek additional documents from Pollo Tropical in a timely manner does not amount to good cause.

[4] The government also erroneously claims Michael Ledford's trial testimony and the Court's "conclusion" that "calls among competitors regarding bidding is part of the conspiracy" constitute "changed circumstances." Doc. 941 at 13. Mr. Ledford testified he wished such communications did not occur and *if* they did, he feared he would lose bargaining power. The Court has not made

the *James* hearing or why there should be no consequence for its lack of diligence. The government

cannot now seek a redo based on evidence it previously could have submitted.

The government has not even attempted to justify reconsideration of this Court's prior

801(d)(2)(E) ruling with regard to entry 2-S on the supplemental log. The government

acknowledges that this Court previously allowed the statement to be admitted only against Mr.

Austin, but it ignores that the Court explicitly rejected the government's request to admit the

document under 801(d)(2)(E), based on the fact that it "could have, should have been on the *James*

log." *See* Nov. 12, 2021 Trial Tr. 2711:25-2712:8. The government has not offered any new facts,

evidence, or argument warranting reconsideration of that ruling.

## II.   THE COURT SHOULD NOT ISSUE A PRE-TRIAL RULING UNDER 801(D)(2)(E) ON STATEMENTS FOR WHICH THE GOVERNMENT PREVIOUSLY COULD HAVE SOUGHT 801(D)(2)(E) TREATMENT.

The government admits that there are numerous statements in its supplemental log for

which it could have previously sought 801(d)(2)(E) treatment but did not, and it also asks the Court

to rule on two statements that were included in the government's original *James* Log but later

withdrawn by the government from consideration. Doc. 941 at 14-15 (describing original *James*

log entries 46 and 245). Like the two original *James* log entries, more than half of the supplemental

log is comprised of documents that were available to the government before the *James* hearing and

for which the government previously could have sought 801(d)(2)(E) treatment. That includes 25

of the 30 "interview reports" and recordings on the supplemental log, Doc. 941-1 at 5-6, 8

(supplemental *James* log entries 23-S–44-S, 84-S–89-S), and 23 entries that consist of emails, text

---

a finding that "calls among competitors regarding bidding is part of the conspiracy." Doc. 932 at
15.

5

messages, and notes, Doc. 941-1 at 1-5, 8 (supplemental *James* log entries 1-S–22-S, 90-S).

Indeed, there are several entries the government *claims* it did not have prior to the *James* hearing but in fact it did. Entry 7-S, for example, contains a statement the government claims it did not possess when the original *James* log was filed. Doc. 941 at 5-6. But the statements from that entry are included in GX 500, which appeared as entry 163 on the original *James* log and the Court determined was not in furtherance of the conspiracy. Doc. 559 at 34. Similarly, the supplemental log contains a statement from an "August 11, 2021" interview report with Mr. Bryant. But in fact the cited statement appears in an interview report from July 12, 2021—over a month before the government filed its *James* log on August 13, 2021.

This Court has previously rejected the government's request to supplement the *James* log with additional statements it failed to include in its original log. Doc. 558 at 2 (Order denying government's motion for leave to offer seven additional exhibits to its *James* log, because the government "did not include th[o]se exhibits in its original log and defendants were not able to cross-examine Special Agent Taylor about them at the *James* hearing."). The Court reaffirmed that ruling at trial, when it repeatedly sustained objections to admissibility under 801(d)(2)(E) for exhibits that could have been but were not included on the *James* log. *See, e.g.*, Nov. 5, 2021 Trial Tr. 1798:11-18; Nov. 12, 2021 Trial Tr. 2711:25-2712:8. Again, lack of diligence or rethinking tactics is not a basis for reconsideration of the Court's ruling that the government's failure to abide by the Court-ordered deadline to provide a *James* log and precludes subsequent untimely submissions.[5]

---

[5] The government itself appears to acknowledge the untimely nature of its request when it asks for "reconsideration" of two entries that were included on the government's original *James* log but withdrawn before the hearing—meaning they were never the subject of a ruling under

**III.   NONE OF THE STATEMENTS ON THE SUPPLEMENTAL *JAMES* LOG SATISFY 801(D)(2)(E).**

If the Court were to reach the merits, notwithstanding the government's inexcusable delay, the Court should deny the government's motion because *none* of the statements on the government's supplemental log are admissible under 801(d)(2)(E). For the statements to satisfy 801(d)(2)(E), the government must establish, by a preponderance of the evidence, "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Hall*, 473 F.3d 1295, 1302–03 (10th Cir. 2007) (quotations and citations omitted). The attached Exhibit A contains a complete list of the Defendants' objections to the entries in the government's supplemental log. The Defendants write below to emphasize deficiencies in certain categories of those documents.[6]

**A.   Memoranda of witness interviews**

There are 25 entries on the government's supplemental log that consist of statements from interview summaries prepared by case agents. Doc. 941-1 at 5-6 (supplemental *James* log entries 23-S–44-S and 48-S–52-S). These entries contain at least two and sometimes three levels of hearsay and are not admissible under 801(d)(2)(E).

---

801(d)(2)(E). *See* Doc. 941 at 14-15 (citing original *James* log entries 46 and 245). There is no difference between statements that were withdrawn from consideration before the hearing and statements that *could have been* presented for ruling at the *James* hearing, but were not.

[6] Certain entries on the government's supplemental *James* log also appear on the government's list of exhibits to be introduced without a sponsoring witness. The Defendants incorporate and reassert their Joint Objections to the Government's Notice of Exhibits without a Testifying Witness. Doc. 945, 945-1. The Defendants also incorporate and reassert all their prior objections regarding the government's failure to prove, even by a preponderance, that the charged conspiracy existed, or that any Defendant or declarant was a member of it. Docs. 395, 395-1, 408, 470.

For example, entry 24-S is an excerpt of an interview report for an interview that took place with Carl Pepper on February 12, 2021. According to the government's supplemental log, the "Statement" from that interview report for which the government seeks an 801(d)(2)(E) ruling is a statement from Carl Pepper to agents, during the interview, that Mr. Pepper told Messrs. Roberts and Mulrenin about Mr. Pepper's "conversations with competitors." Doc. 941-1 at 5. There was substantial trial testimony, however, about legitimate conversations between competitors, and such vague statements about non-descript conversations do not reveal if or how they could be in furtherance of the conspiracy.

In any event, the interview report is not a statement of Carl Pepper. The statement was not made under oath, it was not signed by Mr. Pepper, and it has not been adopted through testimony. *See United States v. Jackson*, 454 F. App'x 435, 447 (6th Cir. 2011) (district court properly refused admission of agent summaries of witness interviews, noting the summaries are not co-defendant's statements but "reflect double hearsay: the co-defendant's original interview statements and the DEA agent's summaries of those statements"). The interview report constitutes a statement of the *preparing agent*, about what Carl Pepper told him in an interview (which was obviously not in furtherance of the conspiracy), about a previous out-of-court statement Mr. Pepper allegedly made to Messrs. Mulrenin and Roberts. The government appears to seek a pre-trial ruling regarding the alleged statement by Mr. Pepper to Messrs. Mulrenin and Roberts, but the government ignores the two other levels of hearsay required to reach that statement, neither of which satisfy 801(d)(2)(E).

The same is true for most of the other entries on the government's supplemental *James* log that are excerpts from interview reports. For example, in entry 25-S, the "Statement" from that same interview report is by the agent who drafted the report of what Mr. Pepper said to the agents

about various things Mr. Blake allegedly "told Mr. Pepper." The government seeks a pre-trial ruling with respect to the alleged statements by Mr. Blake, but ignores the other two levels of hearsay: Carl Pepper's testimonial statements to the agents, *see United States v. Morgan*, 748 F.3d 1024, 1048 (10th Cir. 2014), and the hearsay statements of the agents who prepared the interview reports—neither of which can be admitted under 801(d)(2)(E).

**B.      Testimony the government anticipates at the retrial based on witness interview memoranda**

It appears the government is seeking an advisory ruling that, if Mr. Pepper testifies at the retrial consistently with what an agent reflected in an interview report he said previously, Mr. Pepper's testimony would be admissible under Rule 801(d)(2)(E). The Court should not engage in such an exercise. The Court cannot know prior to trial what the actual testimony will be or have the context to make an evidentiary ruling. Rather, the vehicle by which the Court can make a pretrial ruling of admissibility is through a *James* hearing. After cross-examination, the Court would have an evidentiary record on which to base a pre-trial ruling. *See United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994) ("The strongly preferred order of proof in determining the admissibility of an alleged coconspirator statement is to first hold a '*James* hearing.'"). If the Court is going to consider the admission at the retrial under 801(d)(2)(E) of statements not previously on the *James* log, the Court should re-open the *James* hearing for that purpose.

**C.      Testimony from the first trial**

The government also seeks a pre-trial ruling that approximately 50 excerpts of testimony from the first trial qualify as co-conspirator statements under 801(d)(2)(E). But the government may not introduce testimony from the first trial at the retrial for a witness who is available to testify

at the retrial. Presumably, the government is seeking a pre-trial ruling that the same testimony, if elicited again, would be admissible under 801(d)(2)(E). The Court should deny that request.

### 1.    The Defendants have not waived objections to testimony similar to previous trial testimony.

The government contends that the Defendants cannot object to testimony that may be elicited at the second trial, because they have waived their right to do so by not objecting to the testimony about these statements at the first trial. As an initial matter, the Defendants *did* object, including on hearsay grounds, to a number of the entries of trial testimony on the supplemental log. *See, e.g.*, Brink Tr. 86:8 (objecting to testimony in entry 47-S); Bryant Tr. 17:1-22 (objecting to testimony in entry 54-S); Bryant Tr. 44:22 (objecting to testimony in entry 64-S).[7]

In any event, even in those instances where the Defendants did not object to testimony at the first trial, they have not waived the ability to object to testimony that may be elicited at the second trial. There is no doctrine that would bar the Defendants from raising appropriate objections at the retrial, regardless of whether those objections were raised or could have been raised during the first trial. *See* Wright & Miller, Fed. Prac. & Proc. § 5037.8 ("[F]ailure to object to evidence at the first trial does not bar an objection on retrial."); *United States v. Boyd,* 208 F.3d 638, 642-43 (7th Cir. 2000) (Posner, J.), *judgment vacated on other grounds*, 531 U.S. 1135 (2001) (district court erred in ruling that failure to object to admissibility of documents at first trial "waived the issue" in second trial because "issues of admissibility are often highly contextual and evidence at a second trial will often deviate significantly from that at the first").

---

[7] To the extent the government was aware of any of these statements when it submitted the original *James* log, it should be precluded from introducing them under 801(d)(2)(E) for that reason alone.

Citing no legal authority, the only "basis" the government cites for its unsupported waiver principle is "fairness." Doc. 941 at 4. But there is nothing unfair about the Defendants objecting to the admissibility of evidence presented against them in a second trial. In fact, fundamental fairness requires that the Defendants be given the opportunity to make appropriate objections to any testimony at the retrial. The evidence at the retrial will necessarily be different than at the first. To cite but one obvious example, Mr. Pepper will be a witness at the second trial but was not at the first, illustrating that the "evidence at the second trial will often deviate significantly from that at the first." *Boyd,* 208 F.3d at 643. Any finding that the Defendants, by not objecting at the first trial, waived their right to do so at the retrial and results in the admission of out-of-court statements the Defendants cannot challenge, would deprive the Defendants of their confrontation rights.

### 2. On the merits, the Court should not provide an 801(d)(2)(E) ruling on testimony from the first trial.

Waiver aside, there is no reason for this Court to make a ruling, at this time, on the admissibility of any alleged statements from the first trial. As with the government's speculation about testimony it may elicit consistent with interview memoranda, the government also seeks a pre-trial advisory opinion that, *if* testimony at the retrial is similar to select testimony from the first trial, it would be admissible under 801(d)(2)(E). But the actual testimony the government claims it may elicit has not yet been received, and therefore any ruling about prior testimony—which, standing on its own, is not admissible for a witness available to testify at the second trial—cannot resolve the admissibility of speculative future testimony. Unlike emails, text messages, or other written statements, trial testimony is subject to the specific questions that are asked of the witness, the foundation that is laid, and the witness's memory and ability to recall. The Court simply cannot opine pre-trial on whether testimony that has not yet been received would satisfy 801(d)(2)(E).

11

Moreover, many of the "statements" from the first trial that the government included on its supplemental log are blatant misrepresentations of the testimony cited. For example, Mr. Bryant testified he believed the pricing information he allegedly received from Mr. Austin in 2017 was future bid pricing, which was proven to be false. *See, e.g.*, Bryant Tr. 125:9-15, 390:10-14. In entries 71-S–74-S in the supplemental log, however, the government omits this critical fact, instead representing that Mr. Bryant testified to receiving "competitor pricing information." Doc. 941-1 at 7. Similarly, entry 53-S suggests Mr. Olson testified Messrs. Roberts and Blake "stated they were unable to help by providing a lower price." Doc. 941-1 at 6. But the referenced trial testimony contains no mention of a "lower price" at all; Mr. Olson testified only that he would discuss 1-2% discounts when talking to Messrs. Roberts and Blake. Olson Tr. 82:15-83:12.

It would be inappropriate for the Court to make advisory rulings on testimony the government has a good faith basis to anticipate *may* occur at the second trial. But, here, the government repeatedly asks for an advisory opinion on hypothetical testimony for which there is no basis to anticipate will actually be elicited at the at retrial.

### D.      Handwritten notes

Five of the entries on the government's supplemental *James* log contain handwritten notes that the government has not yet authenticated. Doc. 941-1 at 2-3 (entries 9-S–13-S). The government *asserts* these handwritten notes were authored by Mr. Penn and Mr. Lovette, Doc. 941-1 at 2-3, but it has not established the author of the statements.

Instead, the government predicts that it will "call a new witness [at trial] to authenticate the handwriting." Doc. 941 at 6. But it has not indicated how it will (or possibly could) prove the undated documents were written during and in furtherance of the charged conspiracy. To admit a

statement under Rule 801(d)(2)(E), the government must prove *the declarant* was a member of the conspiracy at the time he made the statements. *See United States v. Perez,* 989 F.2d 1574, 1577 (10th Cir. 1993) (en banc). "Knowledge of the identity of the declarant is [thus] essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy." *United States v. Mouzin*, 785 F.2d 682, 692–93 (9th Cir. 1986).

The Court cannot rule pre-trial that any of the entries containing handwritten notes satisfy 801(d)(2)(E) before the government establishes, through evidence, that the notes were authored by a co-conspirator, during the charged conspiracy, and were in furtherance of the conspiracy. And as the Court is aware from the first trial, the government has previously predicted it would be able to authenticate documents but then failed to prove that handwritten notes are what the government claims them to be. *See, e.g.*, Doc. 770 at 3; Nov. 12, 2021 Trial Tr. 2832:10-2833:16 (refusing GX 9688 because the government did not prove the author so the Court could not "really consider the handwriting to be from a co-conspirator"). The Court cannot sidestep authenticity requirements or the government's lack of proof to make a pre-trial ruling that these statements were made by co-conspirators during and in furtherance of the charged conspiracy.

**E.      Statements that are facially insufficient to satisfy 801(d)(2)(E)**

The government's supplemental *James* log also contains numerous statements that are clearly outside the bounds of 801(d)(2)(E). For example, entry 48-S does not involve any statement of a declarant, only that the witness opined on the "attitude[s]" of Messrs. Austin, Kantola, and Roberts.  Entry 22-S is an email chain between Carl Pepper and Neal Simco—who is not identified as a co-conspirator—from September 2011, long before Carl Pepper was found to have joined the conspiracy. Doc. 559 at 16 (finding Carl Pepper joined the conspiracy by May 31, 2013). A number

of statements in the government's supplemental log do not contain any dates at all, making it impossible to determine from the government's proffered information whether the statements satisfy 801(d)(2)(E). *See, e.g.*, Doc. 941-1 at 5 (supplemental *James* log entries 23-S–27-S, 35-S, 39-S). Indeed, one of those entries admits that, while Mr. Pepper "*did not recall the time and the place*," at some unspecified time "Defendant Mulrenin asked him to reach out to competitors and report back about pricing." Doc. 941-1 at 5 (supplemental *James* log entry 39-S) (emphasis added). The government has not met its burden to prove by a preponderance of the evidence that these or any other statements in the supplemental *James* log were made by co-conspirators during and in furtherance of the conspiracy charged.

## CONCLUSION

The Court should deny the government's motion to supplement the *James* log and obtain reconsideration of the Court's prior rulings. Even if the Court considers the statements on the supplemental log—many of which the government could have but did not raise at the *James* hearing—the government has not proven they satisfy 801(d)(2)(E). At a minimum, if the Court is inclined to consider the proffered statements under 801(d)(2)(E), it should re-open the *James* hearing, require the government to elicit each statement through a witness, and allow the Defendants the opportunity to cross-examine. Only then would the Court have a record on which to determine whether the government has made a preliminary showing of admissibility under 801(d)(2)(E).

Respectfully submitted,

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
 markbyrne@byrnenixon.com

s/ Wendy W. Johnson
Wendy W. Johnson
RMP LLP
Attorney for Ric Blake
5519 Hackett St., Suite 300
Springdale, AR 72762
(479) 439-2705
wjohnson@rmp.law

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  February 3, 2022

*s/ Wendy W. Johnson*

Wendy W. Johnson