IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## UNITED STATES' MOTION FOR A CURATIVE INSTRUCTION

    The government respectfully moves the Court to provide the jury a curative instruction relating to the improper suggestion by defense counsel during cross-examination of government witness Carl Pepper that his prior invocation of his Fifth Amendment rights—in a declaration responding to written questions crafted, and posed to him, by the defendants—was tantamount to an admission of the criminal conduct baked into the questions themselves. The cross examination was so highly prejudicial and misleading that the Court should instruct the jurors that Mr. Pepper's invocation of his Fifth Amendment rights is not an admission of anything, that they are prohibited from drawing any inferences from Mr. Pepper's declaration or the question-and-answer

related to that declaration, and that they should disregard the question-and-answer. The Court should also permit the government to re-direct on the issue to reverse the unfair prejudice that was created by defense counsel's questions.

## Background

In September 2021, counsel for defendant Roberts subpoenaed Mr. Pepper to appear at the *James* hearing for this matter. Rather than attending the hearing, Mr. Pepper gave the defendants a declaration, asserting his Fifth Amendment privilege against self-incrimination for each of the questions posed. Defendant Roberts' questions were worded to ask, *e.g.*, "isn't it true that you [Mr. Pepper] provided false and misleading information" to the government? Mr. Pepper signed the declaration on September 7, 2021, when he did not have any protection from prosecution and still faced the possibility of a criminal charge. The defendants submitted the declaration during the *James* hearing on September 8, 2021.

During cross examination of Mr. Pepper, defendant Roberts' counsel repeatedly implied that by invoking his Fifth Amendment rights in the declaration not to answer leading questions asking whether he lied to the government,[1] Mr. Pepper had in fact lied to the government. Some examples include:

> Q Now, Mr. Pepper, let me ask you another question. Same declaration. Isn't it correct that you asserted your Fifth Amendment right against self-incrimination when asked the question under oath: Mr. Pepper, isn't it true that neither Brian Roberts or Tim Mulrenin ever asked or directed you to obtain pricing or price-related information from other suppliers of broiler chicken products or had any communications with

---

[1] The questions in the declaration were also worded in a way such that, when read aloud, they misled the jury into thinking Mr. Pepper was saying it was true that he lied to the government.

> representatives of suppliers of broiler chicken products for the purpose of coordinating or aligning pricing or strategy in any way? Do you see that question?
> A Yes, sir, I see it.
> Q And you, sir, asserted under oath your Fifth Amendment right of self-incrimination, correct?
> A I guess I did.
> Q Because a truthful answer would have gotten in trouble, right, because you did give false and misleading information to the government.
> A No, I did not.
> Q And that's why you asserted your Fifth Amendment rights, right?
> A I'm not sure why I didn't my Fifth Amendment right, but all I know -- I have not lied at all to the government, the DOJ . . . .
> Q Okay. And this is a question that was asked of you in this declaration. Mr. Pepper, isn't it true that you falsely told representatives of the Department of Justice that in 2014 and 2015 the suppliers of broiler chicken products had a common understanding to increase prices? And you took the Fifth Amendment to that question, didn't you?
> A Yes, I guess I did.
> Q Because you needed to because you had given them false information; isn't that right, sir?
> A No, it's not.
> Q Now, then what happens is you then are in a situation now where you've had the tears in the eyes, you're not going to get what you want. The summer of 2014 is passing. You have taken the Fifth Amendment to questions about whether you lied to the government about Brian Roberts, Mulrenin and any common understanding among any of these people, right, right?
> A Yes, sir. . . .
> Q Were you telling truth when you took the Fifth Amendment to those questions we went over or were you lying under oath in a declaration in federal courts?
> A I was not lying under oath. I guess bottom line is I signed it and I must not have paid attention to what I was signing.  . . . Like I told you over and over again, I have told the truth from day one whether you believe it or not.[2]

R. Tr. Mar. 3, 2022 at 262-67 (emphases added).

---

[2] For the convenience of the Court, the government cites a real-time transcript. To the extent the Court's recollection differs, the government defers to the Court's view.

The government immediately objected to the questioning on the grounds that Mr. Pepper's invocation of his Fifth Amendment rights is not an admission of anything:

> The first question is Mr. Pepper, isn't it true that you provided false and misleading information? And the only response that Mr. Pepper gives is I hereby declare that if I am required to testify as a witness, I will invoke my Fifth Amendment privilege, so there is not an answer to the question of whether he provided false or misleading information or in answer to any of the other questions as opposed to invoking just his Fifth Amendment privilege.

*See id.*; *id.* at 254:6-15.

## Argument

"The claim of [Fifth Amendment] privilege and its allowance is properly no part of the evidence submitted to the jury, and *no inferences whatever* can be legitimately drawn by them from the legal assertion by the witness of his constitutional right. The allowance of the privilege would be a mockery of justice, if *either party* is to be affected injuriously by it." *Johnson v. United States,* 318 U.S. 189, 196–97 (1943) (internal quotation omitted) (emphasis added).

The risk for a mockery of justice does not diminish merely because a witness, rather than a defendant, exercises it. In a criminal case, a person's invocation of the Fifth Amendment must never be construed to imply guilt, lies, admission—or anything at all. Indeed, the Tenth Circuit has explained a jury should never be told that invocation of a Fifth Amendment privilege is part of "assessing the credibility of a witness," because "[i]t is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." *United States v. Nunez*, 668 F.2d 1116, 1123 (10th

4

Cir. 1981) (quoting *Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970) (en banc)) (citing cases from D.C., Sixth, Fifth, and the First circuits).[3]

Counsel for defendant Roberts repeatedly made a "mockery of justice," *Johnson,* 318 U.S. at 197, by asking Mr. Pepper during cross examination whether, because he invoked his Fifth Amendment privilege in a declaration, he had lied to the government. In a particularly egregious example, as described above, counsel asked Mr. Pepper whether he was "telling truth when you took the Fifth Amendment to those questions we went over or were you lying under oath in a declaration in federal courts?" R. Tr. Mar. 3, 2022 at 267:5-7. To a juror, the questioning inappropriately suggested a connection between invoking the right and lying under oath. Counsel not only used cross-examination questions to argue that Mr. Pepper admitted to the truth of the questions he was asked in writing his declaration—he effectively argued to the jury that Mr. Pepper lied *because* he invoked the Fifth Amendment.

That line of questioning created "an atmosphere of guilt" and ought to be "condemned" for its "conscious effort to derive evidentiary value from unfavorable inferences arising from the claiming of the [Fifth Amendment] privilege." *United States v. Coppola*, 479 F.2d 1153, 1160 (10th Cir. 1973); *id*. at 1161 (condemnation is deserved regardless which side "comment[s] . . . on the witness' exercise of the privilege."); *id*. (a desire "to get evidentiary value from the questions and the claims of privilege" is "plainly

---

[3] The defendants told the Court that adverse inferences can be drawn in civil cases. R. Tr. Mar. 3, 2022 at 281:10-18. But all the cases the government found permitting such inferences have been specifically cabined to the civil situation. The government has not found any criminal cases in which an adverse inference was permitted.

invalid and prejudicial"). The prejudice against the government is so great that even an instruction immediately following such questioning may not fully cure the transgression. *Id*. at 1160–61. *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974) ("[A] claim of Fifth Amendment protection is likely to be regarded by the jury as high courtroom drama and a focus of ineradicable interest, when in fact its probative force is weak and it cannot be tested by cross-examination. We have little difficulty in concluding that the trial court was within its discretion in excluding matter of such dubious probative value and high potential for prejudice.").

The government therefore respectfully requests a curative instruction as follows when the jury reconvenes on Monday:[4]

> You heard last week that counsel for defendant Roberts asked several questions to Mr. Pepper related to whether he invoked his Fifth Amendment right in relation to a declaration he previously filed. The Constitution of the United States grants to witnesses the right to remain silent. A witness's invocation of his Fifth Amendment rights is not an admission of anything, and no inference of any kind may be drawn from the fact that a witness previously invoked that right. Therefore, Mr. Pepper's decision not to answer certain questions should not be taken as any type of admission that he lied to the government or did anything improper. You must not draw any inferences whatsoever from Mr. Pepper's decision to invoke his Fifth Amendment privilege in his declaration, and you are instructed to disregard the question-and-answer on cross examination relating that issue, other than the fact that he signed the declaration.[5]

---

[4] The government also intends to seek a written instruction later, specific to Mr. Pepper's testimony, to be included in the final jury instructions.
[5] *See, e.g.*, Tenth Circuit Pattern Jury Instructions No. 1.08 and 1.08.1 (2021 ed.) (updated Apr. 2, 2021).

6

Additionally, the Court should permit the government to ask rehabilitating questions of Mr. Pepper on re-direct to reverse the unfair prejudice that was created by defense counsel's questions. As the saying goes, it is impossible to un-ring a bell.

## Conclusion

For the foregoing reasons, the Court should grant the government's motion and read the instruction above to the jury.

Respectfully submitted this 4th day of March 2022.

By: /s/ Michael Koenig
Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov