# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. JAYSON JEFFREY PENN,**
**2. MIKELL REEVE FRIES,**
**3. SCOTT JAMES BRADY,**
**4. ROGER BORN AUSTIN,**
**5. TIMOTHY R. MULRENIN,**
**6. WILLIAM VINCENT KANTOLA,**
**7. JIMMIE LEE LITTLE,**
**8. WILLIAM WADE LOVETTE,**
**9. GARY BRIAN ROBERTS,**
**10. RICKIE PATTERSON BLAKE,**

      Defendants.

---

## UNITED STATES' NOTICE OF INTENT TO OFFER GX-9782

---

After Mr. Carl Pepper's testimony is complete, the government intends to offer GX-9782 into evidence as an un-sponsored exhibit to rebut Defendant Roberts' opening arguments and cross-examination, and to provide context to GX-1030 and GX-900.

GX-9782 establishes Defendant Roberts met with Defendant Fries and two other competitors on July 19, 2014, three weeks before Tyson's August 11, 2014 first-round bid submission to KFC. Though the Court refused the exhibit when the government offered it at the prior trial, *Penn 2021* Tr. 3949:20-21, GX-9782 is highly relevant at this trial to rebut Defendant Roberts' unfounded assertions that he could not have fixed

prices to KFC in 2014 because he submitted Tyson's first-round bid with a proposed price increase of $0.19/lb, prior to the blizzard of conspirator calls beginning on August 11, 2014. Defendant Roberts opened on this point. R. Tr. Day 3 at 29:5-8 (Tyson bid submitted "before all the things the government would have you speculate and conjecture about someone being a felon in a conspiracy."). Defendant Roberts further pressed this point during Mr. Pepper's cross examination. R. Tr. Day 7 at 245:10-17. From this information, Defendant Roberts wants the jury to infer that Defendant Roberts did not participate in fixing prices submitted to KFC in 2014.

GX-9782 rebuts this inference. GX-9782 is a meeting that occurred *after* Defendant Roberts knew that Tyson was planning a 19-cent price increase, but *before* the submission of any bids to KFC. This means that the meeting between competitors occurred at a time when Tyson's competitors were determining what to bid, much like the time period of August 11 through 19 in which the conspirator phone call blizzard occurred. GX-9782 is evidence that Defendant Roberts, via an in-person meeting, had an opportunity to share with Defendant Fries, Tommy Francis (Mar-Jac), and Mitch Mitchell (Case Farms) the magnitude of Tyson's planned increase.[1] Defendant Roberts' meeting with these three competitors is no less relevant than evidence showing he had inter-competitor phone calls with each of those three individuals. And the relevance of evidence of inter-competitor phone calls has not been seriously challenged by the

---

[1] Around the same time, Mr. Pepper testified that he communicated about Tyson's planned substantial price increase with a different–but overlapping–set of competitors (Claxton, George's, and Pilgrim's).

defendants, so GX-9782 should therefore be admitted on a similar basis.

GX-9782 is also relevant to explain information in GX-1030, which the Court admitted into evidence last week. GX-1030[2] contains notes dated August 29, 2014, that Mar-Jac executive Pete Martin wrote, when the competing chicken suppliers were in the midst of KFC negotiations, and the same day that Mr. Lewis of RSCS wrote to the suppliers asking for their final bids by the middle of the following week, GX-1160. Mr. Martin's notes include the following entries:

- Talked to Mitch. They are up .19 + holding.

- Tyson 1.0976 per Tommy.

- Claxton 1.1099 up 18.35.

GX-9782 connects the first names appearing in the notes to a full name: Mitch Mitchell of Case Farms and Tommy Francis of Mar-Jac.

In addition, information in GX-1030 reinforces the inference that Defendant Roberts shared Tyson's plan to increase KFC's price by 19 cents with the lunch attendees. GX-1030 shows that Mitch Mitchell was increasing Case Farms' price by 19 cents and holding there, and Claxton (represented at the lunch meeting by Defendant Fries) was increasing its price by nearly the same amount, 18.35. Taken together, GX-9782 and GX-1030 show that Tyson, Case Farms, Mar-Jac, and Claxton were among the conspiring companies that were together raising prices to KFC and holding strong against RSCS's efforts to negotiate lower prices from them.

---

[2] GX-1030 is admissible against all defendants, Fed.R.Evid. 801(d)(2)(E). *See* ECF No. 559 at 31 (ruling *James* Log Entry 136 is admissible against all defendants).

GX-9782 also corroborates the statement that Defendant Fries made to his Board of Directors on August 28, 2014, one day before Mr. Martin's notes. At the meeting, Defendant Fries stated that fast-food restaurants were willing to pay up to a 10-cent price increase, "but the industry [was] saying [they] want .20." GX-900 at 3. Defendant Fries' report that the industry is seeking a 20-cent price increase from the fast-food industry is substantially similar to the increases for Tyson ($0.19), Case Farms ($0.19 + holding), and Claxton ($0.1835).

The two e-mails appearing in GX-9782 are excluded from the hearsay definition. The top e-mail in GX-9782 is admissible against Defendant Roberts as a party admission, Fed.R.Evid. 801(d)(2)(A), because he wrote the e-mail. Terri Sherman wrote the bottom e-mail to Defendant Roberts. That e-mail states, as relevant here, "7/19 Lunch at the Ritz $200.00;" "Mike Fries, Tommy Frances [sic] & Mitch Mitchell;" and "(Who are they with & what was discussed?)." Ms. Sherman's questions are not hearsay because they have no truth value. *See United States v. Bhula*, 1:19-CR-01631 KWR, 2021 WL 4355600, at *12 (D.N.M. Sept. 24, 2021) ("[Q]uestions are not hearsay because they are not offered for the truth of the matter asserted."). To the extent the other two quoted phrases are considered Ms. Sherman's statements, Defendant Roberts' response constitutes his adoption of the statements, *see* Fed.R.Evid. 801(d)(2)(B), because his response confirms that he did in fact have a lunch on July 19, 2014, and that the attendees included Defendant Fries and Messrs. Mitchell and Francis. To be adoptive admissions, the statements must be offered against an opposing party (here, Defendant Roberts) and be statements that Defendant Roberts

"adopted or *believed to be true*." *Id.* (emphasis added). His e-mail makes clear that he believed Ms. Sherman's statements about the lunch occurring on July 19, 2014 to be true. Finally, since GX-9782 would be admissible against Defendant Roberts only, it would be subject to a limiting instruction. Fed.R.Evid. 105.

Defendants' arguments from the prior trial are meritless. Defendants introduced a red herring by noting Defendant Roberts' competitor meeting occurred immediately prior to a National Chicken Council ("NCC") meeting. *Penn 2021* Tr. at 3943-44. The meeting of these four competitors is relevant wholly apart from whether an NCC convention gave them the occasion to meet in person. If the Defendants wish to offer an alternative theory of the meeting, they are free to do so in closing argument.[3]

Dated: March 6, 2022                 Respectfully submitted,

/s/ Michael T. Koenig
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov
*Attorneys for the United States*

---

[3] Defendant Roberts baselessly asserted that the "*Bruton* issues" are "insurmountable in this document." *Penn 2021* Tr. at 3943. *Bruton*, of course, "holds that the sixth amendment rights of a defendant are violated if the defendant's nontestifying codefendant makes a confession that implicates the defendant and the Government introduces the confession into evidence at their joint trial." *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990). GX-9782 contains no confession. As such, *Bruton* has no bearing on its admissibility.