IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

| | |
|---|---|
| 1. | JAYSON JEFFREY PENN, |
| 2. | MIKELL REEVE FRIES, |
| 3. | SCOTT JAMES BRADY, |
| 4. | ROGER BORN AUSTIN, |
| 5. | TIMOTHY R. MULRENIN, |
| 6. | WILLIAM VINCENT KANTOLA, |
| 7. | JIMMIE LEE LITTLE, |
| 8. | WILLIAM WADE LOVETTE, |
| 9. | GARY BRIAN ROBERTS, and |
| 10. | RICKIE PATTERSON BLAKE, |

       Defendants.

Criminal Case No. 20-cr-00152-PAB

**DEFENDANTS' JOINT OPPOSITION TO UNITED STATES' MOTION FOR A
CURATIVE INSTRUCTION**

Carl Pepper testified that he "desperately" wanted a non-prosecution agreement. Tr. 250:21-251:1 (Mar. 3, 2022).[1] In that context, counsel for Mr. Robert's asked Mr. Pepper whether he had previously invoked the Fifth Amendment when asked if he lied to the government "because a truthful answer would have gotten [you] in trouble" or "because you had given [the government] false information." Tr. 262:20-23 (Mar. 3, 2022); Tr. 264:13-15 (Mar. 3, 2022). The government did not object contemporaneously to these questions or Mr. Pepper's answers. Nor did the government object when Mr. Pepper was asked whether he was "telling

---

[1] Defendants' transcript citations are to the unofficial transcript because they do not yet have an official, certified transcript. To the extent the Court's recollection differs from the draft transcript in any way, Defendants defer to the Court's recollection.

[the] truth … or … lying under oath" when he said, in a sworn declaration, that he would invoke

the Fifth Amendment. Tr. 267:5-18 (Mar. 3, 2022). Mr. Pepper's personal counsel, however,

rushed into the well of the courtroom in the middle of Mr. Pepper's examination and instructed

the government, in close proximity to the jury, that "you've got to fix [this]." Tr. 285:9-10 (Mar.

3, 2022). The government now claims the cross examination was prejudicial, misleading, and

requires a curative instruction. Doc. 1122. The government is wrong, both because it waived its

belated objection and because Defendants are entitled to impeach the credibility of Mr. Pepper—

a non-defendant granted immunity—by using his prior statement under penalty of perjury that it

might incriminate him if he were to answer specific questions about whether the lied in previous

interviews with the FBI on the very matters about which he has now chosen to testify. Indeed,

the government's motion displays a misunderstanding of Defendant's confrontation rights. No

curative instruction is warranted and the Defendants are entitled to have the jury consider this

information in assessing Mr. Pepper's testimony.

## ARGUMENT

### I.     The Government Waived Any Objection to The Line of Questioning About Which It Now Complains.

The government made only a handful of objections during the relevant portion of Mr.

Pepper's cross-examination, but none on the grounds it now asserts. First, when Mr. Robert's

counsel asked Mr. Pepper if he signed a declaration under oath asserting his Fifth Amendment

rights in response to a question about providing false and misleading information to the

government for the purpose of obtaining immunity, the government objected on the basis that (i)

the declaration was sealed; (ii) the question violated the court's prior order on referencing

Tyson's leniency application; and (iii) the question mischaracterized the declaration by

2

supposedly stating that the declaration provided a substantive response to the questions rather than an invocation of the Fifth Amendment. Tr. 253:12-16; 254:6-15; Tr. 255:6-17 (Mar. 3, 2022). The government also requested a copy of the declaration.[2] Tr. 255:13-17 (Mar. 3, 2022). The government was informed that the declaration was defense exhibit I-827. Tr. 255:18-19 (Mar. 3, 2022). The Court overruled the objections. Tr. 258:1 (Mar. 3, 2022).

Mr. Roberts' counsel again asked Mr. Pepper whether he invoked the Fifth Amendment in response to a specific question listed on the declaration. Tr. 259:9-16 (Mar. 3, 2022). The government this time objected on the basis that (i) the question was misleading because it implied that Mr. Pepper took the Fifth only to some specific questions rather than to all questions; (ii) the question was irrelevant, without providing any specificity as to why it was irrelevant; and (iii) the question was cumulative because Mr. Pepper already testified "extensively" that he knew he could be prosecuted. Tr. 259:22-260:16 (Mar. 3, 2022). The Court overruled these objections as well, finding that the questions were not misleading and noting that the government was free to ask him about this subject on redirect. Tr. 260:17-261:1 (Mar. 3, 2022). The government's only other objection to this line of questioning was to defense

---

[2] Each of the government's objections was without merit. The declaration had not been filed under seal. The brief reference to "leniency" in the quoted declaration—asking whether Mr. Pepper lied "for the purpose of obtaining immunity from criminal prosecution, leniency or other preferential treatment"—was not a reference to a corporate leniency application, nor could it possibly have been understood by the jury in that manner, and therefore did not violate the Court's order prohibiting references to corporate leniency applications. The government was also wrong that any cross examination question stated the declaration contained a substantive answer to the question about whether Mr. Pepper lied. Counsel for Mr. Pepper accurately quoted the declaration in his question.

counsel's characterization of the declaration as having been "filed" by Mr. Pepper.[3] Tr. 263:7-8 (Mar. 3, 2022). The Court overruled that objection too. Tr. 263:9 (Mar. 3, 2022).

For much of the relevant cross examination, the government failed to make any objections. The government, for instance, failed to object when Mr. Robert's counsel asked Mr. Pepper whether he had invoked his Fifth Amendment right "because a truthful answer would have gotten [you] in trouble" or "because you had given [the government] false information." Tr. 262:20-23 (Mar. 3, 2022); Tr. 264:13-15 (Mar. 3, 2022). Nor did the government object when Mr. Pepper was asked whether he was "telling [the] truth … or … lying under oath" when he said he would invoke the Fifth Amendment in his sworn declaration. Tr. 267:5-18 (Mar. 3, 2022). The government's only contemporaneous objection to the entire exchange quoted in its motion (Doc. 1122 at 2-3 (citing Tr. 262-67 (Mar. 3, 2022)) was that Mr. Pepper could not fairly be characterized as having "filed" his declaration, an objection the Court overruled. Tr. 263:7-9 (Mar. 3, 2022). Not once did the government object to the line of questions on the basis that the jury should not be permitted to draw inferences from Mr. Pepper's prior sworn responses. The government's failure to object to these questions and answers on the grounds it belatedly asserts constitutes a waiver of the objections. *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289 (10th Cir. 2000) (failure to raise a specific objection until after the relevant examination waives the objection and party's "right to later challenge this evidence"); *United States v. Ivy*, 83 F.3d 1266, 1287 (10th Cir. 1996) (failure to object contemporaneously to testimony constitutes a

---

[3] While the docket does not reflect that the declaration was actually filed on the docket, the point of this line of questioning was to elicit Mr. Pepper's understanding that the declaration was to be used in a criminal case in federal court. Of that fact there can be no doubt. The first page of the declaration was the caption for this case and the Court admitted the declaration into evidence at the *James* Hearing. *James* Hearing Tr. Vol. 2 283:12-24 (Sept. 8, 2021).

waiver of the objection). The Court should deny the government's motion on this basis alone.

## II.     The Jury May Consider the Testimony Elicited During Mr. Pepper's Cross-Examination.

A valid invocation of the Fifth Amendment requires the invoking party to "face[] a realistic threat of self-incrimination" if he were to answer the question truthfully. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984); *see United States v. Mandujano*, 425 U.S. 564, 572 (1976) (the Fifth Amendment cannot be "invoked simply to protect the witness' interest in privacy"). Accordingly, a witness's invocation of the Fifth Amendment is relevant to the subject matter about which he is asked. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923) ("Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character."). And it is well settled in many contexts that the factfinder may infer that a witness's response to a question to which he invoked the Fifth Amendment would have incriminated him. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976) (discussing civil inferences).[4]

In the criminal context, those same considerations are present, and the invocation of the Fifth Amendment is no less relevant. Yet other principles can and often do trump relevance to keep the Fifth Amendment issue away from the jury, namely that it is a *defendant* asserting the right against compelled testimony and the Constitution's protections against improper convictions for the crime being prosecuted. *See Baxter*, 425 U.S. at 319 ("[T]he Fifth Amendment … has little to do with a fair trial and derogates rather than improves the chances for accurate decisions. Thus, aside from the privilege against compelled self-incrimination, the Court

---

[4] *See* Michael Tubach, Anna Pletcher & Trisha Parikh, *When Silence is Not Golden: Real World Implications of Non-Parties "Taking the Fifth" in Civil Proceedings*, Vol. 35 No. 2 Antitrust L.J. 82 (2021) (collecting and discussing cases).

has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause."); *Griffin v. California*, 380 U.S. 609, 613-14 (1965) (prosecutor's comment on criminal defendant's refusal to testify "is a remnant of the inquisitorial system of criminal justice, which the Fifth Amendment outlaws" (quotation and citation omitted)).

Here, the specific Fifth Amendment issue has nothing to do with a defendant's right against compelled testimony, or even the crime being prosecuted. Rather, the issue is whether Defendants can impeach the credibility of a non-defendant witness by examining his prior statements, which he made under penalty of perjury, that it would incriminate him if he were to answer specific questions about whether he lied in interviews with the FBI on the very matters about which he has now chosen to testify. Although Defendants are aware of no cases that deal with this specific scenario—none of the government's cases are even remotely related to this factual situation, as they address the invocation of the Fifth Amendment by criminal defendants or by witnesses who invoke their rights on the stand—Defendants have the right to put before the jury for impeachment purposes the challenged exchange with Mr. Pepper. *Hemphill v. New York*, 142 S. Ct. 681, 690-91 (2022) (only exceptions to confrontation requirements are those established at the time of the founding; the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." (quotation omitted)).

When subpoenaed by defense counsel to appear at the *James* hearing, Mr. Pepper stated in a sworn declaration that if called to testify, he would invoke his Fifth Amendment rights to specific questions, including questions about whether he provided false or misleading

information to the government.[5] Mr. Pepper's statement that he would invoke the Fifth

Amendment, under penalty of perjury and in response to a specific set of questions about his

truthfulness on the topics of his testimony, is a relevant fact the Defendants are entitled to have

the jury consider when assessing Mr. Pepper's credibility, particularly since Mr. Pepper

repeatedly testified that he has never lied to the government. Tr. 265:3-21 (Mar. 3, 2022); Tr.

262:24-263:2 (Mar. 3, 2022); Tr. 266:21-267:4 (Mar. 3, 2022). The fact that he claims he cannot

remember the content of his own sworn declaration (Tr. 259:1-8 (Mar. 3, 2022); Tr. 262:24-

263:2 (Mar. 3, 2022); Tr. 267:5-18 (Mar. 3, 2022)) only compounds the relevancy. All of his

testimony is subject to impeachment on the basis of his prior sworn declaration.

Mr. Pepper is not a criminal defendant in this case, nor is he subject to prosecution for the

underlying conduct charged in the indictment, and the reference to the Fifth Amendment will not

result in an improper conviction for the offense being prosecuted. In fact, the questions Mr.

Pepper faced on cross-examination did not relate to his criminal liability for the conduct at issue

in this case, but rather related exclusively to his veracity, the reliability of the "information" he

purportedly shared with the government, and the weight of his testimony against Defendants.

The jury may consider that evidence in assessing Mr. Pepper's truthfulness. Indeed, a witness

may be impeached with prior invocations of the Fifth Amendment when those invocations tend

to undermine the credibility of the witness's testimony in the case at hand. *Jenkins v. Anderson*,

447 U.S. 231, 236-37 (1980). The Supreme Court has "explicitly rejected the contention that the

---

[5] As a technical matter, Mr. Pepper never actually invoked his Fifth Amendment rights in this
case. Rather, Mr. Pepper swore under oath that he would assert his Fifth Amendment privilege if
he was required to testify as a witness at the *James* hearing and was asked the questions set forth
in the declaration.

possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth

Amendment rights." *Id*. (citing *Raffel v. United States*, 271 U.S. 494 (1926)) (credibility of

testimony impeached with prior silence since witness was a non-defendant and the Fifth

Amendment privilege did not relate to the crime being prosecuted); *Harris v. City of Chicago*,

266 F.3d 750, 754 (7th Cir. 2001) (witness's decision to testify to matters about which he

previously invoked his Fifth Amendment rights subjects him to impeachment with his prior

silence on those matters); *United States v. Clark*, 988 F.2d 1459, 1464 (6th Cir. 1993)

(witnesses' testimony could be impeached based on invocation of the Fifth Amendment).

Any inferences the jury *could* draw (it need not draw any, but the choice is its own) are

not the type prohibited by the Fifth Amendment. *See, e.g.*, *United States v. Lacouture*, 495 F.2d

1237, 1240 (5th Cir. 1974) (jury not permitted to draw inferences from witness's assertion of

Fifth Amendment privilege where "[t]he two most likely inferences to be drawn from [witness's]

claim of privilege" are that she was involved in the criminal activity along with the defendant, or

that she alone was guilty of the crime at issue); *see also Namet v. United States*, 373 U.S. 179,

186-87 (1963) (the principal reasons for refusing to permit inferences from a witness's assertion

of Fifth Amendment privilege are (i) concerns that the government will make "a conscious and

flagrant attempt to build its case out of inferences arising from use of the testimonial privilege"

and (ii) inferences from a witness's refusal to answer will add "critical weight to the

prosecution's case in a form not subject to cross-examination, and thus unfairly prejudice[] the

defendant"). Defendants are entitled to have the jury consider this relevant information. *See*

*Baxter*, 425 U.S. at 319 ("[I]n proper circumstances silence in the face of accusation is a relevant

fact not barred from evidence by the Due Process Clause.").

Defendants' rights to impeach Mr. Pepper's credibility are particularly strong here since he is one of only two purported "conspiracy insiders" claiming to have personal knowledge of the conduct at issue in this case. *See* Tr. 131:23-132:5 (Feb. 23, 2022). The Sixth Amendment "guarantees a criminal defendant the right to cross-examine witnesses against him," and "[w]here the witness which the defendant seeks to cross-examine is the chief Government witness, providing the crucial link in the prosecution's case, the importance of full cross-examination is necessarily increased." *United States v. Nunez*, 668 F.2d 1116, 1121-22 (10th Cir. 1981) (quoting *Davis v. Alaska*, 415 U.S. 308, 315, 317-18 (1974)); *see also United States v. Robinson*, 583 F.3d 1265, 1274-75 (10th Cir. 2009) (same). Accordingly, if considerations regarding the witness's invocation of his Fifth Amendment privilege "preclude[] inquiry into the details of his direct testimony," defendants face "a substantial danger of prejudice because the defense is deprived of the right to test [its] truth." *Nunez*, 668 F.2d at 1122 (quotation omitted). The Court has already acknowledged this principle in its ruling permitting Defendants to cross-examine government witness Robbie Bryant regarding the fact that lied repeatedly during his numerous meetings with the government. Trial Preparation Conference Tr. 131:2-132:10 (Feb. 10, 2022).

While the government invokes general Fifth Amendment principles, they have little relevance to the specific issue here: whether a criminal defendant may impeach a key government witness with his prior sworn statement that answering whether he lied to the FBI would incriminate him, and that statement relates directly to the witness's motivation to testify for the government. None of the cases invoked by the government address this situation—all involved a non-testifying criminal defendant or a testifying witness who affirmatively invoked

the Fifth Amendment during in-court examination. *See Johnson v. United States*, 318 U.S. 189, 196 (1943) ("when the accused fails to take the stand … no inferences whatever can be legitimately drawn by [the jury] from the legal assertion by the witness of his constitutional right" (quotation omitted)); *Nunez*, 668 F.2d at 1123 (testifying witness's invocation of the Fifth Amendment in response to a question that could subject him to criminal liability in pending state case not relevant to witness's credibility); *United States v. Coppola*, 479 F.2d 1153, 1160 (10th Cir. 1973) (prosecution called witness knowing he would invoke his Fifth Amendment rights and proceeded to ask twenty questions to which the witness invoked his Fifth Amendment rights in order "to give rise to an atmosphere of guilt"); *Lacouture*, 495 F.2d at 1240 (no error in refusing to permit witness to be placed on the stand for the jury to hear her invoke her Fifth Amendment rights).

These cases stand for the unremarkable propositions that a jury may not infer (i) a criminal defendant's guilt from his refusal to testify at trial, *see Johnson*, 318 U.S. at 196; or (ii) a testifying witnesses' guilt for the crime being prosecuted based on his refusal to answer questions at trial. *See Coppola*, 479 F.2d at 1160; *Lacouture*, 495 F.2d at 1240. And *Nunez* demonstrates that a testifying witness's invocation of the Fifth Amendment when questioned about conduct *unrelated* to the case at bar does not, as a general matter, bear on his credibility. *See* 668 F.2d at 1120, 1123.

\* \* \* \* \*

Because Defendants are entitled to impeach Mr. Pepper with his prior silence on matters about which he has now chosen to testify, *see, e.g.*, *Jenkins*, 447 U.S. at 236-37, the government's proposed curative instruction is entirely unwarranted. Indeed, the only support the

government cites for its proposed instruction is the Tenth Circuit Pattern Jury Instructions on

credibility of witnesses and non-testifying defendants. *See* Doc. 1122 at No. 6 (citing Tenth

Circuit Pattern Jury Instruction Nos. 1.08 and 1.08.1 (2021 ed.) (updated Apr. 2, 2021)). Those

instructions simply inform the jury that no inference is to be drawn from the defendant's decision

not to testify in his own defense. *See* Tenth Circuit Pattern Jury Instruction Nos. 1.08 and 1.08.1

(2021 ed.) (updated Apr. 2, 2021). They have no application to a situation in which a witness is

impeached with his prior invocation of the Fifth Amendment when confronted with questions

about his *veracity* regarding the very issues to which he testified in court. The government's

proposed curative instruction should be rejected on this additional basis.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's Motion for a Curative

Instruction.

Dated:  March 6, 2022                          Respectfully submitted,

*s/ James P. McLoughlin, Jr.*                  *s/ Michael F. Tubach*
James P. McLoughlin, Jr.                       Michael F. Tubach
MOORE & VAN ALLEN PLLC                         O'MELVENY & MYERS LLP
Attorney for William Wade Lovette              Attorney for Jayson Jeffrey Penn
100 North Tryon Street, Suite 4700             Two Embarcadero Center, 28th Floor
Charlotte, NC 28202                            San Francisco, California 94111-3823
(704) 331-3622                                 (415) 984-8700
jimmcloughlin@mvalaw.com                       mtubach@omm.com


*s/ Richard K. Kornfeld*                       *s/ Michael S. Feldberg*
Richard K. Kornfeld                            Michael S. Feldberg
RECHT KORNFELD, P.C.                            REICHMAN JORGENSEN LEHMAN &
Attorney for Mikell Reeve Fries                FELDBERG LLP
1600 Stout Street, Suite 1400                  Attorney for Roger Born Austin
Denver, CO 80202                               750 Third Avenue, Suite 2400
(303) 573-1900                                 New York, NY 10017
                                               (212) 381-1965
rick@rklawpc.com                               mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP-DC
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach