1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 20-CR-00152-PAB
3
   UNITED STATES OF AMERICA,
4
        Plaintiff,
5
   vs.
6
   JAYSON JEFFREY PENN,
7  MIKELL REEVE FRIES,
   SCOTT JAMES BRADY,
8  ROGER BORN AUSTIN,
   TIMOTHY R. MULRENIN,
9  WILLIAM VINCENT KANTOLA,
   JIMMIE LEE LITTLE,
10 WILLIAM WADE LOVETTE,
   GAR BRIAN ROBERTS,
11 RICKIE PATTERSON BLAKE,

12      Defendants

13 _____

                    REPORTER'S TRANSCRIPT
14                   Trial to Jury, Vol. 21

15 _____

16          Proceedings before the HONORABLE PHILIP A. BRIMMER,

17 Chief Judge, United States District Court for the District of

18 Colorado, commencing at 8:01 a.m., on the 24th day of November,

19 2021, in Courtroom A201, United States Courthouse, Denver,

20 Colorado.

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
     Produced via Computer by Janet M. Coppock, 901 19th Street,
25       Room A257, Denver, Colorado, 80294, (303) 335-2106

```
 1                        APPEARANCES

 2          Michael Koenig, Carolyn Sweeney, Heather Call and Paul

 3    Torzilli, Laura Butte and Jillian Rogowski, U.S. Department of

 4    Justice, 450 Fifth Street N.W., Washington, DC 20530, appearing

 5    for Plaintiff.

 6          Anna Tryon Pletcher and Michael Tubach of

 7    O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,

 8    San Francisco, CA 94111-3823;

 9          Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street

10    N.W., Washington, DC 20006, appearing for Defendant Penn.

11          David Beller, Richard Kornfeld and Kelly Page of

12    Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,

13    CO 80202, appearing for Defendant Fries.

14          Bryan B. Lavine of Troutman Pepper Hamilton Sanders,

15    LLP, 600 Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;

16           Laura Kuykendall and Megan Rahman of Troutman Pepper

17    Hamilton Sanders, LLP,  1001 Haxall Point, Richmond VA 23219,

18    appearing for Defendant Brady.

19          Michael Felberg of Reichman, Jorgensen, Lehman,

20    Feldberg, LLP, 750 Third Avenue, 24th Floor, New York, NY

21    10017;

22

23

24

25
```

```
 1                  APPEARANCES (Continued)

 2            Laura F. Carwile of Reichman, Jorgensen, Lehman,

 3      Feldberg, LLP, 100 Marine Parkway, Suite 300, Redwood Shores,

 4      CA 94065; appearing for Defendant Austin.

 5            Elizabeth B. Prewitt of Latham & Watkins, LLP,

 6      555 11th Street, N.W., Suite 1000, Washington, DC 20004;

 7            Marci Gilligan LaBranche of Stimson, Stancil,

 8      LaBranche, Hubbard, LLC, 1652 North Downing Street, Denver, CO

 9      80218, appearing for Defendant Mulrenin.

10            James A. Backstrom, Counselor at Law, 1515 Market

11      Street, Suite 1200, Philadelphia, PA 19102-1932;

12            Roxann E. Henry, Attorney at Law, 5410 Wilson Lane,

13      Bethesda, MD 20814, appearing for Defendant Kantola.

14            Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth

15      Street, Suite 1100, Los Angeles, CA 90017;

16            Dennis J. Canty, Canty Law Corporation,

17      1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,

18      appearing for Defendant Little.

19            John Anderson Fagg, Jr. and James McLoughlin of

20      Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,

21      Charlotte, NC 28202-4003, appearing for Defendant Lovette.

22

23

24

25
```

1    APPEARANCES (Continued)

2    Craig Allen Gillen and Anthony Charles Lake of

3    Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,

4    Atlanta, GA 30339;

5    Richard L. Tegtmeier of Sherman & Howard, LLC,

6    633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing

7    for Defendant Roberts.

8    Barry J. Pollack of Robbins, Russell, Englert, Orseck

9    & Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington,

10   DC 20006;

11   Wendy Johnson and Christopher Plumlee of  RMP, LLP,

12   5519 Hackett Road, Suite 300, Springdale, AR 72762, appearing

13   for the Defendant Blake.

14

15                          PROCEEDINGS

16       THE COURT:  We are back on the record in 20-CR-152.

17   The jury is not present.  Defendants are present and Mr. Koenig

18   and Ms. Call are present.  And we have a VTC connection as well

19   for the other members of the government's team.

20       So we are taking and considering before the jury comes

21   back at 8:30 objections that were made at the point in time

22   that the government started to offer the summary exhibits into

23   evidence.  We've got two, I would say, two general issues.  One

24   is the appropriate instruction that should be given.  A motion

25   was tendered on behalf of the defendants to that effect.  We

1    also have some objections that were lodged as well,

2    confrontation clause and other issues.

3            So why don't we, first of all, have additional

4    argument as to objections other than to the appropriate

5    limiting instruction.  We'll then get the response of the

6    government and I will rule on those issues.  Then we will

7    circle back to the limiting instruction, all right?

8            Mr. Koenig?

9            *MR. KOENIG:*  Yes.  Just as a preliminary matter, two

10   things.  First, Ms. Sweeney and Mr. Torzilli are appearing by

11   VTC which Your Honor noted.  I wanted to just make it clear

12   that they under the CDC guidelines -- we have looked at them.

13   They don't actually -- they actually passed in order to be

14   here, but are just staying by VTC out of an abundance of

15   caution.

16           The other thing is just with all the travel and so

17   forth, I feel like the conversation about government symptoms

18   and stuff has been very one-sided.  I assume, I trust that the

19   defense teams would also report any, you know, symptoms or

20   things with their staff as well, especially after the holiday

21   travel, so I just wanted to confirm that.

22           *THE COURT:*  Yeah, I am sure that both sides will.

23   It's a two-way street and it affects everyone, which is why we

24   were talking about it in reference to the government's team.

25           Mr. McLoughlin?

1              *MR. McLOUGHLIN:*  Good morning, Your Honor.

2         Your Honor, first as your request we'll address the

3    issue of the admissibility of the documents based on the

4    testimony that we have.  So we start with I think viewing

5    the -- a summary exhibit along a spectrum where let's call it

6    on the far left you have the pure 1006, which is, for example,

7    a chart of every phone call between two individual defendants,

8    the pure summary of voluminous evidence, no editorial

9    decisioning.

10        On the opposite end of the spectrum, one has the

11   highly selective summary which, for example, takes all of those

12   telephone calls and picks three or four on a particular day and

13   connects those to other pieces of evidence to declare to the

14   jury they are relevant, which is to say there is argument

15   inherent in the selection and it may be, of course, in favor of

16   the parties preparing it.  So one has issues of selectivity.

17   One has issues of bias.  One has issues of accuracy.

18        When you come along those spectrums, there is a

19   remarkable consensus among the circuits.  And we have cited

20   Your Honor, and can discuss the Sixth Circuit in *Paulino*.  We

21   have *Baker* from the Ninth Circuit.  We have *Johnson* from the

22   Fourth Circuit which cites extensively to the Second Circuit's

23   treatment.  We have the Third Circuit's treatment and we have

24   the Eighth Circuit's in Washington and we have also the Eighth

25   Circuit's pattern jury instructions.

1          And what they say is two things.  There is a risk of

2    significant prejudice in a summary exhibit because the jury may

3    give outsized weight to it because it is quote, evidence.  And

4    here, respectfully, as Your Honor knows, it is the position of

5    the defendants that the summary charts here are far toward the

6    spectrum of the 611(a) where that selection is based on the

7    government's own view of the evidence which they are perfectly

8    entitled to do.  The question is how that should be treated.

9          So if one looks toward the 611(a) spectrum on all of

10   these cases, the courts say there is two things that are

11   necessary.  The first is robust cross-examination to permit the

12   defendants to demonstrate to the jury the bias or selectivity

13   or accuracy of the exhibits.  And so if you read *Paulino*, if

14   you read *Johnson*, if you read these cases, the admissibility

15   decision relies heavily on the ability of the defendants and

16   the fact that the defendants did cross-examine heavily and had

17   the opportunity to look at the person who prepared the chart on

18   the stand, have the jury look at them and explore selectivity,

19   bias and all that.

20         Now, the case that is most -- probably most

21   interesting on this issue in addition to *Baker* is

22   *Grajales-Montoya* out of the Eighth Circuit in which the Court

23   ruled that the summary charts were not admissible because

24   cross-examination was not possible because it became clear that

25   the summary exhibits were prepared by a lawyer and they restate

1    and distill other properly admitted evidence.  As a result,

2    there was no meaningful opportunity to cross-examine.

3         If we look at the record from yesterday, particularly

4    Ms. Prewitt's cross-examination, there are at least seven

5    particular points.  The first is Ms. Evans testified that it

6    was the trial attorneys who actually prepared the charts.  Then

7    on questioning she said that the decisions that were made were

8    from the instruction of the lawyers.

9         Now, what's interesting there is Your Honor then

10   sustained an objection as to who instructed her and who was

11   making the decisions, apparently on a concern of an objection

12   from the government with respect to privilege.  What that

13   demonstrates here is exactly one of the key conflicts which is

14   that the government has asserted deliberative process which

15   forestalls cross-examination into selectivity, bias and other

16   issues.

17        Then what we get in her cross-examination is she was

18   asked specifically, "Well, you mentioned the agents in the

19   prosecution, but your instructions came from the trial

20   attorneys when it comes to preparing these charts."  She said,

21   "That's right."  That is relevant because what it means is that

22   the issue of an inability to cross-examine is incurable in this

23   case because the record so overwhelmingly demonstrates that it

24   was the lawyers who made all of the decisions and the

25   government has, of course, asserted privilege.  We cannot

1    cross-examine them.

2         So that puts it squarely within *Grajales-Montoya* and

3    we would respectfully suggest that it also puts it squarely in

4    *Paulino* where -- and *Johnson*.  *Johnson* is another one that is

5    particularly good where the Court said in practice a number of

6    courts considering the issue of summary charts admissibility

7    have developed safeguards to minimize possible prejudice to a

8    defendant by, No. 1, ensuring that the individual who prepared

9    the chart as well as the evidence upon which the preparer

10   relied was available for cross-examination by the defendant to

11   test the competence of the evidence as presented in the summary

12   chart.  Second, of course, is properly instructing the jury.

13        So where we are today is it was impossible to

14   cross-examine Ms. Evans because, of course, she had no

15   information.  And Your Honor to prevent going down rabbit holes

16   sustained objections on the issue about decisions made with

17   respect to the chart again because she just did not know.

18        What is particularly relevant here and goes back to

19   the *Grajales-Montoya* situation is we don't have a situation

20   where this was an accident.  Ms. Evans testified that she was

21   plucked out of the antitrust office in San Francisco two weeks

22   ago, no knowledge of the investigation.  She was not given any

23   knowledge of the investigation and brought here apparently for

24   the singular purpose of cite checking charts, not preparing

25   them, cite checking them in the most limited way.  Do the words

1    appear on the page?  Is the phone number in the phone bill?

2           And then having come out of a bubble, she was

3    essentially firewalled with respect to the investigation, spent

4    her 100-plus hours cite checking, and then was put on the stand

5    as a preparer.  This was a tactical decision the government

6    made.  It was perfectly entitled to make it.  This was a

7    tactical decision that the government thought was in its best

8    tactical interest.  Again, that is their decision to make.

9           However, those tactical decisions have consequences

10   under the uniform consensus of the circuit courts as to the

11   prejudice to the defendants and the protections to which they

12   are entitled.  And we would respectfully request -- and again I

13   will stop now and then discuss the limiting instructions in the

14   next round -- we respectfully request that at this point given

15   these facts and the cases, the most the government is entitled

16   to here is to treat these exhibits as demonstratives which do

17   not go back to the jury, and we'll deal with an instruction now

18   and when the case goes to the jury as to how the jury should

19   treat these.

20           Thank you, Your Honor.

21           THE COURT:  Thank you, Mr. McLoughlin.

22           Additional objections?

23           Mr. Beller?

24           MR. BELLER:  Thank you, Your Honor.

25           To be clear, are we at this point only discussing the

1    objection that was raised by Mr. McLoughlin yesterday as

2    opposed to the confrontation objection as well?

3          THE COURT:  No.  As a matter of fact, the motion, I

4    think it was a motion that was submitted about the limiting

5    instruction we are putting aside for one moment.  So we are

6    taking any and all objections including the confrontation one

7    as you gave a preview yesterday.

8          MR. BELLER:  Understood, Your Honor.

9          So what I won't do is belabor the point and make the

10   same arguments that I had made yesterday, but I do want to

11   supplement with just a couple of things.  Your Honor, in

12   addition to the cases that were cited by Mr. McLoughlin, I

13   believe in the motion that was filed there is reference to the

14   *Bray* case, *U.S. v. Bray*, B-R-A-Y, 139 F.3d 1104.  Your Honor,

15   that's a Sixth Circuit case from 1998.  That was, of course,

16   decided prior to *Bullcoming*, *Melendez-Diaz* and *Crawford*.

17         Your Honor, I think that case is illustrative for a

18   couple of different reasons.  But as to the preparer argument,

19   the *Bray* matter talks about not just a preparer in the

20   administrative role that apparently Ms. Evans served, but

21   specifically it says that a summary document must be properly

22   introduced before it may be admitted into evidence.  In order

23   to lay a proper foundation for a summary, the proponent should

24   present the testimony of the witness who supervised its

25   preparation.

1          Now, that word "supervised" is not something that is

2    mentioned specifically in the *Renteria* case, but the *Renteria*

3    case does not actually define what a preparer is.  And I

4    believe that the *Bray* case does.  In anticipating an argument

5    from the government, and that is that this was previously ruled

6    on by the Court in terms of the admissibility of these

7    particular exhibits and this argument being made late in the

8    hour, I would notice for the Court that the original order from

9    the Court anticipated or suggested that defendants would have

10   the opportunity to cross-examine the agent.

11         Now, if I can, I guess, make some assumptions, and

12   that is that the agents were the ones at the time the order was

13   written, that the agents were the ones who actually prepared

14   these particular summary documents.  When the government

15   noticed us that it was going to be Ms. Evans who would be put

16   on the stand as the sponsoring witness or the "preparer," in

17   going through all of the different notes that the government

18   provided to the defense, nowhere did it indicate that Ms. Evans

19   really was an administrator.

20         While the government has articulated to the Court many

21   times that the defense has been in possession of these

22   particular summary charts and some iteration for a matter of

23   weeks if not months, what was not known until yesterday's

24   testimony is that Ms. Evans herself actually was put on the

25   case two weeks ago.  That's not something that was included in

1    the notes.

2          The primary, I guess, structure of the questions of

3    the government were, "Did you include this?  Did you add this?"

4    Well, we know based on her having been put on the case two

5    weeks ago and the summary exhibits having given to the defense

6    several weeks ago, if not months ago, that Ms. Evans was not,

7    in fact, the preparer and certainly was not the person

8    supervising.

9          This is not something that can now be cured by putting

10   the agent on the stand because we also know, Your Honor, that

11   the agent is not the one who prepared these documents as we

12   originally had surmised several weeks ago, but instead it was

13   the lawyers who did so.  And so under the *Bray* matter it's the

14   lawyers who also supervised.

15         Your Honor, I do believe that these are testimonial

16   based on *Davis v. Washington*, based on the *Bullcoming* decision.

17   These are undoubtedly testimonial.  These are not traditional

18   business records that have been analyzed by other courts

19   regarding the Sixth Amendment confrontation rights and 1006,

20   but rather these are, in fact, statements in and of themselves,

21   testimonial statements, and therefore the defense does have a

22   confrontation right that can only be satisfied by putting one

23   of the government lawyers who supervised and/or prepared these

24   documents on the stand.

25         We are not suggesting that the government would

1   actually do that or could do that for a myriad of different

2   reasons, but it is a basis to not admit these into evidence

3   thank you.

4           THE COURT:  Thank you very much, Mr. Beller.

5           Additional argument?

6           Ms. Johnson, go ahead.

7           MS. JOHNSON:  Real briefly, Your Honor.

8           Certainly, Your Honor, not to belabor any of the

9   points made by my colleagues, Mr. Blake does, in fact, join all

10  of those arguments.  But we just wanted to specifically point

11  out yesterday that Mr. Blake's attempts to effectively

12  cross-examine Ms. Evans were thwarted by the government's

13  objections.  And certainly we respect that the Court sustained

14  those objections, but the inability to effectively

15  cross-examine and specific to the point the actual dates and

16  times of the summary charts without being able to point out the

17  gaps or the misleading bias within those charts we feel has

18  thwarted had are attempts of effective cross-examination along

19  the lines of the case law that my colleagues have cited.  And

20  we feel like these are improper summary charts that should not

21  be admissible and be sent back to the jury.

22          Thank you, Your Honor.

23          THE COURT:  Thank you, Ms. Johnson.  Just so we are

24  clear, everyone is joining so we don't have to repeat anything.

25  We will hear from Ms. Pletcher in just a minute.

1              Ms. Pletcher, go ahead.

2              MS. PLETCHER:  Thank you, Your Honor.  To follow up on

3    Mr. Beller's point with respect to the testimonial nature of

4    the summary exhibits, I pointed the Court earlier in the trial

5    to *United States v. Cameron*, an Eighth Circuit case which I

6    think given the testimony of the witness yesterday as to the

7    preparers of the charts, the fact that it was the attorneys who

8    prepared the charts, clearly it was done for the purpose of

9    making a statement as to the character and the nature of the

10   evidence.  And the *Cameron* case stands for the point that

11   although the individual components upon which a summary chart

12   is based may in themselves not be testimonial, when excerpts

13   are selected and put together into a summary chart,

14   particularly in a way that advances law enforcement interests,

15   that chart itself becomes testimonial.  And I believe that that

16   proposition is in effect here as well.

17             And finally in terms -- one more point.  Let me make

18   sure that I cite to the -- I had put the citation to the

19   *Cameron* case in the record.  It's a First Circuit case,

20   699 F.3d 621 from 2012.

21             And just one more point.  The fact that the government

22   did object to Ms. Evans' testimony with respect to the

23   deliberative process or work product also confirms the identity

24   of the preparer of the chart was the government, which again

25   also feeds into this argument that the statements themselves

1    are testimonial.

2            Thank you.

3            *THE COURT:*  Thank you, Ms. Pletcher.

4            Other arguments?

5            All right.  Response by the United States?

6            *MS. CALL:*  I will try to do some reverse chronological

7    ordering.  I am happy Ms. Pletcher brought up the -- or I guess

8    supposition based on the testimony that the charts were created

9    by the attorneys, which I don't believe was established in

10   Ms. Evans' testimony in the first place, but one thing I want

11   to note about the state of the law is there is plenty of cases

12   in other circuits where the sponsoring witnesses for summaries

13   of this kind are paralegals, are agents who weren't assigned to

14   the case.

15           And I have cites here and I will go through them in a

16   moment.  But the first I will note is one that may be familiar

17   to attorneys in this room because it is a criminal antitrust

18   case involving bid rigging.  It may be specifically familiar to

19   Ms. Pletcher because she was actually a prosecutor at the time

20   and I believe put on or was involved in putting on the

21   paralegal to testify regarding summary exhibits.  And that is

22   *United States v. Katakis*, et al., Case No. S-11-511 in the

23   Eastern District of California which was in 2014.

24           I believe in that case the Court was specifically told

25   by Ms. Pletcher that her colleague and attorney compiled the

 1   summaries that they were putting on through the paralegal which

 2   summarized rigged foreclosure options in that case, which is

 3   really similar to a summary of rigged chicken contract

 4   negotiations here.

 5          THE COURT:  And just -- I don't want to slip into this

 6   during the rest of the trial, but obviously just because an

 7   attorney once upon a time worked on another case, it doesn't

 8   make any difference.  I don't care what the opinions of the

 9   actual attorney is.  I care what the representation is, so I

10   just don't want to go down that road.  But go ahead.

11          MS. CALL:  No problem, Your Honor.  And I will go back

12   just to just the facts of the case.  The paralegal in that case

13   testified that he prepared the charts at the direction of the

14   prosecution team, particularly with one of the attorneys who

15   was in the courtroom.  He testified that there was a draft when

16   he started, that he did not fully prepare the chart and that he

17   verified the accuracy of it, which is pretty similar to the

18   testimony we have here.  There is another case that Mr. Beller

19   brought up yesterday from the 10th Circuit, *United States v.*

20   *Keck*, where it was actually a custodian of records who was the

21   one who testified regarding a summary chart.

22          And there is other cases that stand for this very same

23   proposition.  I think one that is very on point is a Third

24   Circuit case from 2018 which is *United States v. Lynch* and

25   that's 735 F. Appx. 780.  In that case it was an IRS agent who

1    sponsored a summary chart, but he was specifically not the one

2    who prepared it.  And what the Third Circuit said was the

3    foundation requirement was just that you have to establish that

4    the exhibit is an accurate testimony of the underlying

5    materials and that testimony concerning the authenticity and

6    accuracy of a summary may be provided by a person who

7    supervised its preparation or carefully reviewed its content.

8    And I think that's just what we have here.

9         The *Lynch* court then cited the Sixth Circuit in

10   *Scales*, which is another case that has come up on several

11   briefings regarding these summaries.  That's 594 F.2d 558, and

12   that's Sixth circuit, 1979.  In that case at issue was whether

13   a witness who was unfamiliar with the reasons why certain

14   information was or was not included in the summaries could

15   properly lay foundation.  And the Third Circuit held the fact

16   that a different agent verified the charts was fine as long as

17   they had verified the information in the chart and the

18   underlying information.  And that's really precisely what we

19   have here.  There is really no different between an agent on

20   this case laying that foundation versus a paralegal doing it.

21        I will note the 10th Circuit has had some opportunity

22   to comment on the definition of the term "preparer" in the

23   context of 1006.  And that was -- I am not sure I know the

24   abbreviations.  I put in here *State Office Systems, Inc. v.*

25   *Olivetti Corp.,* and that cite is 762 F.2d 843, and that's from

1   the 10th Circuit in 1985.  I may be circling back.  That's

2   where a president of a company testified that he helped

3   preparing a summary.  In that case it actually estimated

4   current and future losses for a case that was both under 1006

5   and Rule 702.

6          Let's kind of circle back more broadly.  I think there

7   is some flaws in the underlying argument here.  One is that

8   prosecutors can't have a role in selecting the evidence that

9   comes before the jury and that's simply what prosecutors roles

10  are.  We choose the evidence.  We choose the witnesses.  We

11  choose what questions get asked of the witnesses.  And yeah,

12  sure, we may have a role in identifying what evidence gets

13  summarized.  That doesn't mean the prosecutor should be the

14  witness.

15         And I think this is essentially a point that underlies

16  all summaries in criminal cases that the prosecution has some

17  role in what goes into those summaries.  And that's just why

18  the law is what it is regarding these summaries and the

19  prejudice requirement that Mr. McLoughlin has stated that the

20  Fourth Circuit articulated in *Johnson* and the 10th Circuit then

21  adopted in *Ray* is really that to cure any potential prejudice

22  to a defendant, the Court can issue a limiting instruction,

23  which Your Honor is doing here, and allow cross-examination

24  regarding the accuracy of the chart.

25         The selectivity requirement I frankly don't believe is

1    in many of the cases that Mr. McLoughlin referenced.  It may be

2    in one or two, but I think also the cross-examination did go

3    into the selectivity of the chart.  I noted multiple times, you

4    know, there is things that aren't in here.  And that would be

5    the exact same cross-examination should an agent testify.  The

6    purpose of the cross-examination requirement is to test the

7    accuracy, maybe to test the selectivity, but it's not to put

8    the investigation on trial, which is what defendants seem to

9    want to do with the rule they're articulating.

10          And I think under the rule it's just not a possible

11   rule that under their analysis almost every person that was

12   involved in the preparation of the summary would need to

13   testify and that simply can't be the case.

14          Let me move on to the confrontation argument which I

15   think is really -- I will say covered by previous briefings.  I

16   understand Mr. Beller's point that perhaps the state of the

17   evidence has changed given the testimony, but the law is the

18   same.  And the Court has already I think in Docket 741 found

19   that summary exhibits are not testimonial when the evidence

20   underlying them is not.  The Court cited for this proposition

21   *United States v. Naranjo*, 634 F.3d 1198 in the Eleventh Circuit

22   as well as *United States v. Hemphill*, which is 514 F.3d 1350 in

23   the D.C. Circuit.  And both of them stand for the proposition

24   that a summary is not testimonial as long as the underlying

25   evidence is not.

1          And I think *Crawford v. Washington* really gets to that

2   same proposition, although not in the context of summaries

3   w,here it cites to the fact that there are these hearsay

4   exceptions that exist and the kinds of evidence that fall under

5   those exceptions are not testimonial.  And *Crawford*

6   specifically discusses business records, but also

7   co-conspirator statements which is a lot of what's contained in

8   these summaries.  So I think that an argument that these

9   summaries are testimonial is just belied by the confrontation

10  clause law.

11         And I do think argument is repackaging a lot of the

12  confrontation arguments that have been made over the course of

13  the trial about like admissible evidence not being proper

14  because it's a confrontation issue, which just isn't the case

15  because these documents and these summaries are not

16  testimonial.

17         But at the end of the day, I do think the

18  confrontation argument is foreclosed by the 10th Circuit law in

19  *Yeley-Davis* and *Keck*, which Mr. Beller did note yesterday,

20  because none of the records underlying the summaries were

21  created for the purposes of establishing or proving some fact

22  at trial which is what the Court found in those cases

23  concerning summaries and the records underlying them.  So I

24  don't see merit in the confrontation clause argument.

25         I think I have responded to everything, so thank you.

1          *THE COURT:*  Thank you.  We are not going to have any

2     rebuttal because it is already 8:30.  I am going to rule on

3     this issue.

4          So the various arguments were made about once the

5     government started to offer the summaries to -- as evidence in

6     the case.  And let me just first of all talk about *Renteria*

7     because that is a fairly recent 10th Circuit opinion on these.

8     And in *Renteria*, of course, under the second prong that came

9     was derived from *United States v. Ray*, and this is a quote from

10    *Renteria*.  "The Court considers any resulting prejudice looking

11    at whether, for example, the preparer was available for

12    cross-examination and whether the Court gave any limiting

13    instructions."

14         The "for example" notation in that particular sentence

15    is not a requirement.  The preparer does not have to

16    necessarily be available for cross-examination.  Of course, in

17    this case Ms. Evans was available for cross-examination.  She

18    was not, as she testified, necessarily the preparer.  She had a

19    draft already.  Essentially what Ms. Evans did is she reviewed

20    the underlying exhibits that were noted on the chart and made

21    any corrections that she believed were appropriate.  She didn't

22    really exercise much, if any, judgment in terms of what was put

23    in other than what we would simply call corrections.  She did

24    make a few judgment calls in terms of perhaps chronology, but

25    nothing that anyone called to her attention as being

1    inaccurate.  She was available for the defendants to be able to

2    cross-examine in terms of the accuracy.

3            She, of course, testified.  And it's -- the jury knows

4    that the attorneys were primarily the ones who were making

5    decisions regarding what the defendants have referred to as

6    selectivity.  And, of course, that is really -- it's not the

7    complete argument of the defendants, of course, but it is a

8    major point that the defendants have brought up.

9            The defendants, of course, had the opportunity, not in

10   front of the jury, but in the numerous hearings that we've had,

11   to discuss and make objections based upon the government's

12   selection of various types of information to put in and not

13   include other types of information.  As I've discussed on a

14   number of occasions in some of my written orders on the summary

15   charts, that type of summary with the type of information

16   that's being summarized in this case and that's embodied in the

17   summaries is an appropriate thing to do and it invariably

18   involves attorneys making decision calls.

19           Special agents don't come up with exhibits.  They're

20   not the ones who are in control of the case.  And exhibits are

21   created and supervised by the attorneys.  There are examples,

22   and it's true and some of the cases contain that.  For

23   instance, in the decision in *Baker* where you had a special

24   agent who actually was an accountant, but she had no experience

25   or expertise regarding the street value of the narcotics.  In

1    that particular case, of course, the Court focused more upon

2    the fact that she was available for cross-examination because

3    she was adding value to the summaries.  She was making

4    calculations about the street value of the drugs.  And because

5    of that fact, it was noteworthy that she was available for the

6    defendants to ask questions of.

7           Ms. Evans, of course, didn't have any type of role in

8    any way comparable to that and nor would the defendants ever be

9    able to cross-examine the attorneys.  But the defendants had

10   every opportunity to make the arguments and it was already

11   established by Ms. Evans that they were judgment calls by the

12   attorneys in terms of the selection issues, so that can be

13   argued, but never would an attorney be up on the witness stand

14   making those calls.

15          And it wouldn't matter whether Special Agent Taylor

16   was either because although he probably has a lot of

17   information about -- he would know more about the case,

18   nonetheless, the issue on cross-examination is not the

19   selection that he may be aware of by the attorneys, but rather

20   would only go to the accuracy of the information on the summary

21   chart.

22          I haven't found any case that either prohibits summary

23   charts from going back to the jury because the attorneys were

24   ultimately the ones who made judgment calls about the

25   information, what information was included in the summary

1    charts, or that requires a witness that has knowledge about the

2    selectivity to be available for cross-examination.

3           So I reject all of those arguments.  Once again, it's

4    quite appropriate in this case that the instructions, the

5    limiting instructions, put in proper perspective exactly what

6    these types of exhibits are and what use they can be made of.

7           In terms of the confrontation clause issues, if you

8    look at the 10th Circuit cases that talk about confrontation

9    clause, such as the *Yeley-Davis* case and also I think it's --

10   let's see -- *Keck*, but yes, also, yes, *Yeley-Davis*, that

11   particular test, there is no problem with it in this case

12   because the underlying exhibits are non-testimonial and they

13   have been admitted.  Under various reasons some of them vary.

14          Ms. Pletcher brings up a good point citing to *Cameron*

15   that perhaps at some point in time the government, having made

16   selections not only in terms of what information to include on

17   a summary chart, but perhaps even, for instance, with an e-mail

18   choosing those portions to include on the chart, that the

19   exhibit on the whole all of the sudden becomes testimonial.

20   But as I cited before and Ms. Call noted, I don't believe that

21   that is true.  And in my order in Docket No. 741, I discuss the

22   cases that I think stand for the opposite.

23          I don't believe that the summary charts, any of them

24   in this particular case, rise to the level of being testimonial

25   in and of themselves, and with the appropriate limitations I

4171

1    believe that they are admissible.  And for that reason I will

2    deny the confrontation clause arguments that have been

3    presented by the various attorneys.  And I do believe that

4    these are appropriate exhibits with, once again, a limiting

5    instruction under 611(a) and 1006 to go back to the jury, not

6    merely be demonstrative exhibits.

7           Let me now turn to the motion that was filed, in

8    particular the suggestion.  And Mr. McLoughlin, what I would

9    like to do is hear from the government first.  I will allow you

10   a brief opportunity to respond at that point.  But let me

11   also -- let me just indicate that -- well, let me hear from

12   Ms. Call first.

13          Go ahead.

14          MS. CALL:  Yes, Your Honor.  I think much of what's

15   covered in the motion the government doesn't necessarily

16   disagree with.  The majority of the instruction they proposed

17   is what Your Honor already articulated on the record which is

18   the adaptation of the Sixth Circuit instruction 7.12A.

19          It appears that the portion they want to add is I

20   think in italics next to No. 3 on the last page of their motion

21   that stated, "You must determine whether the evidence that is

22   summarized in such an exhibit is a fair summary, accurate or

23   worthy of belief.  You may give a summary exhibit entire

24   weight, some weight or no weight at all depending on your

25   assessment on the underlying evidence and the accuracy of the

1    summary."

2          And I believe they pulled that instruction from a

3    particular case where it was approved on the circuit level.

4    But it's the government's position that that addition is not

5    really necessary here.  I think particularly the words "worthy

6    of belief" seems to go a bit far for summaries that the

7    accuracy of which haven't really been questioned all that much

8    on cross-examination.  I don't know that any issue really came

9    up to the accuracy of the summaries.

10          I think what counsel have focused on and perhaps what

11   they are trying to get in this instruction is the selectivity

12   bias that they've been arguing, but that's frankly not really

13   covered by the instruction they propose.  And I don't know that

14   there is any instruction or law that goes to that that would be

15   proper for an instruction to the jury.  So it's simply the

16   government's position that the instruction that Your Honor has

17   already described would be appropriate and additions aren't

18   necessary to it.

19          *THE COURT:*  All right.  Mr. McLoughlin, go ahead.

20          *MR. McLOUGHLIN:*  Your Honor, I will focus on the 10th

21   Circuit cases and the related citations.  The second prong in

22   *Renteria* and *Ray* is prejudice.  And to address prejudice, we

23   respectfully submit that given where we are and the Court's

24   ruling, the instruction to the jury is paramount.  In *Ray* the

25   10th Circuit adopted the approach of the Fourth Circuit in

1  *Johnson*.  We would respectfully submit that although neither

2  *Ray* nor *Renteria* specifically discusses the jury instruction

3  that goes on as the 10th Circuit adopted the approach in

4  *Johnson*, the 10th Circuit has adopted the entire approach.

5          And in *Johnson* what the Fourth Circuit addressed and

6  again discussed extensively the Second Circuit's analysis was

7  that the jury instructions were critical.  And in that case as

8  Your Honor notes from the submission that we provided, the

9  Fourth Circuit District Court twice instructed the jury and

10  made very clear to the jury that what the charts were is "what

11  the government contends has been proven in the case."  And I am

12  quoting.  "That is the contention.  It's up to you then as a

13  jury to resolve any issues that may be in your mind concerning

14  the chart.  That was when they were admitted."

15          And then when -- at the end of the trial, the jury

16  again cited it.  And this is at Pages 1160 and 1161 of *Johnson*.

17  In *Johnson* the Court in the Footnote 10 extensively discusses

18  the Second Circuit's analysis and relies on that and

19  specifically *Casamento*, 87 F.2d at 1151, in which the Second

20  Circuit made clear its approval that the use of summary charts

21  are appropriate so long as, in quotes, "so long as the judge

22  properly instructs the jury that it is not to consider the

23  charts as evidence."

24          "To admit a summary chart into evidence is such that

25  the function must be explained to the jury and that has long

1    been recognized."  So if we look at the progeny here of *Ray* and

2    *Renteria* in *Johnson*, the guidance as to what the instruction

3    should be is quite clear.  The *Paulino* case again, the Sixth

4    Circuit case, Your Honor, has looked at the pattern instruction

5    is also instructive there.

6           I would note in a remarkably quick response compared

7    to what one could discuss, the premise of the government's

8    argument that the accuracy has not been questioned here is

9    simply counter-factual.  There should be no ambiguity on the

10   record that every defendant believes that those charts are

11   completely inaccurate.  They are argument.  They rely on

12   inferences, for example, on phone calls as to which the

13   government has no information.  And there is no distinction

14   between selectivity, bias -- selectivity and bias and accuracy,

15   because the issue is do they, quote, accurately portray the

16   events they purport to summarize.  And the answer from the

17   defense for all the reasons we have beaten to death is no.  So

18   there should be no question about that.

19          So at this stage, Your Honor, we prepared our

20   submission modifying the Sixth Circuit pattern instruction to

21   have the minimum modification to make it more attractive to

22   Your Honor given your prior decision with respect to the Sixth

23   Circuit pattern instruction.  At this stage given Ms. Evans'

24   testimony, we would respectfully request that Your Honor give

25   an instruction that is much closer to *Johnson* as adopted in *Ray*

 1   than we have presented and we would be prepared to present one.

 2   But the additional instruction we have submitted is

 3   absolutely -- we would respectfully request is absolutely the

 4   minimum.

 5          *THE COURT:*  Thank you.

 6          What I am going to do is I am going to give the

 7   summary -- give the limiting instruction that I indicated

 8   previously as amended the slightly by Mr. Pollack.  And I will

 9   also read to the jury the -- if you look at the motion from

10   yesterday, the defendants' proposed limiting instruction, I am

11   not sure what docket number that is, but in the third paragraph

12   I will provide the second sentence.

13          I don't believe that the first sentence is appropriate

14   because I think that's a little bit more than is required under

15   the 10th Circuit instructions, but I think that it is

16   appropriate to remind the jury that they can give the summary

17   exhibit itself -- so, of course, the emphasis before is on the

18   underlying evidence -- but that indicates to the jury that they

19   can give the summary exhibit entire weight, some weight or no

20   weight at all depending on their assessment of the

21   underlying -- I am going to say material and the accuracy of

22   the summary.

23          All right.  Are we ready to bring the jury back in?

24          *MR. KORNFELD:*  Your Honor, one clarification.  Is it

25   still the Court's attention to give the limiting instruction

1    both before and after the government puts up the summaries and

2    then also will include it in the instructions?

3              THE COURT:  Yeah, I think -- I am not sure how the

4    government is going to do that.  That is my intent.  I am not

5    sure.  For instance, if the government moves them all

6    essentially and then proceeds to display, what I will do is I

7    will read the limiting instruction before anything is

8    displayed, and then at the end after the last one is displayed

9    remind the jury.  I will read the limiting instruction again.

10             MR. KORNFELD:  Great.  Thank you.  And also for

11   purposes of the record, that pleading you just referred to is

12   870.

13             THE COURT:  Thank you.

14             Mr. McLoughlin?

15             MR. McLOUGHLIN:  Nothing, Your Honor.  Thank you.

16             THE COURT:  Okay.  Thank you.

17             Anything else, Ms. Call?

18             MS. CALL:  No, Your Honor.

19             THE COURT:  Okay.  Let's bring the jury in.

20             (Jury present.)

21             Good morning, ladies and gentlemen.  So you will

22   recall that we had Ms. Evans on the stand.  I should have

23   excused Ms. Evans while you were here just so you knew that she

24   was excused, but rather than having her come back today merely

25   to be excused, I went ahead and excused her anyway, so she has

1    been excused.

2         All right.  So the United States may call its next

3    witness or introduce additional evidence.

4         *MS. CALL:*  Yes, Your Honor.  The United States will

5    now introduce evidence starting with Government Exhibit 1036-2.

6         *THE COURT:*  All right.  You are moving to admit that?

7         *MS. CALL:*  Yes, Your Honor.

8         *THE COURT:*  Mr. Tubach?

9         *MR. TUBACH:*  We have an objection, Your Honor, if we

10   can have a quick side bar.

11      (At the bench:)

12         *THE COURT:*  Go ahead, Mr. Tubach.

13         *MR. TUBACH:*  Your Honor, we object to the admission of

14   1036-2 and displaying it to the jury.  There has been no

15   testimony about how this document relates to anything as it

16   relates to Mr. Penn.  There has been no testimony at all about

17   how this chart would have been able to be displayed in the

18   manner the government wants to show it to the jury now.  And we

19   do not -- we vehemently object to the use of it in this manner

20   without any such testimony.

21         There is no evidence that Mr. Penn ever saw these

22   columns, knew they existed.  The manner in which he received

23   this spreadsheet did not appear this way.  The columns were

24   hidden and without such testimony to display them this way

25   vehemently suggests to the jury that Mr. Penn in some way has

1    seen the chart in this manner.

2         MS. CALL:  Your Honor, if I may interrupt, the

3    government's transceiver wasn't working for the last two

4    minutes.  I have not heard any of Mr. Tubach's argument.  I

5    tried to signal to him, but he may not have noticed.

6         THE COURT:  If you don't mind, can you repeat what you

7    just said?

8         MR. TUBACH:  I will.

9         We object to the admission of 1036-2 and displaying it

10   to the jury.  There has been no testimony about how this

11   document relates to Mr. Penn or how he would have seen the

12   chart in the manner in which the government is going to now try

13   and display it to the jury.  There is no evidence that he saw

14   these unhidden columns.  There has been no testimony about how

15   one would do that.  There has been no evidence at all that he

16   received this in the manner that would be displayed to the jury

17   under 1036-2.

18        And for all those reasons, as well as any others that

19   I might have missed in repeating my summary, we don't think

20   it's appropriate to show this.  It would be highly misleading

21   to show to the jury this summary suggesting Mr. Penn had

22   somehow seen this information when there is no evidence of that

23   at all.

24        THE COURT:  Ms. Call, go ahead.

25        MS. CALL:  Yes, Your Honor.  I think in the

1    alternative, and I don't know that Mr. Tubach's argument would

2    quite apply here, but the government could also introduce 1036

3    in its native form which has the columns hidden.  And that is

4    how it was received by Defendant Penn.  I think it is relevant

5    that there are hidden columns there.  And the government would

6    intend to argue that because it is the Excel file that's in

7    evidence, but I don't see the prejudice or the relevance that

8    Mr. Penn received the chart with hidden columns.  That's what

9    he received.  That's what the evidence in 1036 is.  So I think

10   that would be entirely appropriate.

11           THE COURT:  Is the government going to do that, then?

12   Are you going to offer 1036, the native version, instead of

13   1036-2?

14           MS. CALL:  Yes, Your Honor.

15           THE COURT:  All right.  Mr. Tubach?

16           MR. TUBACH:  That's fine, Your Honor, as long as only

17   1036 is going to be displayed to the jury in the form which

18   Mr. Penn received it.  There shouldn't be any unhiding the

19   columns in front of the jury in some sort of demonstrative that

20   our tactician or the exhibit tactician of the government is

21   going to try and do.

22           THE COURT:  Ms. Call?

23           MS. CALL:  The government doesn't plan to publish it

24   at this time.

25           THE COURT:  I would assume, Mr. Tubach, that the

4180

1    government could do such a thing on closing, but they are not

2    going to do it now.

3            MR. TUBACH:  That's fine, Your Honor, as long as

4    1036-2 is withdrawn.  Thank you.

5        (In open court:)

6            THE COURT:  Ms. Call, go ahead.

7            MS. CALL:  The government will now offer --

8            THE COURT:  I think you were going to withdraw the

9    offer of Exhibit 1036-2; is that correct?

10           MS. CALL:  Correct, Your Honor.  The government will

11   withdraw 1036-2 and offer 1036, no dashes.

12           THE COURT:  Okay.  And 1036, is that a native file?

13           MS. CALL:  It is, Your Honor.

14           THE COURT:  Any objection to the admission of

15   Exhibit 1036?

16           Exhibit 1036 will be admitted.

17           MS. CALL:  Your Honor, would it perhaps be appropriate

18   to note for the jury the attorneys on VTC?

19           THE COURT:  Yes.

20           Ladies and gentlemen, we've had Mr. Torzilli and

21   Ms. Sweeney are both joining us by VTC today.  There is

22   Mr. Torzilli, just so you know.

23           Go ahead, Ms. Call.

24           MS. CALL:  Thank you, Your Honor.  The government

25   would now offer its summary exhibits.  I think it makes sense

1    to just do it as a bunch.  I am happy to read off the numbers.

2            THE COURT:  Go ahead.

3            MS. CALL:  90-10, 14-1, 14-2, 14-3, 17-1, 18-1, 18-3,

4    7-1, 16-1, 20-1, 1-1, 2-1, 3-1, 9-1, 5-1, 4-1, 10-1, 10-2, and

5    10-3.

6            THE COURT:  All right.  Ladies and gentlemen, over

7    objection of the defendants, the Court has admitted those

8    summary exhibits.  However, ladies and gentlemen, I want to

9    read you a limiting instruction that applies to each of those

10   summary exhibits:

11           Namely, the exhibits, and these are other exhibits

12   that are noted in the summaries on the right-hand side of them,

13   have already been admitted into evidence.  The summaries, in

14   other words, those documents that Ms. Call just read the

15   numbers of to you, are admitted into evidence because they may

16   assist you in understanding the evidence that has been

17   presented.  But a summary itself is not evidence of the

18   material it summarized and is only as valid and reliable as the

19   underlying material it seeks to summarize.

20           You may give a summary exhibit entire weight, some

21   weight or no weight at all depending on your assessment of the

22   underlying material and the accuracy of the summary.

23           So each of those summaries are admitted.

24           MS. CALL:  And the government now would seek to

25   publish each of those summaries starting with 14-1.

1          THE COURT:  You may.

2          MS. CALL:  If we could zoom from perhaps the top left

3   to the bottom right, I am hoping that's an appropriate size for

4   review.

5          THE COURT:  So this is 14-1 you said?

6          MS. CALL:  Correct, Your Honor, the first page of it.

7          THE COURT:  All right.

8          MS. CALL:  If we could go to the second page of 14-1

9   and zoom in in the same way.  Thank you.

10          THE COURT:  All right.

11          MS. CALL:  Permission to publish 14-2.

12          THE COURT:  You may.

13          MS. CALL:  If we can zoom from the top left to the

14   bottom right again.

15          THE COURT:  All right.

16          MS. CALL:  If you could turn to the second page of

17   14-2 and zoom again.  Thank you.

18          THE COURT:  All right.

19          MS. CALL:  Next is Government Exhibit 14-3.

20   Permission to publish?

21          THE COURT:  You may.

22          MS. CALL:  May we zoom in the same way on 14-3?  Thank

23   you.

24          THE COURT:  All right.

25          MS. CALL:  Now Page 2 of 14-3, if we could zoom as

1  well.  Thank you.

2          *THE COURT:*  All right.

3          *MS. CALL:*  Permission to publish Government Exhibit

4  17-1.

5          *THE COURT:*  You may.

6          *MS. CALL:*  If we could please zoom in on the first

7  page as well.

8          *THE COURT:*  All right.

9          *MS. CALL:*  Turn to the next page of 17-1 and zoom in

10  there.

11          *THE COURT:*  All right.

12          *MS. CALL:*  Permission to publish Government Exhibit

13  the 18-1?

14          *THE COURT:*  Yes.

15          *MS. CALL:*  Could we please zoom from the upper left

16  date to the bottom right of the exhibit sticker?

17          *MS. JOHNSON:*  Your Honor, I apologize.  Could we have

18  a quick side bar?

19          *THE COURT:*  Yes.

20      (At the bench:)

21          *THE COURT:*  Go ahead, Ms. Johnson.

22          *MS. JOHNSON:*  Your Honor, I believe what was just

23  published was the old 17-1.  I don't know if there is a

24  mistake, and certainly it's not Ms. Call, but maybe Mr. Mike

25  has published the wrong one to the jury.

1          THE COURT:  Ms. Call, I'm not sure if Mr. Fronzaglia,

2    hopefully he has got the most recent ones, but it would have

3    been inadvertent if he did.  He is doing double duty.

4          MS. JOHNSON:  Your Honor, I would just note I think we

5    got the final versions from the government at 12:15 this

6    morning and it's possible that Mr. Fronzaglia doesn't have the

7    latest version.

8          THE COURT:  Ms. Call, maybe we should display that by

9    use of the document viewer if, in fact, Mr. Fronzaglia doesn't

10   have the most recent version.

11         MS. CALL:  I believe I heard someone talking, but they

12   may not have been pushing their button.

13         MR. TUBACH:  Let me try it again.  I was just going to

14   suggest if perhaps we don't have the latest versions, maybe

15   using the document viewer would be the best way to display the

16   rest of the charts so we don't have to keep making objections.

17         MS. CALL:  Your Honor, I believe when we discussed

18   this yesterday and the government did manage to be able to make

19   the edits last night, but I believe we did anticipate

20   potentially publishing to the jury the slightly unfinal

21   versions just because of the time it took.  We I don't believe

22   have the ability -- and we might be able to find out how to

23   publish from our computers the current versions.  I don't think

24   I have the printouts from last night, frankly.

25              We did submit them to all the defendants.  And I don't

1   mean to rely on them as much as we have today for the

2   assistance given the government's low resources, but we may be

3   able to pull them out.  Can I confer with my colleagues to see

4   if we can?  And perhaps we can connect our computers to the

5   display system.

6           *MR. FELDBERG:*  Your Honor, we would be happy --

7           *THE COURT:*  I am sorry, who was that?  Mr. Feldberg.

8           *MR. FELDBERG:*  We have a printed out set.  And with

9   respect to 171, we would be happy to lend it to Ms. Call to

10  display on the document presenter.

11          *THE COURT:*  And Mr. Feldberg, is it a printed out

12  color set?

13          *MR. FELDBERG:*  Yes, it is.

14          *THE COURT:*  It is.

15          *MS. PREWITT:*  Your Honor, Elizabeth Prewitt.  I am a

16  bit concerned, Your Honor, based on the fact the wrong charts

17  were shown to the jury given the fact we have jurors who were

18  studiously taking notes.  So I would raise my objection to the

19  wrong charts being shown to the jury and, you know, would like

20  to -- I don't want to take a risk of that happening again.  And

21  I prefer all the charts to be shown the actual final printed

22  version that defendants have had an opportunity to view and

23  verify accurately reflecting Your Honor's rulings.

24          *THE COURT:*  I think what we talked about yesterday was

25  that there were just some minor corrections to them and that if

1     the government was logistically unable to incorporate those

2     minor changes, that they could nonetheless be displayed as long

3     as they were corrected in terms of the exhibits that went back

4     to the jury.  If, however, those corrections have been

5     completed and, for instance, if Mr. Feldberg has those that

6     were printed out and apparently sent late last night and that

7     presumably would reflect -- it would be the most recent, it

8     would seem appropriate to display those.  Would that be true,

9     Ms. Call?

10         MS. CALL:  Your Honor, I do believe there are very

11    minor corrections, for example, changes "his" to "their" in

12    some of the limiting instructions.  Defense counsel is correct

13    to point out I believe 1713 which is in 17-1 I think was the

14    one document that was removed from the summaries yesterday

15    following discussion in court.  That has obviously now been

16    published.

17         If defense counsel wants, we can publish it again.  I

18    would perhaps suggest Mr. Mike redact that portion, which I

19    believe he is able to do on the document viewer.  I think it

20    will be easier to review these in electronic form than with the

21    displayer.  And no prejudice to the document displayer, but I

22    will note the color and the small text sometimes is a little

23    hard to focus in on.

24         THE COURT:  It can be focused in on, though.  It can

25    be zoomed in.  I think we should go ahead and display the final

1    version so if there is some versions that haven't been

2    corrected, then those can be displayed electronically, but the

3    document viewer I think would be the best bet, so just so we

4    don't have confusion over exactly what's being displayed.

5            Mr. Feldberg?

6            MR. FELDBERG:  Your Honor, the change in 17-1 is a

7    substantive change in that the entry regarding Mr. Ledford was

8    removed entirely.  And what we would request is the corrected

9    17-1 be displayed with some form of instruction that the

10   document which was earlier presented as 17-1 inadvertently was

11   not the final accurate version.

12           THE COURT:  Ms. Call, response to that issue?

13           MS. CALL:  I have no opposition to that.

14           THE COURT:  Ms. Johnson?

15           MS. JOHNSON:  I was just going to let you know that I

16   believe Mr. Fronzaglia has the corrected documents now and it

17   should be ready to upload and should be ready to present.

18           THE COURT:  Why don't we do this.  For the first

19   couple of them let's review first, have them just published,

20   not to the jury, but just have people take a glance at them

21   and.  Then if there is not an issue, we'll go ahead and then,

22   Ms. Call, you can ask to publish them to the jury just so we

23   double-check.  We don't have to necessarily do that all the way

24   through, but just to make sure Mr. Fronzaglia has the most

25   recent version.

1          MS. CALL:  That sounds appropriate.  And I will note

2     one more time the government does appreciate Mr. Fronzaglia's

3     help and I will pronounce his name correctly now.

4          THE COURT:  Yes, we want to give recognition to

5     Mr. Fronzaglia because he has been doing very good work over

6     the last 24 hours.  All right.  So let's, first of all, as our

7     first order of business, let's go back to 7-1, I believe it is.

8          MR. FELDBERG:  17-1, Your Honor.

9          THE COURT:  Thank you.  17-1.  I will explain to the

10    jury that the version that was displayed to them a moment ago

11    was not the final version and we're going to display that to

12    the jury now in its final form, all right?

13         MR. FELDBERG:  Would Your Honor indicate that the

14    earlier version they should ignore?

15         THE COURT:  That I think would be an appropriate

16    instruction as well.  I will do that.  Thank you.

17       (In open court:)

18         THE COURT:  Ladies and gentlemen, you were just shown

19    a short while ago a summary which was Exhibit 17-1.  What you

20    looked at was a previous version.  You should ignore that one.

21    And we're going to display to you the final version, the

22    admitted version of 17-1 at this time, all right?

23         MS. CALL:  Thank you, Mr. Fronzaglia.

24         THE COURT:  And we've got 17-1 up right now?

25         MS. CALL:  Yes.

1          *THE COURT:*  Okay.

2          *MS. CALL:*  If Mr. Fronzaglia could turn to the second

3    page.

4          *THE COURT:*  All right.

5          *MS. CALL:*  If we could turn to 18-1 just for the

6    parties and the Court at this moment.

7          Permission to publish?  I will note I believe this

8    already may have been published and we went back for a moment,

9    but there is a second page after this one.

10         *THE COURT:*  That's true.  I think it was published to

11   the jury, but it may be published to the jury now.

12         *MS. CALL:*  Thank you, Your Honor.

13         Could we please turn to the second page of 18-1 and

14   zoom in on the content there?  Thank you.

15         *THE COURT:*  All right.

16         *MS. CALL:*  If we could turn to 18-3.  I will give the

17   parties a moment to review.

18         Permission to publish?

19         *THE COURT:*  You may.

20         All right.

21         *MS. CALL:*  If we could now turn to Government's

22   Exhibit 7-1.  I will give the parties and the Court a moment to

23   review.

24         Permission to publish 7-1?

25         *THE COURT:*  You may.

1          *MS. CALL:*  If you could turn to the second page.

2          Mr. Fronzaglia, if you don't mind, I believe there

3    might have been one row cut off on the bottom of the first

4    page, if we can turn back.  I was incorrect.  You can go to the

5    second page and zoom.  Thank you.

6          *THE COURT:*  All right.

7          *MS. CALL:*  If you can turn to Government Exhibit 16-1

8    and give the parties a moment to review.

9          *THE COURT:*  All right.

10          *MS. CALL:*  Permission to publish?

11          *THE COURT:*  You may.  All right.

12          *MS. CALL:*  If we could now turn to Government Exhibit

13    20-1 and give the parties a moment to review.  For this one we

14    could perhaps zoom in on the top half because there is a fair

15    amount of text.

16          And permission to publish?

17          *THE COURT:*  You may.

18          *MS. CALL:*  Mr. Fronzaglia, if you could just do the

19    entries on November 24, and then we will zoom after that on the

20    lower portion.

21          *THE COURT:*  All right.

22          *MS. CALL:*  If we could please zoom in on the lower

23    portion of the page.

24          *THE COURT:*  All right.

25          *MS. CALL:*  Could we turn to Government Exhibit 1-1 and

4191

1    give the parties a moment to review?

2            Permission to publish 1-1?

3            *THE COURT:*  Yes, you may.

4            All right.

5            *MS. CALL:*  Could we please pull up Exhibit 2-1 and

6    give the parties a moment to review?

7            Permission to publish 2-1?

8            *THE COURT:*  You may.

9            All right.

10           *MS. CALL:*  If we can now turn to Government Exhibit

11   3-1 and give the parties a moment to review, please.

12           Permission to publish 3-1?

13           *THE COURT:*  You may.

14           All right.

15           *MS. CALL:*  If we can now turn to Government Exhibit

16   9-1 and give the parties a moment to review.

17           Permission to publish 9-1?

18           *THE COURT:*  You may.

19           All right.

20           *MS. CALL:*  Could we please turn to Government

21   Exhibit 5-1 and give the parties a chance to review?

22           Permission to publish 5-1?

23           *THE COURT:*  You may.

24           All right.

25           *MS. CALL:*  If we could turn to the second page and

1    zoom in.  Thank you.

2              THE COURT:  All right.

3              MS. CALL:  We would next turn to Government Exhibit

4    4-1 and give the parties a moment to review.

5              Permission to publish 4-1?

6              THE COURT:  You may.

7              All right.

8              MS. CALL:  If you would turn to Page 2 of Exhibit 4-1.

9              THE COURT:  All right.

10             MS. CALL:  If you could turn to the third page.

11             THE COURT:  Okay.

12             MS. CALL:  Could we turn now to Government Exhibit

13   10-1 and give the parties a moment to review?

14             Permission to publish 10-1?

15             THE COURT:  You may.

16             MS. CALL:  Can we please turn to Page 2 of Exhibit

17   10-1?

18             THE COURT:  All right.

19             MS. CALL:  Can we please turn to Page 3 of 10-1?

20             THE COURT:  All right.

21             MS. CALL:  If we could turn to Page 4 of Exhibit 10-1?

22             THE COURT:  All right.

23             MS. CALL:  Could we please turn to Exhibit 10-2 and

24   give the parties a moment to review?

25             Permission to publish 10-2?

1          THE COURT:  You may.

2          All right.

3          MS. CALL:  If we could turn to Page 2 of Exhibit 10-2.

4          THE COURT:  All right.

5          MS. CALL:  If we could now turn to Government Exhibit

6   10-3 and give the parties a moment to review.

7          Permission to publish 10-3?  And this is the last

8   summary.

9          THE COURT:  You may.

10          All right.

11          MS. CALL:  If we could turn to Page 2 of Exhibit 10-3.

12          A moment to confer, Your Honor?

13          THE COURT:  Yes, you can confer.

14          MS. CALL:  And then I will cede the podium to my

15   colleague, Mr. Koenig.

16          THE COURT:  And that concludes the summary exhibits;

17   is that correct?

18          MS. CALL:  Yes, Your Honor.

19          THE COURT:  So ladies and gentlemen, you were just

20   given an opportunity to look at the summary exhibits beginning

21   with Exhibit 90-10 ending with Exhibit 10-3.  The exhibits

22   underlying the summaries noted in the summary exhibits have

23   already been admitted into evidence.  The summaries were

24   admitted because they may assist you in understanding the

25   evidence that has been presented.  But keep in mind a summary

1    itself is not evidence of the material it summarizes and is

2    only as valid and reliable as the underlying material it seeks

3    to summarize.  You may give a summary exhibit entire weight,

4    some weight or no weight at all depending on your assessment of

5    the underlying material and the accuracy of the summary.

6             Mr. Koenig?

7             *MR. KOENIG:*  Your Honor, at this time the government

8    rests.

9             *THE COURT:*  Okay.  Ladies and gentlemen, when the

10   government rests, it means that the government has concluded

11   the evidentiary portion of its -- what's called its case in

12   chief.

13            Let's do a side bar at this time.

14       (At the bench:)

15            *THE COURT:*  We had talked about this before, but I do

16   want to give the defendants an opportunity because the

17   government has rested to articulate the fact that they are --

18   or whether they are moving under Rule 29 for a motion for

19   judgment of acquittal.  We talked about the actual motions

20   being filed on Monday, but I did want to give the defendants an

21   opportunity just to note their -- the fact that they are moving

22   under Rule 29.

23            *MR. TUBACH:*  Thank you, Your Honor.

24            *THE COURT:*  Mr. Tubach?

25            *MR. TUBACH:*  I will just say for now that I move for

1    judgment of acquittal under Rule 29 because the evidence is

2    insufficient to sustain a conviction as to Mr. Penn under

3    either the per se standard or the rule of reason, and pursuant

4    to the Court's instructions is a place holding motion to be

5    supplemented by a written submission to be filed on

6    November 29th.

7              THE COURT:  Thank you.  And why don't we go in order.

8              Next, on behalf of Mr. Fries?

9              MR. KORNFELD:  Yes, Your Honor, Rick Kornfeld on

10   behalf of Mr. Fries.

11             We similarly would make a motion pursuant to Rule 29

12   for judgment of acquittal.  Taking the evidence in the light

13   most favorable to the government, we believe there is

14   insufficient evidence that Mr. Fries conspired to fix or raise

15   prices or rig bids.  There is also insufficient evidence, Your

16   Honor, that a conspiracy existed among the producers, including

17   Claxton and Mr. Fries, to do the same.

18             Thank you, Your Honor.

19             THE COURT:  Thank you, Mr. Kornfeld.

20             On behalf of Mr. Austin?

21             MR. FELDBERG:  Your Honor, Michael Feldberg for

22   Mr. Austin.

23             We move pursuant to Rule 29 of the Federal Rules of

24   Criminal Procedure for a judgment of acquittal as to Roger

25   Austin on the ground that the evidence is insufficient to

1   sustain a conviction.  We will supplement this oral motion in

2   writing no later than Monday, November 29th.

3          THE COURT:  Thank you.

4          And on behalf of Mr. Mulrenin?

5          MS. PREWITT:  Thank you, Your Honor.

6          On behalf of Mr. Mulrenin, pursuant to Rule 29

7   Mr. Mulrenin moves for a judgment of acquittal on the single

8   count against him of conspiracy to violate the Sherman Act.

9   The government has failed to present evidence sufficient to

10  establish that, one, the conspiracy charged in Count One of the

11  Superseding Indictment existed or that Mr. Mulrenin had

12  knowingly joined that conspiracy as charged, Your Honor.

13         THE COURT:  Thank you.

14         On behalf of Mr. Kantola?

15         MS. HENRY:  On behalf of Mr. Kantola, we move for

16  judgment of acquittal under Rule 29 because the evidence is

17  insufficient to sustain a conviction under either the per se or

18  rule of reason standard and because a variance of the

19  Indictment and because the prosecution is unconstitutional

20  under the vagueness doctrine.  Pursuant to the Court's

21  instructions, we will be submitting a written submission to

22  supplement this that will be filed on November 29.

23         Thank you.

24         THE COURT:  Thank you.

25         On behalf of Mr. Little?

1              *MR. BYRNE:*  Yes, Your Honor.  This is Mark Byrne.

2              We also move pursuant to Rule 29 of the Federal Rules

3     of Criminal Procedure for judgment of acquittal as to

4     Mr. Little.  And we also adopt all of the other arguments that

5     the other defense counsel have stated.  We will supplement our

6     oral motion in writing no later than Monday, November 29.

7              Thank you.

8              *THE COURT:*  Thank you.

9              On behalf of Mr. Lovette?

10             *MR. FAGG:*  Thank you, Your Honor.

11             On behalf of Mr. Lovette, we respectfully move for a

12    judgment of acquittal under Rule 29 of the Rules of Criminal

13    Procedure.  Even taking all of the assumptions in favor of the

14    government, there is not sufficient evidence to permit a

15    reasonable juror to reach a finding of guilt beyond a

16    reasonable doubt as it relates to Mr. Lovette under either the

17    per se or the rule of reason.  And pursuant to the Court's

18    instructions on the record, we will supplement this motion in

19    writing on or before November 29.

20             *THE COURT:*  Thank you.

21             On behalf of Mr. Roberts?

22             *MR. GILLEN:*  Yes, Your Honor.

23             On behalf of Mr. Roberts, we would move the Court

24    pursuant to Rule 29 for judgment of acquittal.  And we submit

25    that there is insufficient evidence to find that Mr. Roberts

1    joined a conspiracy or even that a conspiracy existed.  We will

2    supplement in writing this motion on or before the 29th of

3    November.

4           In addition, we would also state and we would adopt

5    the arguments made by others pursuant to their Rule 29s and in

6    addition will state that we do believe that the evidence in

7    this case was in variance of the charged Indictment; and

8    therefore, for that ground as well we move for a Rule 29

9    judgment of acquittal.

10          *THE COURT:*  Thank you.

11          And on behalf of Mr. Blake?

12          *MR. POLLACK:*  Thank you, Your Honor.

13          Mr. Blake also moves for a judgment of acquittal under

14   Rule 29.  We will supplement that with a written motion.  I

15   understand that there are no defense witnesses that are going

16   to be called today.  I would like the opportunity to preview

17   Mr. Blake's motion because I think it is a substantial one, but

18   I think the jury could probably be dismissed and we could do

19   that without the jury having to sit here, Your Honor.

20          *THE COURT:*  I anticipated that Mr. Blake's motion

21   would be that, of course.  I still think that given the fact

22   that I am not going to be ruling on anything today, I didn't

23   want to keep more the -- I wanted to make sure that if the jury

24   was not going to be needed for the rest of today, that they not

25   have to stay for an additional length of time.

1              Mr. Pollack brings up a good point.  So what is the

2     plan for the rest of the day?

3              *MR. LAVINE:*  Your Honor, Bryan Lavine.  Before we go,

4     I would like to make the motion also on behalf of Mr. Brady.

5              *THE COURT:*  Did I skip -- I am sorry, I completely

6     skipped Mr. Brady.

7              Mr. Lavine, let's turn to that now.  Sorry.

8              *MR. LAVINE:*  Thank you, Your Honor.

9              On behalf of Mr. Brady, we move for judgment of

10    acquittal under Rule 29 of the Federal Rules of Criminal

11    Procedure because the evidence is insufficient to sustain a

12    conviction as to Mr. Brady under either the per se standard or

13    the rule of reason.  We also adopt all of the arguments that

14    have been set forth by other defendants in pursuit of the Rule

15    29.  And pursuant to this Court's instructions this is a place

16    holder oral motion to be supplemented by written submission on

17    or before November 29.

18              Thank you, Your Honor.

19              *THE COURT:*  Thank you, Mr. Lavine.

20              So opening up to everyone, normally what I would do is

21    after the Rule 29 motion, I would indicate to the jury that we

22    now turn to each of the defendants to determine whether they

23    wish to present any evidence.  So it brings us back to what's

24    the plan for the rest of the morning?

25              *MR. POLLACK:*  Your Honor, this is Mr. Pollack.  My

1    understanding was that the defense was going to start with

2    witnesses called by Ms. Prewitt.  I think there was reference

3    yesterday to the fact that given where we were in the case,

4    that we -- that they were not going to -- Ms. Prewitt was not

5    going to proceed with witnesses, so to stand to be corrected by

6    her or any of the other counsel, but I think the jury could

7    probably be dismissed at this point with the instruction the

8    defense case will start when we come back on December 6.

9          THE COURT:  Okay.  Response by the government to that

10   plan?  I mean, I want to give the government a chance to weigh

11   in.  I don't think we have -- there is a witness, so it seems

12   like that would be what we would be doing.

13         Anything from the United States, Mr. Koenig?

14         MR. KOENIG:  Yes, Your Honor.  You know, I would just

15   say this for the record, that the defendants have this

16   opportunity with the jury to put on a witness.  We think they

17   should, but understanding the Court seems like it's already

18   decided, so for the record's sake.

19         THE COURT:  We had previously talked about the fact we

20   would break at noon anyway.  There wouldn't be too much time.

21   And based upon the representation by the defendants that we

22   seem to be on track, we're not -- by not taking advantage of a

23   full day today or by having court on Monday, it's not going to

24   change the estimations reflected in the most recent defense

25   exhibit list.  So I think we'll go ahead and dismiss the jury

1    unless, Ms. Prewitt, you wanted to mention anything.  You

2    didn't have to, but I wanted to give you the opportunity if you

3    did.

4         *MS. PREWITT:*  No thank you, Your Honor.  I think Your

5    Honor stated it as we expected.

6         *THE COURT:*  So I will go ahead and excuse the jury.  I

7    will remind them of the schedule when they next come back.  As

8    you may recall, we have a four-day week and then a five-day

9    week and then heading into the two days before the end of the

10   trial.

11        *MR. KORNFELD:*  May I raise one other minor point?

12        *THE COURT:*  Yes.  Go ahead.

13        *MR. KORNFELD:*  Your Honor, I do have some concern, and

14   I know others do as well, with the gap.  It makes good sense in

15   the schedule -- the scheduling makes good sense for all the

16   reasons that we've discussed.  But be all that as it may, we

17   have an approximate 10-day gap between the beginning of the

18   defense case and a holiday.  And I am wondering if the Court

19   would consider, when you give some of your preliminary -- or

20   some of the comments that you refer to, reinstructing the jury

21   or reminding the jury of the burden of proof that you initially

22   instructed on at the beginning of this case.

23        *THE COURT:*  I will take that under advisement.  Remind

24   me when we next come back about that point.  I am not going to

25   do it now because of the fact there will be that gap.  I think

 1    it may be more appropriate once we resume as a possible

 2    refresher.  I am not saying I will.  It would seem to make more

 3    sense then as opposed to now.

 4            *MR. KORNFELD:*  Thank you, Your Honor.

 5            *THE COURT:*  Anything else?

 6            *MR. POLLACK:*  Mr. Pollack on behalf of Mr. Blake.

 7            I think what would be appropriate, given that you are

 8    going to tell them the defense case will start when we get

 9    back, would be to remind them that they need to keep an open

10    mind, not in any way start discussing the case, and that they

11    should not come to any conclusions until all the evidence has

12    been heard.

13            *THE COURT:*  Yeah, I think that's appropriate.

14            Anything else?

15            Okay.  Thank you.

16        (In open court:)

17            *THE COURT:*  Ladies and gentlemen so, what we are going

18    to do is I am going to excuse you, then, until we come back

19    next.  And I want to remind you exactly when that is because of

20    the fact we are not having court next week.  So the next time

21    you will be returning on December 6, 8:30, all right?

22            And as I said yesterday, we're on track.  The fact we

23    are not having any more testimony or not beginning the defense

24    case until December 6 is not putting us behind.  And at that

25    time, ladies and gentlemen, we will see whether or not each of

1    the defendants chooses to present evidence.  As I had mentioned

2    to you before, the defendants don't have to put on any evidence

3    at all.  The burden of proof in the case concerning the charge

4    is on the government, proof beyond a reasonable doubt, okay?

5           Because we have this period of time before December 6,

6    I want to make sure that you keep the admonitions in mind.

7    We'll have a bit of a gap, but don't let your guard down.

8    Don't start looking up information.  Don't let people talk to

9    you.  Don't consult a dictionary.  Keep an open mind because at

10   this point in time you have just heard the government's case.

11   And if the defendants choose to present evidence, obviously you

12   should have an open mind in considering any evidence that the

13   defendants may choose.  And, of course, the government, if

14   the -- any of the defendants present evidence, the government

15   will have the opportunity for a rebuttal case.  So you can't

16   reach any conclusions at this point in time.  You haven't

17   necessarily heard all the evidence, so keep an open mind.

18          And also make sure not to -- I doubt that you would --

19   but don't try to visit any of the places that are mentioned.

20   Don't talk to yourselves about things.  I hope you have a very

21   nice Thanksgiving and a good time off, and I'll see you back

22   December 6th at 8:30.

23          The jury is excused.

24          (Jury excused.)

25          *THE COURT:*  We've talked about the filings that will

1    occur.  Anything else that we should talk about at this time?

2    Mr. Pollack?

3            MR. POLLACK:  Yes, Your Honor.  I would like the

4    opportunity, as I said earlier, to preview Mr. Blake's Rule 29

5    motion, not the entire argument, but in a little bit more

6    detail than just the cursory moving.  If the Court would allow

7    it --

8            THE COURT:  Well, what I am worried about is then

9    everyone would want to do the same.  Because we are getting

10   everything in writing, I don't consider that to be a productive

11   use of time, not that -- I'm sure that the arguments that you

12   would make are ones that are highly important to Mr. Blake.  I

13   just don't want to set the precedent of going into all of those

14   for today's purposes, so I will decline that request.

15           MR. POLLACK:  Thank you, Your Honor.

16           THE COURT:  Anything else that we should discuss

17   today, Ms. Call?

18           MS. CALL:  One very small housekeeping matter since I

19   know it's a week and a half until we will be back.  We noticed

20   a couple of the jurors left their notebooks.  I don't know if

21   this courtroom is being used for other purposes in the

22   meantime.

23           THE COURT:  It will not be.  But I think we may have

24   told them to leave their notebooks, but that's a good point.  I

25   will ask Ms. Grimm to just check and see if anyone intends to

1    use the courtroom; and if so, we will take the appropriate

2    steps to remove those notebooks so that no one would have

3    access.  We will also make sure, of course, there wouldn't be

4    any access to the jury room.

5          *MR. FAGG:*  Your Honor, with respect to the

6    government's motion to exclude the text messages, we have had

7    some discussions with the government about that and had

8    indicated that we would file a response by the end of the day

9    today.  We are still having those discussions with the

10   government.  And so with the Court's permission, we'll continue

11   those discussions over the course of this break and then file a

12   response next week depending on the course of our discussions.

13         *THE COURT:*  All right.  Does that make sense to the

14   government?

15         *MR. KOENIG:*  It does, Your Honor.

16         *THE COURT:*  That's fine.  You won't be held to that

17   deadline, but we will just look for the response at some point.

18         Anything else we should take up?

19         I hope everyone has a happy Thanksgiving.  If you are

20   traveling, safe travels.  And I will see you back on

21   December 6th at 8:30.  The Court is it in recess.

22         (Recess at 10:15 a.m.)

23

24

25

1                                    INDEX

2                                  EXHIBITS

3    Exhibit        Offered   Received   Refused   Reserved   Withdrawn

4    1-1                       4181

5    2-1                       4181

6    3-1                       4181

7    4-1                       4181

8    5-1                       4181

9    7-1                       4181

10   9-1                       4181

11   10-1                      4181

12   10-2                      4181

13   10-3                      4181

14   14-1                      4181

15   14-2                      4181

16   14-3                      4181

17   16-1                      4181

18   17-1                      4181

19   18-1                      4181

20   18-3                      4181

21   20-1                      4181

22   90-10                     4181

23   1036                      4180

24                          REPORTER'S CERTIFICATE

25        I certify that the foregoing is a correct transcript from

the record of proceedings in the above-entitled matter.  Dated
at Denver, Colorado, this 5th day of February, 2022.


                                S/Janet M. Coppock
                         _____