IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,
    Plaintiff,
v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    WILLIAM WADE LOVETTE,
    Defendants.

## MOTION 1- DEFENDANTS' RENEWED JOINT MOTION
## FOR A PRELIMINARY JURY INSTRUCTION

Defendants, by and through undersigned counsel, respectfully submit this renewed Joint Motion Seeking A Modified Substantive Preliminary Jury Instruction, asking the Court to include language from Jury Instruction No. 21. The Court has previously considered and rejected Defendants' request for such an instruction, but the circumstances have since changed. As grounds for the renewed motion, Defendants submit the following:

### BACKGROUND

On October 7, 2021, the Court agreed that a preliminary jury instruction would help orient the jury throughout the course of the trial and provided the following instruction:

> *Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1. This law makes it a crime to restrain trade. The indictment charges the defendants with conspiring to rig bids and fix prices in the broiler-chicken industry between August 2011 and early 2019.*

> *To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements against him beyond a reasonable doubt:*
>
> *First: that the charged price-fixing conspiracy existed at or about the time alleged;*
>
> *Second: that the defendant knowingly—that is, voluntarily and intentionally— became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; and,*
>
> *Third: that the conspiracy affected interstate commerce.*

(ECF No. 603 at 3.)

After the first trial ended without a verdict as to any of the defendants, the Defendants renewed their request for a substantive preliminary instruction for the second trial, and asked the Court to include language from Jury Instruction No. 18. (ECF No. 988). The government objected to the request, claiming that giving a preliminary instruction using language from Jury Instruction No. 18 was unnecessary and misleading. (ECF No. 1018 at 19-21). While the Court ultimately denied the request to include language from Jury Instruction No. 18, the Court modified the preliminary instruction to conform with Jury Instruction No. 14. (*See* February 8, 2022, ECF 1023, Minute Order Denying Defendants' Joint Motion Seeking a Modified Substantive Preliminary Jury Instruction (Doc. 988)).

On February 22, 2022, the Court again agreed that a preliminary jury instruction would help orient the jury and provided the following instruction (changes from the instruction in trial one is underlined):

> *Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1. This law makes it a crime to <u>unreasonably</u> restrain trade. The indictment charges the defendants with conspiring to rig bids and fix prices for broiler chicken <u>products beginning at least as early as 2012 and continuing through at least early</u> 2019.*
>
> *To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements against him beyond a reasonable doubt:*
>
> *First: that the charged price-fixing conspiracy existed at or about the time alleged;*

2

> *Second: that the defendant knowingly—that is, voluntarily and intentionally—became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; and,*
>
> *Third: that the conspiracy affected interstate commerce.*

(ECF 1023 at 5-6).

Trial two thereafter began with the testimony of the government's first witness, Special Agent Taylor. In a most unusual occurrence, after the jury was seated and after hearing opening statements from most of the parties, a juror raised his hand and stated to the Court, "Can I have a word with you, please?" (2/24/2022 R. Tr. at 137:7). The Court obliged the juror's request, excused the rest of the jury, and allowed the juror to speak to the Court. (2/24/22 R. Tr. at 137:8-16). The juror voiced his confusion about the law:

> "…I am just trying to understand what's expected of me and what information I am supposed to be allowed to use. So basically, it's been summarized at a very high level what the charges were and what laws have been violated but obviously I have no background in this. I don't know what actually makes up violations of these laws without having read the Sherman Act. I feel like I just am lacking enough information to be able to make a judgment so far.
>
> So, is there an opportunity for me to ask questions about the laws or should I expect to be educated more about it as we go forward? I feel currently like I am missing some of the context to help understand some of the evidence that's being presented".

(2/24/22 R. Tr. at 137:23-138:6).

The Court answered the juror's questions; however, the juror responded:

> "Yeah, that mostly answers it. It's more in the details of like, for example, the term agreement was used a lot. Was there an agreement between the parties? It's hard to know if that can be an implied agreement, an explicit agreement, whether they have to actually act on that agreement or the agreement itself was made. Is that the type of details you are saying will be provided at the end of the case?"

(2/24/22 R. Tr. at 139:7-13).

The questions by this juror directly exemplifies the justifications for the giving of a preliminary instruction in a third trial. Despite this juror's sophistication and education level, he

3

was concerned about his ability to identify and analyze relevant evidence without guidance at the outset. This juror disclosed in voir dire that he has an undergraduate degree in aerospace engineering, a master's degree in engineering management and, during those programs, took a law-for-engineers course. (2/24/22 R. Tr. at 131:10-12; 2/24/22 R. Tr. at 120:13-19). Given the juror's impressive educational background and willingness to speak openly about his confusion in front of strangers, it is axiomatic to assume that many of the other twenty-eight jurors in two different trials had similar confusion but remained silent.

The Defendants' objective in continuing to seek this preliminary instruction was, and is, to have the Court assist the jury's understanding of these complex legal and factual issues at the outset so they have the tools to identify and analyze appropriately the evidence they will hear. This is especially important given the insight provided by this juror who had the fortitude to address the Court. Further, the fact that two juries have failed a reach a verdict may indicate confusion that can be mitigated by a preliminary instruction. Given the comments of this juror and the fact of the second hung jury, the parties have new insight into juror's potential confusion about the law. There is empirical research finding that a court repeating instructions both before and after evidence is presented is the most effective way to ensure jury understanding. The Defendants believe a modification to the substantive preliminary instruction is therefore appropriate.

Providing the jury with guidance about conduct that is or is not a *per se* violation of the Sherman Act will prevent the jury from hearing and observing weeks of evidence, including evidence of ordinary business communications, while having no understanding of what is and is

4

not an offense.[1] Ultimately, the jury is the decider of fact, but that should include being well informed throughout in order to enable them to decide for themselves what evidence is or is not relevant to their determination. An ignorance of the law, without even a colloquial understanding of the term "antitrust," or "Sherman Act," deprives them of their ability to make these determinations while listening to the evidence.

While the Court will instruct the jury at the end of the case, a misimpression in any juror's mind that exists for weeks is unlikely to be cured by the reading of the jury instructions at the end of trial. *See* Chalmers James & Leverick Fiona, *Methods of Conveying Information to Jurors: An Evidence Review* 30 (2018) (explaining that one study found that jurors' comprehension of the legal issues in the case was "significantly better" for "jurors who had been both pre- and post-instructed" rather than those who only received instructions at the end of the case). On the other side of the scale, there is no harm or risk of jury confusion in giving the instruction at the outset of the case, a practice many courts have adopted in complex, long-duration cases. *See id.* at *27* (noting that "[t]here is no evidence that [pre-instruction] causes jurors to decide cases prematurely"); J. Alexander Tanford, *The Law and Psychology of Jury Instructions*, 69 Neb. L. Rev. 71, 84 (1990) ("The one point upon which all researchers are agreed is that repeating the instructions two or more times aids comprehension and improves the accuracy of verdicts"). The fact the instruction is so squarely set in antitrust jurisprudence leaves no material risk of jury confusion. Once the

---

[1] The Defendants accept that the Court has ruled on this issue, but we respectfully reassert that the *per se* rule is an unconstitutional conclusive presumption and that, even if it were not, it is inapplicable on the facts of this case. The Defendants believe the jury should be instructed it must find proof beyond a reasonable doubt of an "unreasonable" restraint on trade.

significance of critical testimony is missed, the probability that a juror will be able to retrieve that testimony with the appreciation of its significance weeks later, after jury instructions, is remote.

## ARGUMENT

Defendants request the Court add a preliminary instruction of a summary of Jury Instruction No. 21 (the newest iteration of Jury Instruction No. 18, outlined in ECF 921). Such an instruction describes conduct that is and is not within the scope of the first element of Section 1 of the Sherman Act. (*See* ECF 1232 at Instruction No. 21). Given the additional information from an insightful juror voicing confusion about the law less than two hours into the government's case, Defendants respectfully request the Court reconsider its earlier ruling and expand its substantive preliminary jury instruction to provide the jury with more guidance regarding what constitutes the first element of a violation of the Sherman Act—the existence of a bid-rigging and price-fixing conspiracy.

The Tenth Circuit has acknowledged that district courts may add a "discussion of the elements of the offense" to preliminary instructions, giving district courts' discretion as to what should be included in such discussion. *See* Tenth Circuit Criminal Pattern Jury Instruction 1.01 (2021 ed.); *United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) (quoting *United States v. Nicholson,* 983 F.2d 983, 988 (10th Cir. 1993)). Many courts routinely provide substantive jury instructions that include a discussion of the elements of the offense in cases involving particularly complex subject matters unfamiliar to jurors. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litg.*, MDL No. 1827, 2013 WL 10936486 (N.D. Cal. July 11, 2013), ECF No. 235 at 215 (providing a preliminary instruction that "it is illegal for competitors to agree on the prices to be charged for their competing products" in addition to outlining the elements of the

offense); *United States v. Thompson*, No. CR-09-0088-FVC, ECF No. 670 (providing preliminary jury instructions on how to judge whether an officer acted reasonably under the Fourth Amendment in addition to instructions on the elements of the charges).

For example, in *In re Nexium Antitrust Litig.*, No. 1:12-md-02409-WGY (D. Mass.), ECF No. 1385 at 22-44, the District of Massachusetts provided detailed substantive preliminary instructions explaining patent law and antitrust law. The Court explained the goal of the antitrust laws, outlined the elements of the offense, and defined critical terms necessary to understand the antitrust issues at play, including monopoly power and rule of reason. *Id.* (explaining that "'monopoly power' is the power to charge a higher price for your item without regard to competition . . ..").

Here, an additional instruction providing the jury with guidance on how to assess the first element of the allegation will provide jurors with a better factual and legal framework to give structure to what they "see and hear" during the lengthy trial, which empirical research establishes will enhance the jurors' "attention and memory" and assist in eliminating confusion regarding the issue which they are being asked to decide. *See* Manual for Complex Litigation, Fourth, § 12.432; 2 Jurywork Systematic Techniques 16:28, Aiding juror comprehension of the law—Substantive Preliminary Instructions; *see also Andrews v. LeClaire*, 709 F. Supp. 2d 269, 276 (S.D.N.Y 2010) ("Current studies, particularly those conducted as part of the Jury Trial Project of the New York State Unified Court System, have demonstrated the benefits of substantive preliminary instructions.").

While counsel has not specifically sought the position of the United States in the giving of this instruction, providing it comports with the government's statements after the first two trials.

7

The government justifies trying the case an unprecedented third time, as the prior two juries must have been confused. As Mr. Kanter stated, "[t]hese are complicated cases…" 4/14/22 R. Tr. 8 at 13. Complicated cases that are "…difficult for juries to understand." 4/14/22 R. Tr. 10:24-25. As stated by the government's trial counsel, "the fact that this gets drawn out into a five-week trial I think does inevitably create some juror confusion." 4/14/22 R. Tr. 18:19-21.

While the government has dismissed five defendants, five more remain. This is still a complicated multi-defendant case, and seemingly, will be just as confusing as the government believes the first two trials to have been. The government's trial counsel hypothesized that fewer defendants will aide in jurors' understanding, describing a juror's thought process as, "it's, okay, what was happening at Claxton at this time, what was happening at Pilgrim's at this time and what were these defendants' roles. And that's much less of a mental hurdle, if there ever was one…" 4/14/22 R. Tr. 21:2-5. While the mental hurdle *might* be lower, in the government's thought process, it is a mental hurdle nonetheless. The government's trial counsel continued, "as the 10th Circuit has said, multi-defendant cases inevitably cause juror confusion, and that's the word the 10th Circuit used." 4/14/22 R. Tr. 20:18-20.

The government also agrees that the length of the trial makes the case difficult on jurors. While the third trial might or might not result in fewer days of testimony, here, trial is scheduled to begin June 6 and conclude July 14. As the government's trial counsel stated, "[s]o I think there are things about the length of time, the number of defendants, that made it more difficult when [juries] were in the back deliberating, considering the evidence, to put it all in perspective." 4/14/22 R. Tr. 22:19-23.

8

While arguing that the jury will better understand the case the third time, the government also intends to introduce evidence in a way that it contends will not require the jury's understanding, but which may be an end-around its burden of proof and the Defendants' constitutional protections. The government set forth its plan by stating, "[s]ome episodes while they may be relevant…for a conspiracy, they *are going to be much less of a focus* both in terms of the government's presentation of evidence *and the jury's understanding of it*." 4/14/22 R. Tr. 21:15-18. (emphasis added). While the government defines prior hung juries as confused, it also surmises a future verdict will be facilitated by evidence that does not require a juror's understanding. Such a purpose—to foster a lack of understanding by the jury with evidence the government presents knowing the jury need not and may well not understand it—cannot be the goal of this Court. Nor can it be reconciled with the Defendants' Sixth Amendment right to a fair trial. And the giving of a preliminary instruction helps ensure an informed jury that is capable of understanding from the outset what is and is not relevant, which is essential to a fair trial.

The proposed instruction summarizes the instruction provided at the end of the case by the Court in the first and second trials. Providing the proposed instruction at the beginning of the case gives the jury a balanced summary of the law of conspiracy and what conduct is, and is not, a *per se* violation of Section 1 of the Sherman Act. Given that much of the evidence in this case relates to day-to-day business negotiations and communications, the jury is tasked with the difficult duty of distinguishing whether the evidence establishes an unlawful agreement between competitors to rig bids and fix prices; or, rather, consists of ordinary and legitimate business activities that do not impermissibly restrain competition. This essential distinction is critical to reaching a true verdict. If the jurors do not understand this distinction as they work each day to build an understanding of

the totality of the evidence, after six weeks of testimony, potentially sixteen days of direct testimony from government witnesses alone, hundreds of exhibits, many of which will be admitted by the government without a sponsoring witness, the jury will have little chance of getting it right. *See* Tanford, *supra*, at 84 (Noting that some researchers have hypothesized, based on empirical studies, "that jurors decide how they will vote at some time before the end of the trial. Therefore, instructions given at the end may come too late to have a meaningful impact on juror decisions.).

There is no prejudice to any party in providing a more robust preliminary instruction, especially given that two juries were unable to reach a verdict and the questions asked by the juror in trial two are directly addressed in Jury Instruction No. 21. Accordingly, Defendants' respectfully request that in addition to the substantive preliminary instruction the Court provided to the jury as set forth in ECF No. 1023 at 5-6, the Court also provide the jury with the following substantive preliminary instruction:

> A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for goods or services. Prices do not have to be the same or identical to be fixed; prices may be fixed in other ways. Prices are fixed if the range or level of prices or pricing strategy is agreed upon. They are fixed because they are agreed on. Thus, an agreement among competitors to raise or lower a price, to set or avoid certain price promotions, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal. The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.
>
> A conspiracy to rig bids is an agreement between two or more competitors to eliminate, reduce, or interfere with competition for something that is to be awarded on the basis of bids. . .. If you find that one or more of the defendants entered into an agreement to fix prices and rig bids, the fact that a defendant did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objective is no defense. The agreement is the crime, even if it is never carried out. If the conspiracy charged in the indictment is proved, it is no defense that some or all of the defendants

actually competed with each other in some manner or that they did not conspire to eliminate all competition. . ..

The mere fact that some or all of the defendants may have engaged in similar or parallel pricing does not by itself establish the existence of a conspiracy among them. Evidence of similarity of business practices of defendants, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices and rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market. A business may lawfully . . . adopt the same prices, conditions of sale, or other practices as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.

Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange. It is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices. There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to fix prices or to rig bids.

Nevertheless, you may consider such facts and circumstances, along with all other evidence, in determining whether the alleged price fixing and bid rigging resulted from the independent acts of the defendants freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

(Excerpted from ECF No. 1232 at Instruction No. 21.)[2]

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court give the above excerpts from Jury Instruction No. 21, which the Court instructed the jury after the close of the evidence at the second trial, at the commencement of the third trial as well.

---

[2] Defendants have attempted to shorten the instruction while keeping its essence and striking the same balance as the full instruction. Defendants have no objection to giving the full instruction in its entirety.

Respectfully submitted this 9th day of May 2022,

| | |
|---|---|
| *s/ John A. Fagg, Jr.* | *s/ Michael F. Tubach* |
| John A. Fagg, Jr. | Michael F. Tubach |
| MOORE & VAN ALLEN PLLC | O'MELVENY & MYERS LLP |
| Attorney for William Wade Lovette | Attorney for Jayson Jeffrey Penn |
| 100 North Tryon Street, Suite 4700 | Two Embarcadero Center, 28th Floor |
| Charlotte, NC 28202 | San Francisco, California 94111-3823 |
| (704) 331-3622 | (415) 984-8700 |
| johnfagg@mvalaw.com | mtubach@omm.com |
| | |
| *s/ Richard K. Kornfeld* | *s/ Michael S. Feldberg* |
| Richard K. Kornfeld | Michael S. Feldberg |
| RECHT KORNFELD, P.C. | REICHMAN JORGENSEN LEHMAN & FELDBERG LLP |
| Attorney for Mikell Reeve Fries | Attorney for Roger Born Austin |
| 1600 Stout Street, Suite 1400 | 750 Third Avenue, Suite 2400 |
| Denver, CO 80202 | New York, NY 10017 |
| (303) 573-1900 | (212) 381-1965 |
| rick@rklawpc.com | mfeldberg@reichmanjorgensen.com |
| | |
| | *s/ Bryan Lavine* |
| | Bryan Lavine |
| | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| | Attorney for Scott James Brady |
| | 600 Peachtree St. NE, Suite 3000 |
| | Atlanta, GA 30308 |
| | (404) 885-3170 |
| | Bryan.lavine@troutman.com |

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*